**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION (DAYTON)**

| | |
|---|---|
| STATE OF OHIO *ex rel.* DAVE YOST,<br>Attorney General of the State of Ohio,<br><br>                     *Plaintiff*,<br><br>     v.<br><br>UNITED WHOLESALE MORTGAGE, LLC,<br><br>                    *Defendant*. | Case No.:  3:25-cv-00160<br><br>Hon. Thomas M. Rose<br><br>Hon. Judge Caroline H. Gentry<br><br>ORAL ARGUMENT REQUESTED |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**PLAINTIFF STATE OF OHIO'S MOTION TO REMAND**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ....................................................................................................... 2

I.      All Doubts as to the Propriety of Removal Must Be Resolved in Favor of Remand. ................................................................................................... 2

II.     The Court Does Not Have Diversity Jurisdiction. ............................................ 3

III.    The Court Does Not Have Jurisdiction Under CAFA. ..................................... 11

IV.    The Court Does Not Have Federal-Question Jurisdiction ............................... 14

       A.      Ohio's CPA Claim Does Not Necessarily Raise Any Federal Issue ................... 15

       B.      The State's Action Does Not Raise Any Issue in Which There Is a Substantial Federal Interest ................................................................... 16

       C.      Permitting Jurisdiction Would Disrupt the Federal-State Balance in Actions Under State RICO Statutes ....................................................... 20

CONCLUSION .................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adventure Outdoors, Inc. v. Bloomberg*,
    552 F.3d 1290 (11th Cir. 2008) .................................................. 27

*Alfaro v. Banter by Piercing Pagoda*,
    2022 WL 1284823 (C.D. Cal. Apr. 29, 2022) ............................... 16

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*,
    458 U.S. 592 (1982).................................................................. 8, 9

*Arizona ex rel. Horne v. Countrywide Fin. Corp.*,
    2011 WL 995963 (D. Ariz. Mar. 21, 2011) ................................... 6

*Ayres v. Gen. Motors Corp.*,
    234 F.3d 514 (11th Cir. 2000) .................................................... 25

*Badeaux v. Goodell*,
    358 F.Supp.3d 562 (E.D. La. 2019).......................................... 16

*Bourke v. Carnahan*,
    2003 WL 23412975 (S.D. Ohio July 1, 2003)............................ 22

*Brittingham v. Gen. Motors Corp.*,
    526 F.3d 272 (6th Cir. 2008) ....................................................... 2

*Celebrezze v. Hughes*,
    479 N.E.2d 886 (Ohio 1985)...................................................... 17

*Connecticut by Tong v. Exxon Mobil Corp.*,
    83 F.4th 122 (2d Cir. 2023) ...................................................... 22

*Coyne v. Am. Tobacco Co.*,
    183 F.3d 488 (6th Cir. 1999) ................................................ 2, 10

*CSAHS/UHHS-Canton, Inc. v. Aultman Health Found.*,
    2009 WL 9541240 (N.D. Ohio Feb. 27, 2009)............................ 25

*Department of Fair Employment & Housing v. Lucent Technologies, Inc.*,
    642 F.3d 728 (9th Cir. 2011) ................................................ 11, 12

*Desai v. CareSource, Inc.*,
    2019 WL 1109568 (S.D. Ohio Mar. 11, 2019)............................ 21

*Dominion Pathology Lab'ys, P.C. v. Anthem Health Plans of Va., Inc.*,
    111 F.Supp.3d 731 (E.D. Va. 2015) ......................................... 21

*Empire Healthchoice Assurance, Inc. v. McVeigh*,
    547 U.S. 677 (2006) ................................................................... 26, 27

*Facione v. CHL Mortg. Tr. 2006-J1*,
    628 F. App'x 919 (6th Cir. 2015) ................................................ 13

*Felix v. Ganley Chevrolet, Inc.*,
    49 N.E.3d 1224 (Ohio 2015) ...................................................... 18

*Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*,
    463 U.S. 1 (1983) ...................................................................... 4, 23

*Freeman v. Blue Ridge Paper Prods., Inc.*,
    551 F.3d 405 (6th Cir. 2008) ...................................................... 16

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
    545 U.S. 308 (2005) ................................................................... 27

*Grace Ranch, L.L.C. v. BP Am. Prod. Co.*,
    989 F.3d 301 (5th Cir. 2021) ...................................................... 12

*Gunn v. Minton*,
    568 U.S. 251 (2013) ................................................................... 20

*Gurry v. C.P.*,
    972 N.E.2d 154 (Ohio Ct. App. 2012) ....................................... 19

*Hood v. AstraZeneca Pharms., LP*,
    744 F.Supp.2d 590 (N.D. Miss. 2010) ........................................ 5

*Horowitz v. Marlton Oncology, P.C.*,
    116 F. Supp. 2d 551 (D.N.J. 1999) ............................................ 28

*Hunter v. Dove*,
    711 F.Supp.3d 862 (S.D. Ohio 2024) ........................................ 10

*Illinois v. SDS W. Corp.*,
    640 F.Supp.2d 1047 (C.D. Ill. 2009) .......................................... 7

*In re Facebook Consumer Priv. Litig.*,
    354 F.Supp.3d 1122 (N.D. Cal. 2019) ........................................ 7

*In re Standard & Poor's Rating Agency Litig.*,
    23 F.Supp.3d 378 (S.D.N.Y. 2014) .......................................... 3, 5

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    2011 WL 560593 (N.D. Cal. Feb. 15, 2011) ............................... 8

*Kentucky ex rel. Stumbo v. Marathon Petroleum Co.*,
    2007 WL 2900461 (E.D. Ky. Oct. 3, 2007)................................................................ passim

*Kousisis v. United States*,
    145 S. Ct. 1382 (2025).................................................................................. 23, 24

*LG Display Co., Ltd. v. Madigan*,
    665 F.3d 768 (7th Cir. 2011) ...................................................................................... 15

*Mason v. Lockwood, Andrews & Newnam, P.C.*,
    842 F.3d 383 (6th Cir. 2016) ........................................................................................ 3

*Merrell Dow Pharms., Inc. v. Thompson*,
    478 U.S. 804 (1986)................................................................................................ 22, 28

*Mikulski v. Centerior Energy Corp.*,
    501 F.3d 555 (6th Cir. 2007) ................................................................................. 22, 26

*Miller v. Bruenger*,
    949 F.3d 986 (6th Cir. 2020) ................................................................................. 20, 25

*Minnesota v. Am. Petroleum Inst.*,
    63 F.4th 703 (8th Cir. 2023) ........................................................................................ 9

*Mississippi ex rel. Hood v. AU Optronics Corp.*,
    571 U.S. 161 (2014)............................................................................................... 4, 8

*Mo., Kan., & Tex. Ry. Co. v. Hickman*,
    183 U.S. 53 (1901)................................................................................................ 6, 7

*Ne. Ohio Reg'l Sewer Dist. v. Advanced Med. Sys., Inc.*,
    666 N.E.2d 612 (Ohio Ct. App. 1995) .................................................................. 19, 21

*Nessel ex rel. Michigan v. AmeriGas Partners, L.P.*,
    954 F.3d 831 (6th Cir. 2020) ........................................................................... 3, 15, 16

*Nevada v. Bank of Am. Corp.*,
    672 F.3d 661 (9th Cir. 2012) ............................................................................... passim

*Ohio ex rel. Dann v. Citibank (S.D.), N.A.*,
    2008 WL 1990363 (S.D. Ohio May 1, 2008) ............................................................ 4, 5

*Ohio ex rel. Skaggs v. Brunner*,
    549 F.3d 468 (6th Cir. 2008) ...................................................................................... 2

*Ohio v. GMAC Mortgage, LLC*,
    760 F.Supp.2d 741 (N.D. Ohio 2011)................................................................... 13, 14

*Ohio v. United Transp., Inc.*,
  506 F.Supp. 1278 (S.D. Ohio 1981) .................................................................. 12

*Skilling v. United States*,
  561 U.S. 358 (2010) ........................................................................................... 24

*Smith v. Nationwide Prop. & Cas. Ins. Co.*,
  505 F.3d 401 (6th Cir. 2007) ............................................................................... 3

*Snyder v. United States*,
  603 U.S. 1 (2024) ............................................................................................... 24

*Standard Fire Ins. Co. v. Knowles*,
  568 U.S. 588 (2013) ........................................................................................... 16

*State ex rel. Cordray v. JR & Sons Quality Home Improvements*,
  2010 Ohio Misc. LEXIS 11786 (Ct. Com. Pl. June 11, 2010) ......................... 17

*State ex rel. Cordray v. Marshall*,
  915 N.E.2d 633 (Ohio 2009) ............................................................................. 12

*State ex rel. Dewine v. The Game Smith*,
  2011 Ohio Misc. LEXIS 16731 (Ct. Com. Pl. Jan. 11, 2011) ......................... 17

*State ex rel. Guste v. Fedders Corp.*,
  524 F.Supp. 552 (M.D. La. 1981) ..................................................................... 12

*State v. Jack*,
  125 P.3d 311 (Alaska 2005) ............................................................................... 25

*United States v. Arif*,
  897 F.3d 1 (1st Cir. 2018) ................................................................................. 24

*United States v. Frost*,
  125 F.3d 346 (6th Cir. 1997) ............................................................................. 24

*Washington v. Chimei Innolux Corp.*,
  659 F.3d 842 (9th Cir. 2011) ....................................................................... 15, 16

*Williams v. Emps. Mut. Cas. Co.*,
  845 F.3d 891 (8th Cir. 2017) ............................................................................. 17

*Wisconsin v. Abbott Lab'ys*,
  341 F.Supp.2d 1057 (W.D. Wis. 2004) ............................................................. 11

**Statutes**

R.C. 1345.07 .................................................................................................... 12, 13, 14

R.C. 1345.09(B) ..................................................................................................... 13

R.C. 2913.05 ..................................................................................................... 15, 19

R.C. 2923.34(A) ........................................................................................................ 17

**Rules**

Ohio Civil Rule 8(A) ................................................................................................ 14

**Other Authorities**

3M PFAS Litigation Agreement, https://www.ohioattorneygeneral.gov/Files/ Legal/Outside-
Counsel/Contingency-Fee-Information/3M-PFAS-Litigation ........................................... 7

DuPont Litigation Agreement, https://www.ohioattorneygeneral.gov/Files/Legal/Outside-
Counsel/Contingency-Fee-Information/DuPont-Litigation-Markovit .............................. 7

## PRELIMINARY STATEMENT

The State of Ohio, through its Attorney General, brought this action in the Montgomery County Court of Common Pleas asserting eight causes of action under Ohio state law. The action seeks to protect Ohio's sovereign interests, including preserving the integrity of its wholesale mortgage market, which has been deliberately and significantly undermined by the deceptive practices of Defendant United Wholesale Mortgage ("UWM"). The deceptive practices alleged in the Complaint are no small matter. This is not a case in which the Attorney General is intervening merely for the sake of recovering compensation for a small, discrete group of injured citizens. UWM is the largest mortgage lender in Ohio, accounting for more than one third of all wholesale mortgages originated in the state and approximately $1 billion in Ohio loan volume annually between 2020 and 2023. Its conduct affects thousands of mortgage brokers and hundreds of thousands of consumers. The claims at issue thus have a significant impact on Ohio's economy.

The Attorney General chose to bring these claims in state court. That decision is entitled to deference absent a showing that federal jurisdiction exists. UWM fails to make that showing. Its opposition (Doc. 22, "Opp.") is instead an exercise in distortion: it distorts the applicable legal standard, distorts its own cited precedents, and distorts or fails to address the arguments and authorities that require remand here. The bottom lines are these: (1) the Court does not have diversity jurisdiction because Ohio is seeking forward-looking relief that vindicates its sovereign interest in protecting its wholesale mortgage market; (2) the Court does not have CAFA jurisdiction because this is an authorized statutory enforcement and *parens patriae* action, not a class action; and (3) the Court does not have federal question jurisdiction because each of Ohio's claims is created by state law, and the federal predicates referenced in Ohio's CPA claim are neither "necessary" nor "substantial." Because this Court has no jurisdiction, remand is required.

## ARGUMENT

**I.     All Doubts as to the Propriety of Removal Must Be Resolved in Favor of Remand.**

UWM's analysis starts from the premise that Ohio "overstates the standard for remand motions." Opp. at 3. According to UWM, while courts "*sometimes* resolve 'doubts' in favor of remand," courts also have a "virtually unflagging obligation" to exercise federal jurisdiction when it exists—and that obligation, UWM suggests, "*sometimes*" shifts the burden such that the presumption is in favor of removal. *Id.* (emphasis added). That is flatly wrong.

"When a party opts to file a complaint in state court, the federal courts must honor that choice unless Congress has authorized removal of the case." *Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 474 (6th Cir. 2008). "A party seeking to invoke the jurisdiction of the federal courts … bears the burden of establishing that such jurisdiction exists." *Id.* (citing *Brittingham v. Gen. Motors Corp.*, 526 F.3d 272, 277 (6th Cir. 2008)). "All doubts as to the propriety of removal are resolved in favor of remand" and "all disputed questions of fact and ambiguities in the controlling ... state law [are resolved] in favor of the non removing party." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) (citation omitted). While the same antiremoval presumption does not apply under CAFA, "nothing in CAFA alters the traditional rule that the removing party bears the burden of establishing the jurisdictional elements." *Mason v. Lockwood, Andrews & Newnam, P.C.*, 842 F.3d 383, 389 (6th Cir. 2016) (citing *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 404 (6th Cir. 2007)). UWM's suggestions to the contrary are meritless.

Additionally, UWM incorrectly asserts there is no "higher burden for removal in cases brought by States," claiming Ohio's cases do not support that proposition. Opp. at 3. But that too is wrong. The importance of judicial scrutiny of removal petitions "is at its zenith where, as here, the suit was brought by a State itself, as 'the claim of sovereign protection from removal' in such circumstances 'arises in its most powerful form.'" *In re Standard & Poor's Rating Agency Litig.*,

23 F.Supp.3d 378, 392 (S.D.N.Y. 2014) (quoting *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 676 (9th Cir. 2012)).[1] Indeed, as the Sixth Circuit has noted, "[t]he Supreme Court has long cautioned against 'snatch[ing] cases which a State has brought from the courts of that State, unless some clear rule demands it.'" *Nessel ex rel. Michigan v. AmeriGas Partners, L.P.*, 954 F.3d 831, 837 (6th Cir. 2020) (alteration in original) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 21 n.22 (1983)). UWM's baseless effort to twist the standard in its favor fails.

## II.     The Court Does Not Have Diversity Jurisdiction.

UWM fails to meet its burden to establish diversity jurisdiction. The parties agree that "States are not citizens for diversity purposes," Opp. at 4, and thus if Ohio is a real party in interest here, its presence "will destroy complete diversity." *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 174 (2014). To determine whether a state is the real party in interest in an attorney general enforcement action, courts assess "the complaint as a whole" to determine whether the state "has a substantial stake in [the] action and is the primary beneficiary of the relief requested." *Ohio ex rel. Dann v. Citibank (S.D.), N.A.*, 2008 WL 1990363, at *3–4 (S.D. Ohio May 1, 2008); *see also, e.g.*, *Bank of Am. Corp.*, 672 F.3d at 670–71 (considering "the essential nature and effect of the proceeding as it appears from the entire record" to determine "whether there was a substantial state interest separate and distinct from the relief sought on behalf of the individual" (citations and internal quotation marks omitted)). In making that determination, courts consider, "whether the state statute under which the action was brought grants the attorney general specific statutory authority to bring the suit in the name of the state, whether the relief sought is injunctive so as to regulate business conduct, whether any civil penalties will go to the state

---

[1] UWM claims the *Standard & Poor's Rating Agency* case "asserts [this] position without citation." Opp. at 3. That is plainly incorrect. *See* 23 F.Supp.3d at 392.

treasury, and whether any identifiable individual consumers are granted redress." *Dann*, 2008 WL 1990363, at *3 (citing *Kentucky ex rel. Stumbo v. Marathon Petroleum Co.*, 2007 WL 2900461, at *5 (E.D. Ky. Oct. 3, 2007)).[2]

UWM puts forward a litany of misguided and incorrect arguments to attempt to show the State is not the "real party in interest" under this standard. None withstands scrutiny.

***First***, UWM argues that Ohio is only a "nominal party" because its claims for restitution render certain Ohio consumers the "primary intended beneficiaries" of this action. Opp. at 5, 8. But "as the overwhelming weight of authority makes clear, the fact that individual [Ohio] consumers could ultimately benefit financially from a favorable resolution of this case 'does not minimize or negate the State's substantial interest.'" *In re Standard & Poor's Rating Agency Litig.*, 23 F.Supp.3d at 406–07 (collecting cases and quoting *Hood v. AstraZeneca Pharms., LP*, 744 F.Supp.2d 590, 596 (N.D. Miss. 2010)); *see also Marathon Petroleum*, 2007 WL 2900461, at *5 ("While the Attorney General does also seek restitution on behalf of particular consumers, this is only one aspect of the wide-ranging relief sought, the substantial portion of which will benefit all Kentucky consumers."). And here, Ohio—like other states that have pursued enforcement actions against mortgage lenders—has a substantial "sovereign interest in protecting its citizens and economy from deceptive mortgage practices." *Bank of Am. Corp.*, 672 F.3d at 671; *see also, e.g.*, *Arizona ex rel. Horne v. Countrywide Fin. Corp.*, 2011 WL 995963, at *3 (D. Ariz. Mar. 21,

---

[2] UWM suggests that analyzing the factors articulated in *Dann* and *Marathon Petroleum* is somehow incompatible with viewing the complaint "as a whole" and that those factors should not guide the analysis because the Sixth Circuit has not had occasion to endorse them. Opp. at 9. But the factors articulated in *Dann* and *Marathon Petroleum* are not incompatible with "viewing the complaint as a whole"—rather, they are the means through which federal courts routinely do so. *E.g.*, *Marathon Petroleum*, 2007 WL 2900461, at *2–5 (collecting cases).

2011) (recognizing Arizona's "quasi-sovereign interest in 'protecting the integrity of the residential mortgage loan business'").

UWM attempts to cast doubt on this "overwhelming weight of authority" by claiming that some or all of it is somehow in conflict with the "*Missouri Railway* test," which the Supreme Court purportedly "reaffirmed" in 2014. Opp. at 7–8 (citing *Mo., Kan., & Tex. Ry. Co. v. Hickman*, 183 U.S. 53, 60 (1901) ("*Missouri Railway*")). But as UWM now acknowledges, *Missouri Railway* did not hold that a state can *only* be a real party in interest if "all relief" inures to its benefit alone, and none would benefit individual citizens.[3] *Id.* at 8. While that may be a *sufficient* condition for a state to be a "real party," it is not a necessary one. *See, e.g.*, *In re Facebook Consumer Priv. Litig.*, 354 F.Supp.3d at 1122, 1125–29; *Illinois v. SDS W. Corp.*, 640 F.Supp.2d 1047, 1051–52 (C.D. Ill. 2009). Rather, under *Missouri Railway*, the relief merely must "effectively operate[]" in favor of the state. Opp. at 8 (citing 183 U.S. at 59). Ohio meets that standard here because, in addition to substantial civil penalties, it seeks broad declaratory and injunctive relief which will benefit all Ohio consumers—not just affected UWM borrowers. *Marathon Petroleum*, 2007 WL 2900461, at *5 (remanding attorney general enforcement action where a "substantial portion" of the relief sought would benefit "all Kentucky consumers"). Indeed, the monetary recovery Ohio seeks "effectively operates" in favor of the state as well because—as other courts have noted in similar attorney general enforcement actions—"the restitution … 'while on behalf of [Ohio] consumers, would first be paid to the State and distributed on an equitable basis.'" *E.g.*, *Bank of*

---

[3] Notably, its Notice of Removal, UWM asserted that, under *Missouri Railway*, a state is the real party in interest "***only if*** 'the relief sought is that which inures to it alone, and in its favor the judgment or decree … will effectively operate.'" Doc. 1 ¶ 22 (emphasis added) (quoting *Missouri Railway*, 183 U.S. at 60). UWM now appears to be backing away from that position because it is a clear misreading of *Missouri Railway* and a misstatement of the law. *See, e.g.*, *In re Facebook Consumer Priv. Litig.*, 354 F.Supp.3d 1122, 1125–29 (N.D. Cal. 2019).

*Am. Corp.*, 672 F.3d at 671 (quoting *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 560593, at *5 (N.D. Cal. Feb. 15, 2011)). To the extent UWM claims *Missouri Railway* somehow precludes a finding that Ohio is the real party in interest here, its position is baseless.[4]

**Second**, UWM points to language in the Attorney General's retention agreement with outside counsel, claiming that the agreement's definition of the term "Client" as "Ohio's consumers and citizens," necessarily means those consumers are the "real parties" and State itself is not the primary beneficiary. Opp. at 2, 5. That is absurd. The words used in a retention agreement do not determine who qualifies as a real party in interest for purposes of diversity jurisdiction. *Marathon Petrolum*, 2007 WL 2900461, at *1 ("real party in interest is … determined from the essential nature and effect of the proceeding"). Moreover, the language in the retention agreement merely tracks the applicable standard for *parens patriae* standing, which provides that a State may bring claims in its own name to protect its sovereign interest in enforcing its own laws and its "quasi-sovereign interest" in the economic "well-being" of its "residents in general." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982); *see also Minnesota v. Am. Petroleum Inst.*, 63 F.4th 703, 716 n.13 (8th Cir. 2023) ("The doctrine of *parens patriae* allows a sovereign to bring an action on behalf of the interest of all of its citizens."). In such suits, the state is not merely a nominal party because it is pursuing its own sovereign and quasi-sovereign interests. *See Snapp*, 458 U.S. at 601–03. Indeed, many other retention agreements between the Ohio Attorney General and outside counsel similarly define the "Client" to include "the citizens

---

[4] Moreover, the notion (Opp. at 8) that the Supreme Court "reaffirmed the validity" of any specific "*Missouri Railway* test" in *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 174 (2014) is grossly misleading. In *AU Optronics*, the Supreme Court cited *Missouri Railway* a single time for the uncontroversial proposition that "in cases involving a State or state official, we have inquired into the real party in interest because a State's presence as a party will destroy complete diversity." 571 U.S. at 174. The Court said nothing to suggest that all relief must inure to the benefit of a state alone for a state to be a real party in interest.

of the State of Ohio," or the like.[5] If UWM were correct, every one of those cases would become removable. Such a reading is obviously untenable.[6]

**Third**, UWM argues that Ohio's claims for civil penalties should not factor into the Court's analysis because "no civil penalties are available here under any scenario." Opp. at 6–7. But this argument improperly asks the Court to resolve a merits question against Ohio on a motion for remand, where the issue is not ripe and all doubts must be resolved in favor of the party opposing federal jurisdiction. *Coyne*, 183 F.3d at 493. Whether Ohio is entitled to civil penalties for UWM's CSPA violations is not a threshold jurisdictional question—it is a merits question that turns on whether in the Public Inspection File provided UWM with sufficient notice that its actions violated the CSPA. *See* Doc. 24 ("MTD Opp.") § I.A.2. Before resolving that merits question, however, the Court must decide whether it is entitled to exercise jurisdiction over this suit at all. After all, the Court must have jurisdiction to decide any question on the merits. *Hunter v. Dove*, 711 F.Supp.3d 862, 869 (S.D. Ohio 2024) ("Before a court may determine whether a plaintiff has failed to state a claim upon which relief may be granted, it must first find that it has subject matter jurisdiction."). In any event, as explained in Ohio's opposition to UWM's motion to dismiss, UWM's challenge to Ohio's claim for civil penalties is without merit. *See* MTD Opp. § I.A.2.

**Fourth**, UWM attacks a straw man by claiming Ohio's demands for declaratory and injunctive relief are irrelevant because they merely seek to secure compliance with state law, which

---

[5] *See, e.g.*, 3M PFAS Litigation Agreement, https://www.ohioattorneygeneral.gov/Files/ Legal/Outside-Counsel/Contingency-Fee-Information/3M-PFAS-Litigation; DuPont Litigation Agreement, https://www.ohioattorneygeneral.gov/Files/Legal/Outside-Counsel/Contingency-Fee-Information/DuPont-Litigation-Markovit.

[6] The fact that the Retention Agreement provides for a contingent fee is also irrelevant. Courts determine the real party in interest by evaluating the "complaint as a whole," not the attorney's retention agreements. *Marathon Petroleum*, 2007 WL 2900461 at *4–5. The manner in which outside counsel may be compensated has nothing to do with whether Ohio has a "substantial stake" in the action or is the "primary beneficiary" of the requested relief.

is a "general government interest" that does not make a state a "real party." Opp. at 7. But merely securing general "compliance" with state law is not the foremost interest Ohio seeks to vindicate here. Rather, Ohio seeks declaratory and injunctive relief to uphold the integrity of its wholesale mortgage market, which serves hundreds of thousands of its citizens, and to protect those citizens prospectively from the types of injuries that UWM's systematic deceptive practices have already inflicted on thousands of Ohio consumers. *See* Compl. ¶¶ 1, 16, 19, 308. That interest—in securing an honest marketplace—is routinely recognized as a valid sovereign or quasi-sovereign state interest, sufficient to render a state a "real party." *See, e.g.*, *Bank of Am. Corp.*, 672 F.3d at 671; *Wisconsin v. Abbott Lab'ys*, 341 F.Supp.2d 1057, 1063 (W.D. Wis. 2004) (recognizing that attorney general's claims for injunctive relief were "aimed at securing an honest marketplace, promoting proper business practices, protecting Wisconsin consumers and advancing plaintiff's interest in the economic well-being of its residents").

UWM's cases illustrate the point. In *Department of Fair Employment & Housing v. Lucent Technologies, Inc.*, for example, the Ninth Circuit determined that California was not the real party in interest in a case brought by one of its agencies on behalf of *a single aggrieved employee*. 642 F.3d 728, 735, 740 (9th Cir. 2011). There, the court found, the interest California sought to vindicate was general compliance with its employment discrimination laws, primarily for the benefit of that single employee. *Id.* at 738–40, n.8. By contrast, one year later in *Nevada v. Bank of America*, the Ninth Circuit considered a case in which the Nevada Attorney General brought claims against a mortgage lender, claiming it had "misled Nevada consumers about the terms and operation of its home mortgage modification and foreclosure processes." 672 F.3d at 664. The Ninth Circuit concluded that Nevada *was* the real party in interest, expressly distinguishing *Lucent*, because unlike California's agency there, "the Nevada Attorney General sued to protect the

hundreds of thousands of homeowners in the state allegedly deceived by Bank of America," whose deceptive practices had an impact on "the Nevada economy as a whole." *Id.* at 669–70. Ohio's claims here resemble Nevada's in *Bank of America* and look nothing like California's in *Lucent*.[7]

**Fifth**, UWM claims the Attorney General has no statutory or common law authority to seek consumer damages on behalf of the State, which precludes any finding that Ohio is the "real party" here. Opp. at 10. But that too is wrong. As explained at length in the opposition to UWM's motion to dismiss, the Attorney General has both express statutory authority to bring claims under the CSPA, RMLA, and CPA, MTD Opp. § I.A, and inherent authority to pursue remedies on behalf of Ohio citizens as *parens patriae, id.* § I.B; *see also State ex rel. Cordray v. Marshall*, 915 N.E.2d 633, 638 (Ohio 2009) (holding that the Attorney General "has common-law—as well as statutory —authority to institute suits on behalf of the public"); *Ohio v. United Transp., Inc.*, 506 F.Supp. 1278, 1281–82 (S.D. Ohio 1981) (collecting cases and noting "[t]he Ohio Supreme Court has long recognized the broad inherent common law powers of the attorney general," which include "contesting infringements of the rights of the general public via the doctrine of parens patriae").

Importantly, although UWM dresses up its challenges to Ohio's claims as challenges to the Attorney General's "statutory authority," Opp. at 10, UWM's arguments primarily go to the merits of those claims. For example, it disputes whether Ohio has a cause of action under the CPA or for civil penalties or restitution under the CSPA. Doc. 16 at 9–22. Those are merits questions.

---

[7] UWM's other cases, like *Lucent*, do not concern claims for injunctive relief aimed at preventing systematic harm to a state's economy, but rather remediation of private injuries. *See Grace Ranch, L.L.C. v. BP Am. Prod. Co.*, 989 F.3d 301, 306–09 (5th Cir. 2021) (concerning claim by private plaintiff seeking injunction to "remediate" specific "contaminated land" belonging to plaintiff); *State ex rel. Guste v. Fedders Corp.*, 524 F.Supp. 552, 554, 557 (M.D. La. 1981) (concerning claims seeking *inter alia* an injunction to "require the defendants to replace or repair promptly any defective appliance belonging to a Louisiana consumer" which necessarily "operates only in favor of Louisiana consumers who are affected by a defendant's unlawful conduct").

*Facione v. CHL Mortg. Tr. 2006-J1*, 628 F. App'x 919, 921 (6th Cir. 2015) ("statutory standing" is "assessed in conjunction with the merits of the claim, not as a threshold issue" (citations omitted)). And as discussed above, such questions should not be resolved on a motion to remand.

**Finally**, UWM argues that *Ohio v. GMAC Mortgage, LLC*, 760 F.Supp.2d 741 (N.D. Ohio 2011) "is on directly point [sic]" and dispositive of the "real party in interest" question. Opp. at 4–5; *see also id.* at 6, 10. Not so. In *GMAC*, the Attorney General brought claims concerning the submission of "false affidavits and other false documents" that were executed by "robosigners" in a specific set of past or pending foreclosure proceedings involving "hundreds of Ohio homes." *GMAC*, 760 F.Supp.2d at 744. Unlike the declaratory and injunctive relief sought here, which seeks to prevent UWM's deceptive conduct from injuring *future* Ohio borrowers in *future* mortgage transactions, the relief sought in *GMAC* was targeted at a "defined set" of several hundred "individuals in a post-mortgage transaction scenario." *Id.* at 748. For example, the Attorney General sought an injunction "preventing Defendants from continuing any foreclosure actions, summary judgment motions, default judgment motions, foreclosure sales, or submitting any robosigned affidavits in foreclosure cases that have 'an affidavit or assignment signed by [a specific robosigner].'" *Id.* at 749. Such relief, the court explained, "would be welcome news" for the several hundred GMAC mortgagors at risk of losing their homes in foreclosure actions that were already pending, but "of little interest to most other Ohio residents." *Id.*

The relief sought here is different. In fact, the effect of the declaratory and injunctive relief is exclusively prospective—it would not provide relief in connection with any completed UWM mortgage transaction, but rather regulate UWM's conduct in future mortgage sales. In other words, the core aim of the requested relief is to "prevent a questionable business practice that may affect some larger segment of potential Ohio consumers," which, as the *GMAC* court

acknowledged, is precisely the type of relief that renders the state the "real-party-in-interest." 760 F.Supp.2d at 749. *Marathon Petroleum* is the more analogous precedent because there, as here, "[t]he declaration, injunction, and civil penalties" sought by the attorney general would "benefit "all [the state's] consumers not just a particular set of consumers." 2007 WL 2900461 at *4–5. While the attorney general in *Marathon Petroleum*, like the Attorney General here, also sought "restitution on behalf of particular consumers," that was "only one aspect of the wide-ranging relief sought, the substantial portion of which will benefit all … consumers." *Id.*[8] The same reasoning applies here. *GMAC* is inapposite and Ohio is the "real party in interest" in this case.

## III.  The Court Does Not Have Jurisdiction Under CAFA.

UWM's claim that the CAFA grants federal jurisdiction here is a nonstarter: the Attorney General brought this suit on behalf of "a single entity—the State—in order to vindicate the rights of [Ohio] consumers." *AmeriGas Partners*, 954 F.3d at 836. This suit thus does not qualify as a "class action" within the meaning of CAFA. *Id.* Rather, this suit was brought by the Attorney General alone, with no representative plaintiff, on behalf of Ohio under its statutory CSPA and RMLA authority and as *parens patriae*, so CAFA does not apply. *See, e.g., id.*; *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847–50 (9th Cir. 2011); *LG Display Co., Ltd. v. Madigan*, 665 F.3d 768, 771–72 (7th Cir. 2011).

***First***, UWM's assertion that Ohio "plead[s] around" a class action to avoid CAFA (Opp. at 12) is irrelevant. The test for CAFA jurisdiction depends on whether the suit was brought as a class action, which requires numerosity, commonality, typicality, and adequacy of representation.

---

[8] Critically, as in *Marathon Petroleum*, the claims for monetary recovery in this action include claims for restitution which seek to vindicate Ohio's public, sovereign interest in disgorging ill-gotten gains from violators of state law. *See* MTD Opp. at 16–19. Ohio is not asserting purely compensatory damages claims to vindicate purely private interests.

*See AmeriGas Partners*, 954 F.3d at 835. The statute does not authorize courts to simply declare a lawsuit to be a "de facto class action," Opp. at 13, and assert jurisdiction over it. *Chimei Innolux Corp.*, 659 F.3d at 849 ("Had Congress intended CAFA to apply to any representative actions demonstrating sufficient similarity to class actions under Rule 23, it would not have also included an explicit requirement that the suit be brought 'as a class action.'"). UWM cites six inapposite cases to claim that a plaintiff cannot evade CAFA jurisdiction by "structuring" its suit to achieve that end, or by "omit[ting] the words 'class action' or [the provision] under which it proceeds." Opp. at 12. But none was brought by a state. Three of the cases were explicitly filed as class actions, but were structured to evade CAFA's amount in controversy requirement.[9] The other three involved private plaintiffs purporting to bring claims on behalf of themselves and unnamed plaintiffs without any plausible authority to do so other than under a Rule 23 equivalent.[10]

***Second***, UWM again contorts CSPA's statutory scheme to claim that "the Ohio legislature has not given the Ohio AG [the] authority" to seek damages outside of a class action. Opp. at 12. But the Ohio Supreme Court has expressly held otherwise. In *Celebrezze v. Hughes*, the Ohio Supreme Court held that even where the Attorney General's CSPA claims are "not brought as a class action," the Attorney General may still seek and recover monetary damages because, under R.C. 1345.07(B), the "trial court may, upon motion, in *any* action brought pursuant to R.C. 1345.07(A) 'make appropriate orders…to reimburse consumers found to have been damaged.'" 479 N.E.2d 886, 889 (Ohio 1985) (quoting R.C. 1345.07(B)). UWM's attempts to distinguish

---

[9] *See Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 590–91, 595 (2013); *Freeman v. Blue Ridge Paper Prods., Inc.*, 551 F.3d 405, 406 (6th Cir. 2008); *Alfaro v. Banter by Piercing Pagoda*, 2022 WL 1284823, at *1 (C.D. Cal. Apr. 29, 2022).

[10] *Badeaux v. Goodell*, 358 F.Supp.3d 562, 569 (E.D. La. 2019); *Williams v. Emps. Mut. Cas. Co.*, 845 F.3d 891, 900 (8th Cir. 2017); *Song v. Charter Commc'ns, Inc.*, 2017 WL 1149286, at *1 (S.D. Cal. Mar. 28, 2017)

*Hughes* fail. *See* MTD Opp. at 10–11. The fact that *Hughes* concerned monetary awards set by statute as opposed to compensatory damages or restitution is irrelevant—UWM points to nothing in *Hughes* suggesting its holding is so limited, and Ohio courts routinely award restitution in non-class CSPA suits. *See State ex rel. DeWine v. The Game Smith*, 2011 Ohio Misc. LEXIS 16731, at *5 (Ct. Com. Pl. Jan. 11, 2011) (awarding restitution); *State ex rel. Cordray v. JR & Sons Quality Home Improvements*, 2010 Ohio Misc. LEXIS 11786, at *8 (Ct. Com. Pl. June 11, 2010) (same). *Hughes*, moreover, was not "abrogated" by *Felix v. Ganley Chevrolet, Inc.*, 49 N.E.3d 1224 (Ohio 2015), as UWM claims. Opp. at 14. *Felix* was not a *parens patriae* action, did not even cite *Hughes*, and concerned a different CSPA provision, R.C. 1345.09(B), which provides for private plaintiffs to bring CSPA claims and was not at issue in *Hughes* or here. 49 N.E.3d at 1233–34.[11]

**Third**, UWM argues that because Ohio's Complaint contains a single reference to R.C. 1345.07(A)(3), Ohio is necessarily bringing a class action under that provision. Opp. at 13 (citing Compl. ¶ 232). That is absurd. The Complaint's lone citation to R.C. 1345.07(A)(3) is included to demonstrate that, beyond the various express CSPA provisions UWM has violated (*see* Compl. ¶¶ 227–31), it was also on notice that its acts were deceptive through the cases in the Attorney General's Public Inspection File, as referenced in R.C. 1345.07(A)(3)(c). A single citation, employed for a discrete purpose, cannot transform an entire action into a class action. And the Complaint cannot reasonably be read to "invoke" R.C. 1345.07(A)(3) in the sense that it is relying on it as the source of authority for any portion of the CSPA claim.

---

[11] Moreover, even if UWM were right that Ohio needed bring its CSPA claim as a class action to seek monetary relief other than civil penalties, that would only mean that Ohio **should** have brought this suit as a class action, not that it **actually did** bring this suit as a class action removable under CAFA. Put differently, if UWM were right (it is not), that would only mean that a portion of Ohio's CSPA claim seeking restitution is not cognizable. That argument goes to the merits, not jurisdiction, and it does not transform this suit into a removable CAFA class action.

UWM also argues that because the Complaint does *not* expressly cite R.C. 1345.07(B), the Attorney General cannot rely on that provision "to reimburse consumers." Opp. at 13. But the Attorney General does not need to expressly cite every statutory provision that justifies the remedies sought in the Complaint. *Gurry v. C.P.*, 972 N.E.2d 154, 158 (Ohio Ct. App. 2012) (Ohio Civil Rule 8(A) "does not require the plaintiff to plead the legal theory of recovery"); *Ne. Ohio Reg'l Sewer Dist. v. Advanced Med. Sys., Inc.*, 666 N.E.2d 612, 614–15 (Ohio Ct. App. 1995) ("trial court must examine the allegations in the plaintiff's complaint to determine if they support *any* basis for recovery, including those legal theories not specifically mentioned in the complaint") (emphasis in original). Here, the Complaint expressly states the Attorney General is seeking "an order for restitution" on behalf of those injured by UWM. Compl. ¶ 237. That statement is more than sufficient to put UWM on notice of the nature of the remedies Ohio seeks.

**Fourth**, UWM's argument that the Attorney General has no power to seek monetary relief on behalf of Ohio consumers, Opp. at 14, is contradicted by the language of 1345.07, the CPA and Ohio common law, as explained above and in Ohio's opposition to UWM's motion to dismiss. *See* MTD Opp. §§ I.A.3, I.A.5, I.B. This is a valid statutory enforcement and *parens patriae* suit. CAFA thus affords no basis for jurisdiction.

## IV.    The Court Does Not Have Federal-Question Jurisdiction

UWM's only claimed basis for federal-question jurisdiction is that a single element of a single claim under an Ohio state statute—the CPA—*might* require the application of federal law. Opp. at 15–20. But federal-question jurisdiction exists only if a plaintiff's cause of action was "(1) created by a federal statute or (2) presents a substantial question of federal law." *Miller v. Bruenger*, 949 F.3d 986, 991 (6th Cir. 2020). And substantial federal questions sufficient to support jurisdiction exist in only a "special and small category of cases." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). Ohio's CPA claim does not bring this case within that small and special

category, and exercising jurisdiction here would require the Court to either remand the other state-law claims and bifurcate this case or exercise supplemental jurisdiction over the remaining claims.

UWM concedes that Ohio's CPA claim, like its other causes of action, is created by Ohio state law—but it argues that the claim, as pled, raises a substantial question of federal law. That argument fails because UWM cannot establish, as it must, that the CPA claim "(1) necessarily raise[s] a stated federal issue that is (2) disputed and substantial and (3) hearable by the federal courts without disturbing the established federal-state court balance," as required to invoke federal-question jurisdiction over a state-law claim. *Miller*, 949 F.3d at 992.

## A. Ohio's CPA Claim Does Not Necessarily Raise Any Federal Issue

Ohio can prevail on its CPA claim without relying on a single federal predicate. "[I]f the plaintiff can support his claim with even one theory that does not call for an interpretation of federal law, his claim does not 'arise under' federal law for purpose of § 1331." *Desai v. CareSource, Inc.*, 2019 WL 1109568, at *3 (S.D. Ohio Mar. 11, 2019) (Rose, J.) (quoting *Dominion Pathology Lab'ys, P.C. v. Anthem Health Plans of Va., Inc.*, 111 F.Supp.3d 731, 737 (E.D. Va. 2015)). While federal predicates are the only predicate acts expressly identified in the Complaint, UWM does not dispute that Ohio's allegations could support equivalent Ohio state law predicates, *i.e.*, telecommunications fraud under R.C. 2913.05, sufficient to show a CPA violation.[12] *Cf. Ne. Ohio Reg'l Sewer Dist.*, 666 N.E.2d at 614–15 (trial court must determine if allegations "support *any* basis for recovery, including those legal theories not specifically mentioned in the complaint"). And even without relying on state law predicates, Ohio could

---

[12] To the extent that Ohio is required to meet a "higher pleading standard" for its CPA claim, it has done so, Opp. at 16 (citation omitted), but the existence of any such higher pleading standard is irrelevant to the uncontested fact that the Complaint's detailed allegations support Ohio predicate acts and provide UWM with adequate notice of those Ohio predicate acts.

establish CPA liability by proving two predicate violations of the Travel Act, which is almost exclusively an exercise in applying state law to the facts of the case. *See* MTD Opp. at 35. Regardless of whether removal is evaluated on the face of the operative complaint, a complaint does not "necessarily raise" a federal issue if the nucleus of operative facts alleged would allow the plaintiff to prove a state-law claim using only state-law predicates. *Connecticut by Tong v. Exxon Mobil Corp.*, 83 F.4th 122, 140 (2d Cir. 2023) ("if a court could resolve the case without reaching the federal issues, then the claims do not necessarily raise a federal issue" (cleaned up)).

**B.     The State's Action Does Not Raise Any Issue in Which There Is a Substantial Federal Interest**

UWM attempts to portray the routine application of federal criminal statutes to the Ohio's CPA predicate allegations as "substantial" federal issues. Opp. at 17–18. But "[t]he mere presence of a federal issue in a state cause of action … does not automatically confer federal question jurisdiction; rather, the federal issue must be of sufficient weight to be considered substantial." *Bourke v. Carnahan*, 2003 WL 23412975, at *2 (S.D. Ohio July 1, 2003) (citing *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 813 (1986)). To determine whether a federal issue is substantial, courts consider: "(1) whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute; (2) whether the federal question is important (*i.e.*, not trivial); (3) whether a decision on the federal question will resolve the case (*i.e.*, the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases (*i.e.*, the issue is not anomalous or isolated)." *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 570 (6th Cir. 2007) (en banc). Here, all four factors indicate any federal issue raised by Ohio's CPA claim is not sufficiently "substantial" to warrant federal jurisdiction.

16

*First*, as UWM concedes, no federal agency is involved in this dispute, nor is any agency's compliance with a federal statute at issue, and so this factor unambiguously favors remand. *See id.* at 570 ("The first factor is both objective and apparent …."); Opp. at 20.

*Second*, UWM concedes that "courts find 'run-of-the-mill' applications of federal statutes insubstantial." Opp. at 16. As many courts have held, federal predicates for state RICO statutes almost invariably present "run of the mill" applications, do not raise substantial questions of federal law. *See* Doc. 17 at 17 & n.7. Importantly, UWM cannot merely gesture at a question that *might* be raised: the "substantial, disputed question of federal law" must be the same federal question that "is a necessary element." *Fran. Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 13 (1983). Thus, to show that these applications are not "run-of-the-mill," UWM must show that each supposedly substantial question ***must*** be resolved to adjudicate Ohio's *prima facie* case. But UWM only attempts to do so with respect to the Travel Act and the CPA.[13] And for each predicate, there is no serious argument that it presents a "substantial" issue.

On mail and wire fraud, UWM wrongly claims that the Supreme Court changed the materiality standard. Opp. at 17. It did not. *See Kousisis v. United States*, 145 S. Ct. 1382, 1396 (2025). To the contrary, it stressed that the existing "boundaries of the fraudulent-inducement theory are not so imprecise as to … 'create traps' for the 'unwary.'" *Id.* at 1398 (quoting *Snyder v. United States*, 603 U.S. 1, 15 (2024)). As UWM's motion to dismiss arguments reveal, the state

---

[13] Ohio cannot rely solely on mail and wire fraud to prove a CPA pattern of corrupt activity, *see* R.C. 2923.34(A), but it could rely solely on Travel Act predicates. Therefore, UWM must prove a substantial question for the Travel Act, and any substantial question for mail or wire fraud is irrelevant. And UWM's claim that the CPA itself raises a federal question fails. Doc. 17 at 16.

court would need only to apply an established standard to specific facts, producing a holding with no great significance for the federal system. *See* Doc. 16 at 37.[14]

Nor does UWM show that there is a substantial federal question with respect to honest services fraud. Ohio stays within the crime's core: "offenders who, in violation of a fiduciary duty, participated in bribery or kickback schemes." *Skilling v. United States*, 561 U.S. 358, 407 (2010). Mortgage brokers are obvious fiduciaries under general agency principles and in the circumstances presented, *see United States v. Frost*, 125 F.3d 346, 366–67 (6th Cir. 1997), and even if the fiduciary question were not easily resolved, "such a determination would be fact intensive and have little impact on matters outside of the one at hand," *CSAHS/UHHS-Canton, Inc. v. Aultman Health Found.*, 2009 WL 9541240, at *4 (N.D. Ohio Feb. 27, 2009) (finding agency issue not substantial). *Ayres* is inapposite because the connection between the fraud statutes is not disputed. *See Ayres v. Gen. Motors Corp.*, 234 F.3d 514, 518 (11th Cir. 2000).

On the Travel Act, UWM asserts the allegations may implicate some unspecified "important federal constitutional issues" under the Commerce Clause, without identifying what those issues are or why they are important. Opp. at 17–18. Regardless, it is "widely recognized and accepted" that a state may exercise reasonable jurisdiction over out-of-state conduct that has a substantial effect within the state, as Ohio seeks to do here. *State v. Jack*, 125 P.3d 311, 319 & n.34 (Alaska 2005). More importantly, a constitutional challenge is a defense and therefore irrelevant to federal question jurisdiction. *See Miller*, 949 F.3d at 990. UWM cannot reasonably

---

[14] UWM also raises a question with an even more obvious answer—whether it is possible to commit fraud when one works in a regulated industry. Opp. at 17–18. UWM has explained that this argument is an irrelevant defense. Doc. 17 at 15 n.5. But it is also beyond reasonable question that TILA and the RESPA do not provide a safe zone where wire and mail fraud are not crimes. *See United States v. Arif*, 897 F.3d 1, 5–8 (1st Cir. 2018) (finding Federal Trade Commission Act did not preempt or impliedly repeal wire fraud).

ask this Court to exercise federal question jurisdiction based on an unidentified issue it did not even raise in its motion to dismiss and may never raise at all. *See* Doc. 16 at 36.

*Third*, UWM does not contest Ohio's argument that none of the purported federal questions would "dispose of" this case. Doc. 17 at 18. Instead, UWM argues that those questions are not "incidental" and "will 'resolve' significant aspects of this case." Opp. at 18. This is not the standard, though, and for good reason. If it were, almost any invocation of a federal statute in a complaint would meet it. As discussed above, the existence of a state law predicate act (telecommunications fraud under R.C. 2913.05), which may be supported by the same allegations that support federal wire fraud, demonstrates that the purported federal questions will not even resolve *this* cause of action, let alone the *entire* case. Indeed, UWM does not even argue that any of these questions would bear on any other cause of action in the case. Therefore, the "objective" third factor favors remand. *Mikulski*, 501 F.3d at 571. If this is an "overly literal reading," Opp. at 19, then the same criticism applies to the *en banc* Sixth Circuit, *see Mikulski*, 501 F.3d at 571.

*Fourth*, despite what UWM asserts, the Sixth Circuit has held that the final factor "concerns whether a decision on the particular federal question at issue in the litigation will set precedent that will control numerous other cases." *Id.* at 571 n.7; *see also Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700 (2006) (referring to holding that "would *govern* numerous tax sale cases" (emphasis added) (citation omitted)). An Ohio state court's resolution of any issues about the federal predicates alleged here would not control any federal or out-of-state case. *See Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1301 (11th Cir. 2008). And UWM has identified no important embedded federal question in this case that can be decided "once and for all." *Empire Healthchoice*, 547 U.S. at 700 (citation omitted). UWM does not assert that adjudicating federal CPA predicates would, in fact, control many other cases. Instead, UWM seeks

to lower the bar by claiming a state adjudication might "influence" subsequent litigation on similar issues. Opp. at 19. Again, if that were the standard, almost every case would meet it.

Because UWM fails all four factors—and each time in a fairly obvious way—it has shown no substantial federal interest in this litigation.

### C. Permitting Jurisdiction Would Disrupt the Federal-State Balance in Actions Under State RICO Statutes

Finally, opening federal courthouses to every state RICO claim that can be proven using federal predicates would impermissibly upset the federal-state balance in RICO litigation. UWM dismisses (in conclusory fashion) the practical effects of its position, which would significantly expand federal jurisdiction, both in original jurisdiction and removal cases. But federal courts must consider these practical effects. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 318–19 (2005). UWM disputes the notion that the absence of a private right of action under the federal criminal statutes invoked as predicates here weighs against jurisdiction because, it claims, the federal RICO statute its right of action. Opp. at 20. But that is wrong. A civil RICO claim is not a claim under the mail and fraud statutes or Travel Act. And as other courts have noted: "If the plaintiff could not have sued directly under the federal statute itself, then allowing federal jurisdiction for a state claim because that state claim is predicated on an alleged violation of that federal law would flout congressional intent and the implied congressional conclusion that the claimed violation is 'insufficiently 'substantial' to confer federal-question jurisdiction.'" *Horowitz v. Marlton Oncology, P.C.*, 116 F. Supp. 2d 551, 555 (D.N.J. 1999) (quoting *Merrill Dow*, 478 U.S. at 814).

### <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant this motion and remand the action to the Montgomery County Court of Common Pleas.

Dated: August 11, 2025           Respectfully submitted,

s/ *Melissa Wright* by s/ *Eric Palmer* per email authorization

**OFFICE OF THE ATTORNEY GENERAL OF OHIO**
Melissa Wright (Ohio Bar No. 77843)
Section Chief, Consumer Protection Section
30 East Broad Street
Columbus, OH 43215
Tel.: (614) 466-8169
Melissa.Wright@OhioAGO.gov

**BOIES SCHILLER FLEXNER LLP**
Jesse Panuccio
Eric Palmer (Ohio Bar No. 99742)
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Tel.: (954) 356-0011
jpanuccio@bsfllp.com
epalmer@bsfllp.com

John T. Zach
Marc Ayala
55 Hudson Yards
New York, New York 10001
Tel.: (212) 446-2300
jzach@bsfllp.com
mayala@bsfllp.com

Tyler Ulrich
100 SE Second Street, Suite 2800
Miami, Florida 33131
Tel.: (305) 357-8422
tulrich@bsfllp.com

*Counsel for Plaintiff State of Ohio*

## CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2025, a copy of the foregoing was served on the following via CM/ECF:

**JONES DAY**
Jeffrey J. Jones
Michael R. Gladman
Brandy Hutton Ranjan
325 John H. McConnell Boulevard, Suite 600
Columbus, Ohio 43215
Phone: (614) 469-3939
jjjones@jonesday.com
mrgladman@jonesday.com
branjan@jonesday.com

*Counsel for Defendant United Wholesale Mortgage, LLC*

s/ *Eric Palmer*
Eric Palmer