## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION (DAYTON)

| | |
|---|---|
| STATE OF OHIO *ex rel.* DAVE YOST, Attorney General of the State of Ohio, | Case No.:  3:25-cv-00160 |
| *Plaintiff,* | Hon. Thomas M. Rose |
| v. | Hon. Judge Caroline H. Gentry |
| UNITED WHOLESALE MORTGAGE, LLC, | ORAL ARGUMENT REQUESTED |
| *Defendant.* | |

## PLAINTIFF STATE OF OHIO'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT UNITED WHOLESALE MORTGAGE, LLC'S MOTION TO DISMISS

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND .................................................................................................... 1

LEGAL STANDARD .............................................................................................................. 4

ARGUMENT ........................................................................................................................... 4

I.      Ohio Has Authority to Bring Its Claims ........................................................................ 4

The Attorney General of Ohio has express statutory authorization to bring his statutory claims. R.C. 1345.07; R.C. 1322.52; R.C. 2923.34. The Attorney General also has inherent common law authority to bring common law claims, including claims for restitution and damages.

A.      Ohio Has Express Authorization to Bring Its Statutory Claims ..................... 5

1.      Ohio Can Pursue Injunctive Relief and Declaratory Relief Under the Ohio Consumer Sales Practices Act ("CSPA").................... 5

It is uncontested that the Attorney General may seek declaratory and injunctive relief under the CSPA. R.C. 1345.07(A)(1)-(2).

2.      Ohio Pled Valid Claims For Civil Penalties Under the CSPA .............. 5

The Attorney General may pursue civil penalties under the CSPA because UWM had notice of the wrongfulness of its conduct under R.C. 1345.07(D). Sufficiency of notice is not an appropriate subject for a motion to dismiss. *Ferron v. Dish Network*, 961 N.E.2d 705, 710 (Ohio 2011). In any event, the Complaint cited cases involving practices with "substantial similarity" to UWM's violations of the CSPA. *Marrone v. Philip Morris USA, Inc.*, 850 N.E.2d 31, 36 (2006); *see Ohio ex rel. Ohio Att'y Gen. v. Rojas*, No. CV-12-780588 (Ohio Ct. Com. Pl. Oct. 10, 2012); *Ohio ex rel. Rogers v. Lavensky*, No. CV-07-632077 (Ohio Ct. Com. Pl. Oct. 1, 2008); *State ex rel. Dann v. Bluegrass Mortg. Serv., Inc.*, No. 07- 10425 (Ohio Ct. Com. Pl. Mar. 17, 2008); *Lardakis v. Martin*, No. CV-94-01-0234 (Ohio Ct. Com. Pl. July 29, 1994). It makes no difference that some of Ohio's cases involved consent or default judgment, because such a judgment is still a determination by a court. *See Musuraca v. Kurlemann Builders, Inc.*, 2007 WL 9898980, at *1 (Ohio Ct. Com. Pl. Oct. 25, 2007); *Charvat v. Telelytics, LLC*, 2006 WL 2574019, at *11 (Ohio Ct. App. Aug. 31, 2006).

3.      Ohio Can Seek Damages for Consumers Under the CSPA Pursuant to R.C. 1345.07(B) ................................................................ 10

The Attorney General may pursue damages under the CSPA. The Supreme Court of Ohio has held that R.C. 1345.07(B) authorizes "appropriate orders … to reimburse consumers" in any action under R.C. 1345.07(A), not just class actions. *Celebrezze v. Hughes*, 479 N.E.2d 886, 889-

90 (Ohio 1985). *Felix v. Ganley Chevrolet, Inc.* did not abrogate *Hughes* because it dealt with the specific language of a separate section, R.C. 1345.09(B).

| | **4.** | **Ohio May Seek Injunctive Relief and Damages Under the Residential Mortgage Lending Act ("RMLA")** | **11** |

It is uncontested that the Attorney General may seek injunctive relief under the RMLA. *See* R.C. 1322.52(B)(1). Ohio may also obtain restitution and damages because they are other remedies provided by law. *See* R.C. 1322.52(C).

| | **5.** | **Ohio May Seek Triple Damages and Other Relief Under the Ohio Corrupt Practices Act ("CPA")** | **12** |

The Attorney General may sue under the OCPA based on its sovereign interest in the well-being of Ohio residents and the Ohio mortgage market. *See* R.C. 2923.34(A), (E); *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982); *Iron Workers Loc. Union No. 17 Ins. Fund v. Philip Morris Inc.*, 23 F. Supp. 2d 771, 787-88 (N.D. Ohio 1998).

| **B.** | **The Attorney General Has Constitutional And Statutory Authority to Prosecute Claims For Restitution and Damages That Implicate The State's Sovereign Interests** | **13** |

The Attorney General has broad inherent common law authority defined by the American (not English) understanding of the attorney general, including the authority to bring *parens patriae* actions to vindicate the state's sovereign or quasi-sovereign interests. *See State ex rel. Cordray v. Marshall*, 915 N.E.2d 633, 637-38 (Ohio 2009); *Ohio v. United Transp., Inc.*, 506 F. Supp. 1278, 1281-82 (S.D. Ohio 1981); *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 600 (1982); R.C. 109.02. His authority includes the common law power to recover damages and restitution, since it has not been prohibited by statute. *See Alaska Sport Fishing Ass'n v. Exxon Corp.*, 34 F.3d 769, 773 (9th Cir. 1994); *United Transp.*, 506 F.Supp. at 1281, 1283. Here, the Attorney General can seek redress owing to Ohio's sovereign or quasi-sovereign interests in the economic well-being of Ohioans, the enforcement of Ohio law, and the disgorgement of ill-gotten gains. *See Kentucky v. Biden*, 23 F.4th 585, 599 (6th Cir. 2022); *Snapp*, 458 U.S. at 601; *Edmond v. Consumer Prot. Div. (In re Edmond)*, 934 F.2d 1304, 1310-11 (4th Cir. 1991).

| **II.** | **Ohio Pleads Viable Claims** | **19** |
| | **A.** | **Ohio States Claims Under the CSPA** | **19** |
| | | **1.** | **Ohio Need Not Plead All of Its CSPA Claims With Particularity** | **20** |

Under Ohio state law, CSPA claims do not sound in fraud and do not require pleading with particularity when they require no showing of intent to defraud. *See* R.C. 1345.02; *Schmitz v. NCAA*, 67 N.E.3d 852, 870 (Ohio Ct. App. 2016); *Young v. UC Health*, 2015 Ohio Misc. LEXIS 40122, at *15–16 (Ohio Ct. Com. Pl. Sep. 2, 2015); *Ferron v. Dish Network, LLC*, 961 N.E.2d

705, 712 (Ohio Ct. App. 2011); *Volbers-Klarich v. Middletown Mgmt., Inc.*, 929 N.E.2d 434, 440–41 (Ohio 2010).

**2.    Ohio Has Met the Pleading Standard of Rule 9(b) ............................. 20**

The Complaint satisfies Federal Rule of Civil Procedure 9(b) because it alleges specific misstatements and details about the timing, speaker, and means of communication.  Ohio need not allege reliance because it is not an element of the CSPA.  *Jones v. J. Duran, Inc.*, 2020 WL 5743212, at *3 (Ohio Ct. App. Sept. 25, 2020).

**3.    Ohio Adequately Alleges Actionable, Deceptive Conduct .................. 22**

Ohio states a claim despite UWM's other arguments.  Ohio has alleged conduct that was within the two-year statute of limitations, *see* R.C. 1345.07(E); deceptive because of its tendency to induce a false belief, *see Durnell's RV Sales Inc. v. Beckler*, 226 N.E.3d 362, 380 (Ohio Ct. App. 2023); actionable because it went beyond subjective boasting and involved the omission of material facts, *see Outdoor Techs., Inc. v. Vinyl Visions, LLC*, 2006 WL 2849782, at *4 (S.D. Ohio Sept. 29, 2006); *Thomas v. Nat'l Coll. of Va., Inc.*, 901 F.Supp.2d 1022, 1033 (S.D. Ohio 2012); UWM's responsibility because it made and directed the statements and omissions, *see Charvat v. Farmers Ins. Columbus, Inc.*, 897 N.E.2d 167, 177-78 (Ohio Ct. App. 2008); and the proximate cause of injury.

**B.    Ohio States Claims Under the RMLA ................................................ 26**

**1.    Ohio Need Not Plead All of Its RMLA Claims with
       Particularity....................................................................................... 26**

The Rule 9(b) pleading standard does not apply to RMLA claims that do not require intent to defraud, *see* R.C. 1322.40(B); R.C. 1322.45(A), or that only require a showing of "improper" conduct, *see Steele v. Cmty. Loan Servicing, LLC*, 2024 WL 37116, at *5 (S.D. Ohio Jan. 3, 2024).

**2.    Ohio Adequately Alleges the Existence of Affiliation Between
       UWM and Its Brokers ........................................................................ 27**

The ordinary meaning of "unaffiliated" controls because the term is undefined.  R.C. 1322.45(B); Ohio Admin. Code 1301:8-7-01; *State ex rel. Herman v. Klopfleisch*, 651 N.E.2d 995, 998 (Ohio 1995).  UWM and its brokers are affiliated because they are allied, associated, or united. *See E. Ohio Gas Co. v. Pub. Utilities Comm'n of Ohio*, 530 N.E.2d 875, 879 (Ohio 1988).

**3.    Ohio Adequately Pleads Claims Under R.C. 1322.40.......................... 28**

Ohio states claims under R.C. 1322.40 because it pleads that UWM made misstatements under the ordinary definition of "make," *see Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 144 (2011); *Motzer Dodge Jeep Eagle, Inc. v. Ohio Att'y Gen.*, 642 N.E.2d 20, 26 (Ohio Ct. App. 1994), because it has pled "improper" conduct, *see FV 1 Inc. v. Goodspeed*, 974 N.E.2d 664, 676 (Ohio Ct. App. 2012), and for some of the same reasons it states CSPA claims.

C.      Ohio States Claims Under the CPA ................................................................. 29

    1.     Ohio Adequately Alleges a Pattern of Corrupt Activity .................... 30

Ohio has alleged a pattern of corrupt activity.  For purposes of mail and wire fraud, UWM made material misrepresentations and omissions, *see United States v. Daniel*, 329 F.3d 480, 487 (6th Cir. 2003); that provided incomplete and misleading information, violating UWM's duty to disclose, *see Rubin v. Schottenstein, Zox & Dunn*, 143 F.3d 263, 268 (6th Cir. 1998); and that were made with intent to defraud, *see United States v. Goodwin*, 748 F. App'x 651, 655 (6th Cir. 2018). Regarding honest services fraud, UWM's brokers owed fiduciary duties under the circumstances. *See United States v. Harris*, 881 F.3d 945, 952 (6th Cir. 2018); *United States v. Skelly*, 442 F.3d 94, 98 (2d Cir. 2006).  Regarding the Travel Act, UWM can establish a Travel Act violation constituting an OCPA predicate without a prior conviction.  R.C. 2923.31(I)(1).

    2.     Ohio Adequately Alleges an Enterprise. ............................................... 35

Ohio pleads an OCPA enterprise by showing a continuing unit with a common purpose. *See State v. Beverly*, 37 N.E.3d 116, 118, 119 (Ohio 2015).  UWM cites no case law establishing its purported "rimless wheel" defense, and such a defense would not apply because the enterprise's members intentionally conspired with each other, *see United States v. Householder*, 2023 WL 23801, *3-4 (S.D. Ohio Jan. 2, 2023), and because the members' actions would be contrary to self-interest absent a conspiracy, *see Re/Max Int'l, Inc. v. Realty One, Inc.*, 173 F.3d 995, 1009 (6th Cir. 1999).  Nor do changes in membership invalidate the enterprise.  *See Handeen v. Lemaire*, 112 F.3d 1339, 1351 (8th Cir. 1997).

    3.     Ohio Adequately Alleges Proximate Cause. ......................................... 38

Ohio sufficiently pleads proximate cause under OCPA, which permits claims for indirect injury, R.C. 2923.34(E), because UWM foresaw the harm it caused, *see Bourke v. Carnahan*, 840 N.E.2d 1101, 1106 (Ohio Ct. App. 2005).

D.      Ohio States a Claim for Civil Conspiracy ........................................................ 40

Ohio has a viable civil conspiracy claim because UWM furthered the conspiracy with its own unlawful acts, because it has alleged a malicious combination shown by circumstantial evidence, *see In re Nat'l Century Fin. Enters., Inc.*, 504 F. Supp. 2d 287, 326 (S.D. Ohio 2007), and because UWM's brokers breached fiduciary duties by failing to reveal their steering plan.

E.      Ohio States Claims for Unjust Enrichment ...................................................... 41

Ohio has viable unjust enrichment claims because UWM knowingly received the proceeds of its scheme from Ohio borrowers, *see Calderone v. Baird*, 2025 WL 754069, at *3 (Ohio Ct. App. Mar. 10, 2025); because Ohio is not seeking relief pursuant to the mortgage contracts, *see Rorig v. Thiemann*, 2007 WL 2071909, at *10 (S.D. Ohio July 17, 2007); and because an unjust enrichment claim does not require a showing of fraud, *FedEx Corp. Servs., Inc. v. Heat Surge, LLC*, 131 N.E.3d 397, 402 (Ohio Ct. App. 2019).

**F.**     **Ohio States Claims for Common Law Fraud**.......................................................**43**

Ohio has viable fraud claims because there was a duty to disclose under the circumstances, *see Stone v. Davis*, 419 N.E.2d 1094, 1098 (Ohio 1981); because Ohio sufficiently alleged intent; because reliance may be presumed, *see Hollar v. Philip Morris Inc.*, 43 F. Supp. 2d 794, 809-10 (N.D. Ohio 1998); and because reliance was justifiable under the circumstances, *see Morgan v. Mikhail*, 2008 WL 4174063, at *15 (Ohio Ct. App. Sept. 11, 2008).

**CONCLUSION** .........................................................................................................**45**

# **TABLE OF AUTHORITIES**

## Cases

*Alaska Sport Fishing Ass'n v. Exxon Corp.*, 34 F.3d 769 (9th Cir. 1994) .................................. 17

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592 (1982) .................. passim

*Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, 649 F.Supp.2d 702 (N.D. Ohio 2009) ................................................................................................................ 23

*Att'y Gen. v. Del. & Bound Brook R.R. Co.*, 27 N.J. Eq. 631 (N.J. 1876) ................................... 16

*Bennett v. MIS Corp.*, 607 F.3d 1076 (6th Cir. 2010) ................................................................ 22

*Beshear v. Ky. Off. of Gov. ex rel. Bevin*, 498 S.W.3d 355 (Ky.. 2016) ...................................... 16

*Bethel Oil & Gas, LLC v. Redbird Dev., LLC*, 258 N.E.3d 470 (Ohio Ct. App. 2024) ............... 25

*Blankenship v. CFMOTO Powersports, Inc.*, 961 N.E.2d 750 (Ohio Ct. Com. Pl. 2011) ............. 8

*Blon v. Bank One*, Akron, N.A, 519 N.E.2d 363 (Ohio 1988) ...................................................... 43

*Bourke v. Carnahan*, 840 N.E.2d 1101 (Ohio Ct. App. 2005) .................................................... 39

*Brown v. Concerned Citizens for Sickle Cell Anemia, Inc.*, 386 N.E.2d 1155 (Ohio 1978) .. 15, 18

*CACH, LLC v. Young*, 2021 WL 6276314 (Ohio Ct. App. Dec. 17, 2021) ................................... 6

*Cagayat v. United Collection Bureau, Inc.*, 952 F.3d 749 (6th Cir. 2020) ................................... 4

*Calderone v. Baird*, 2025 WL 754069 (Ohio Ct. App. Mar. 10, 2025) ....................................... 41

*Celebrezze v. Hughes*, 479 N.E.2d 886 (Ohio 1985) ......................................................... 9, 10, 11

*Chapman v. Tristar Prods., Inc.*, 940 F.3d 299 (6th Cir. 2019) .............................................. 14, 17

*Charvat v. Farmers Ins. Columbus, Inc.*, 897 N.E.2d 167 (Ohio Ct. App. 2008) ....................... 25

*Charvat v. Telelytics, LLC*, 2006 WL 2574019 (Ohio Ct. App. Aug. 31, 2006)........................... 9

*City of Gahanna v. Ohio Mun. Joint Self-Ins. Pool*, 2020 WL 9594330 (Ohio Ct. Com. Pl. Apr. 16, 2020) ............................................................................................................................. 29

*Cleveland v. JP Morgan Chase Bank, N.A.*, 2013 WL 1183332, at *9 (Ohio Ct. App. Mar. 21, 2013) .......................................................................................................................... 13

*Collier v. LoGiudice*, 818 Fed. App'x 506 (6th Cir. 2020) ........................................................ 40

*Cordray v. JR & Sons Quality Home Improvements*, 2010 Ohio Misc. LEXIS 11786 (Ct. Com. Pl. June 11, 2010) ................................................................................................ 10

*Cordray v. Marshall*, 915 N.E.2d 633(Ohio 2009) ............................................................. 13, 15

*Cristino v. Bur. of Workers' Comp.*, 977 N.E.2d 742 (Ohio Ct. App. 2012) ............................. 43

*CSAHA/UHHS-Canton, Inc. v. Aultman Health Found.*, 2012 WL 750972 (Ohio Ct. App. Mar. 5, 2012) ....................................................................................................................... 39

*Dalrymple v. Westerville*, 201 N.E.3d 382 (Ohio Ct. App. 2022) .................................................. 45

*Dann v. Bluegrass Mortg. Serv., Inc.*, No. 07-10425 (Ohio Ct. Com. Pl. Mar. 17, 2008) ......... 7, 8

*De Los Angeles Aurora Gomez v. Bank of Am., N.A.*, 2013 WL 12165673 (C.D. Cal. Aug. 21, 2013) ....................................................................................................................... 40

*Deere & Co. Repair Serv. Antitrust Litig.*, 703 F.Supp.3d 862, 901–08 (N.D. Ill. Nov. 27, 2023) ................................................................................................................................ 37

*Dewine v. The Game Smith*, 2011 Ohio Misc. LEXIS 16731 (Ct. Com. Pl. Jan. 11, 2011) ......... 10

*District of Columbia v. JTH Tax LLC*, 2023 WL 130736 (D.D.C. Jan. 9, 2023) ......................... 13

*Doerfler v. Price*, 128 N.E. 173, 175 (Ohio 1920) ....................................................................... 15

*Durnell's RV Sales Inc. v. Beckler*, 226 N.E.3d 362 (Ohio Ct. App. 2023) ................................. 23

*E. Ohio Gas Co. v. Pub. Utilities Comm'n of Ohio*, 530 N.E.2d 875 (Ohio 1988) ............... 27, 28

*Edmond v. Consumer Prot. Div.*, 934 F.2d 1304 (4th Cir. 1991) ................................................. 18

*FedEx Corp. Servs., Inc. v. Heat Surge, LLC*, 131 N.E.3d 397 (Ohio Ct. App. 2019) ............... 43

*Felix v. Ganley Chevrolet, Inc.*, 49 N.E.3d 1224 (Ohio 2015) .................................................... 11

*Fenner v. Gen. Motors (In re Duramax Diesel Litig.)*, 298 F.Supp.3d 1037 (E.D. Mich. 2018) . 31

*Ferron v. Dish Network*, 961 N.E.2d 705 (Ohio 2011) ................................................................. 6

*Ferron v. Dish Network, LLC*, 961 N.E.2d 705 (Ohio Ct. App. 2011) ......................................... 20

*Fortini v. Hoffman*, 12 Ohio App. 341 (Ohio Ct. App. 1920) ................................................. 18, 19

*FV 1 Inc. v. Goodspeed*, 974 N.E.2d 664 (Ohio Ct. App. 2012) ................................................. 29

*Gascho v. Glob. Fitness Holdings, LLC*, 863 F.Supp.2d 677 (S.D. Ohio 2012) .................. 6, 8, 9

*Gilbraith v. Hixson (In re Gilbraith)*, 512 N.E.2d 956 (Ohio 1987) ........................................... 10

*GM LLC v. FCA US LLC*, 2020 WL 3833058 (E.D. Mich. July 8, 2020).................................... 40

*Gordon v. B. Braun Med. Inc.,* 2020 WL 1491378 (S.D. Ohio Mar. 27, 2020) ........................... 20

*Grgat v. Giant Eagle, Inc.*, 135 N.E.3d 846 (Ohio Ct. App. 2019)................................................. 20

*Guth v. Allied Home Mtg. Cap. Corp.*, 2008 WL 2635521 (Ohio Ct. App. July 7, 2008) ........... 21

*Guzman v. USAA Fed. Savings Bank*, 2024 WL 1973096 (N.D. Ohio May 3, 2024)................. 29

*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989)...................................................................... 36

*Hamilton v. Ball*, 7 N.E.3d 1241 (Ohio Ct. App. 2014) ......................................................... 9, 10

*Handeen v. Lemaire*, 112 F.3d 1339 (8th Cir. 1997) .................................................................... 37

*Harper v. Weltman, Weinberg & Reis Co.*, 2019 WL 3494002 (Ohio. Ct. App. Aug. 1, 2019) .. 20

*Helton v. U.S. Restoration & Remodeling, Inc.*, 2013 Ohio Misc. LEXIS 27341 (Ohio Ct. Com. Pl. Sep. 12, 2013)........................................................................................................................ 20

*Herman v. Klopfleisch*, 651 N.E.2d 995, 998 (Ohio 1995) ......................................................... 27

*HMV Props., LLC v. IDC Ohio Mgmt., LLC*, 2011 WL 53166 (S.D. Ohio Jan. 6, 2011)........... 38

*Holden v. Heckler*, 584 F.Supp. 463 (N.D. Ohio 1984) ............................................................... 18

*Hollar v. Philip Morris Inc*., 43 F.Supp.2d 794 (N.D. Ohio 1998) .............................................. 45

*Hood ex rel. State v. BASF Corp.*, 2006 WL 308378 (Miss. Ch. Jan. 17, 2006)................... 12, 17

*Infinite Sec. Sols., LLC v. Karam Props., II, Ltd.*, 37 N.E.3d 1211 (Ohio 2015) ........................... 9

*Iron Workers Loc. Union No. 17 Ins. Fund v. Philip Morris Inc.*, 23 F.Supp.2d 771 (N.D. Ohio 1998) ......................................................................................................................................... 12

*Iron Workers Loc. Union No. 17 Ins. Fund v. Philip Morris Inc.*, 29 F.Supp.2d 825 (N.D. Ohio 1998) ......................................................................................................................................... 30

*Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011)............................... 28

*Jones v. J. Duran, Inc*., 2020 WL 5743212 (Ohio Ct. App. Sept. 25, 2020)................................ 21

*Kentucky v. Biden*, 23 F.4th 585 (6th Cir. 2022) .................................................................... 14, 17

*Lardakis v. Martin*, No. CV-94-01-0234 (Ohio Ct. Com. Pl. July 29, 1994)........................ 6, 7, 8

*Lee v. Countrywide Home Loans*, 2010 WL 1487131 (N.D. Ohio Apr. 13, 2010) ............... 32, 34

*Lester v. Wow Car Co.*, 2013 WL 6058676 (S.D. Ohio Nov. 14, 2013) ...................................... 22

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) ............................. 38

*Little v. Dayton & Se. R.R. Co.*, 36 Ohio St. 434 (1881) ............................................................ 16

*Long v. Ford Motor Co.*, 1983 Ohio App. LEXIS 14177 (Ohio Ct. App. Sept. 15, 1983) .......... 20

*Louisiana v. Texas*, 176 U.S. 1 (1900) ...................................................................................... 16

*Maine v. M/V Tamano*, 357 F.Supp. 1097 (D. Me. 1973) ........................................................... 17

*Marrone v. Philip Morris USA, Inc.*, 850 N.E.2d 31, 34 (Ohio 2006) ........................................... 6

*Medpace, Inc. v. Biothera, Inc.,* 2015 WL 1474985 (S.D. Ohio Mar. 31, 2015) ......................... 44

*Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674 (6th Cir. 1988) ................................. 21

*Missouri v. Illinois*, 180 U.S. 208 (1901) .................................................................................. 17

*Morgan v. Mikhail*, 2008 WL 4174063 (Ohio Ct. App. Sept. 11, 2008) ...................................... 45

*Mormon Church v. United States*, 136 U.S. 1 (1890) ........................................................... 18, 19

*Motzer Dodge Jeep Eagle, Inc. v. Ohio Att'y Gen.*, 642 N.E.2d 20 (Ohio Ct. App. 1994) .......... 29

*Musuraca v. Kurlemann Builders, Inc.*, 2007 WL 9898980 (Ohio Ct. Com. Pl. Oct. 25, 2007) ... 9

*Nat'l Century Fin. Enters., Inc.*, 504 F.Supp.2d 287 (S.D. Ohio 2007) ...................................... 40

*Nat'l Prescription Opiate Litig.*, 2018 WL 4895856 (N.D. Ohio Oct. 5, 2018) ............. 21, 43, 44

*Nathan v. Whirlpool Corp.*, 492 F.Supp.3d 747 (S.D. Ohio 2020) ................................................ 8

*Nernberg v. Pearce*, 35 F.3d 247 (6th Cir. 1994) ....................................................................... 44

*Nevada v. Bank of Am. Corp.*, 672 F.3d 661 (9th Cir. 2012) ...................................................... 13

*Nicole Gas Prod., Ltd.*, 519 B.R. 723 (Bankr. S.D. Ohio 2014) .................................................. 38

*O'Byrne v. Weyerhaeuser Co.*, 2022 WL 4133219 (S.D. Ohio Sept. 12, 2022) ........................ 25

*Ohio Att'y Gen. v. Suwinski (In re Suwinski)*, 509 B.R. 568 (S.D. Ohio 2013) .......................... 17

*Ohio Att'y Gen. v. Rojas*, No. CV-12-780588 (Ohio Ct. Com. Pl. Oct. 10, 2012) ................ 6, 7, 8

*Ohio v. United Transp., Inc.*, 506 F.Supp. 1278 (S.D. Ohio 1981) ........................... 13, 15, 16, 17

*Okavage Grp., LLC v. United Wholesale Mortg., LLC*, 2024 WL 982380 (M.D. Fla. Feb. 6, 2024) ................................................................................................................................... 3

*Outdoor Techs., Inc. v. Vinyl Visions, LLC*, 2006 WL 2849782 (S.D. Ohio Sept. 29, 2006) ...... 24

*Pennsylvania v. West Virginia*, 262 U.S. 553 (1923) .............................................................. 14, 17

*Petro v. Marshall*, 2006 WL 2924762  (Ohio Ct. App. Oct. 10, 2006)................................... 15, 16

*Prousalis v. Moore*, 751 F.3d 272 (4th Cir. 2014)........................................................................ 29

*Pub. Def. Agency. v. Super. Ct.*, 534 P.2d 947 (Alaska 1975)...................................................... 16

*Re/Max Int'l, Inc. v. Realty One, Inc.*, 173 F.3d 995 (6th Cir. 1999) ........................................... 37

*Reeves v. PharmaJet, Inc.*, 846 F.Supp.2d 791 (N.D. Ohio 2012) ............................................... 26

*Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239 (6th Cir. 2012) ................... 20, 22

*Reynolds v. Durrani*, No. CV 2013-04-1187 (Ohio Ct. Com. Pl. June 2, 2014) ......................... 20

*Rheinfrank v. Abbot Lab'ys*, 2013 WL 4067826 (S.D. Ohio Aug. 12, 2013)............................... 20

*Robins v. Glob. Fitness Holdings, LLC*, 838 F.Supp.2d 631 (N.D. Ohio 2012) ........................... 6

*Rogers v. Lavensky*, No. CV-07-632077 (Ohio Ct. Com. Pl. Oct. 1, 2008) .............................. 6, 7

*Root, Inc. v. Silver*, 2024 WL 85057 (S.D. Ohio Jan. 8, 2024) .................................................. 37

*Rorig v. Thiemann*, 2007 WL 2071909 (S.D. Ohio July 17, 2007).............................................. 42

*Rubin v. Schottenstein, Zox & Dunn*, 143 F.3d 263 (6th Cir. 1998)............................................ 32

*Sarkeys v. Indep. Sch. Dist. # 40*, 592 P.2d 529 (Okla. 1979) ................................................... 16

*Schmitz v. NCAA*, 67 N.E.3d 852 (Ohio Ct. App. 2016) ............................................................ 20

*Se. R.R. Co.*, 36 Ohio St. 434 (1881) ........................................................................................ 15

*Skilling v. United States*, 561 U.S. 358 (2010) ........................................................................... 34

*Smith v. FirstEnergy Corp.*, 518 F.Supp.3d 1118 (S.D. Ohio 2021).......................................... 30

*Smitty's/CAM2 303 Tractor Hydraulic Fluid Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2022 WL 710192 (W.D. Mo. Mar. 9, 2022)................................................................................ 8

*Spitzer v. Coventry First LLC*, 2007 WL 2905486 (N.Y. Sup. Ct. Sep. 25, 2007) ..................... 17

*State by Humphrey v. Alpine Air Prods., Inc.*, 490 N.W.2d 888 (Minn. Ct. App. 1992) ............ 17

*State Farm Mut. Auto. Ins. Co. v. Balcer Performance & Restoration*, 2018 WL 6436730 (Ohio Ct. App. Dec. 6, 2018) ................................................................................................ 41

*State v. Beverly*, 37 N.E.3d 116, 118 (Ohio 2015) ........................................................................ 36

*State v. Exxon Mobil Corp.*, 406 F.Supp.3d 420 (D. Md. 2019) .................................................. 17

*State v. First Nat'l Bank of Anchorage*, 660 P.2d 406 (Alaska 1982) ......................................... 17

*State v. Gonzalez*, 81 N.E.3d 419 (Ohio 2017) ............................................................................. 9

*State v. Johnson*, 1981 WL 5432 (Ohio Ct. App. Oct. 30, 1981) ........................................... 15, 16

*State v. McDowell*, 781 N.E.2d 1057 (Ohio Ct. App. 2002) ....................................................... 10

*Stone v. Davis*, 419 N.E.2d 1094 (Ohio 1981) ............................................................................ 44

*Swayne v. Beebles Invs., Inc.,* 891 N.E.2d 1216 (Ohio Ct. App. 2008) ....................................... 34

*Taylor v. Webster*, 231 N.E.2d 870 (Ohio 1967) ......................................................................... 40

*Texas v. Scott & Fetzer Co.*, 709 F.2d 1024 (5th Cir. 1983) ....................................................... 16

*Thomas v. Nat'l Coll. of Va., Inc*., 901 F.Supp.2d 1022 (S.D. Ohio 2012) ................................. 24

*Tribble v. Kellogg Co.*, 2012 WL 13435015 (N.D. Ohio June 19, 2012) .................................. 8, 9

*United States v. Battle*, 473 F.Supp.2d 1185 (S.D. Fla. 2006) .................................................... 37

*United States v. Bibby*, 752 F.2d 1116 (6th Cir. 1985) ............................................................... 31

*United States v. Daniel*, 329 F.3d 480 (6th Cir. 2003) ........................................................... 31, 33

*United States v. Eppolito*, 543 F.3d 25 (2d Cir. 2008) ................................................................ 37

*United States v. Frost*, 125 F.3d 346 (6th Cir. 1997) .................................................................. 34

*United States v. Goodwin*, 748 F. App'x 651 (6th Cir. 2018) ..................................................... 33

*United States v. Harris*, 881 F.3d 945 (6th Cir. 2018) ................................................................ 34

*United States v. Householder*, 137 F.4th 454 (6th Cir. 2025) ..................................................... 34

*United States v. Householder*, 2023 WL 23801 (S.D. Ohio Jan. 3, 2023) ................................. 37

*United States v. Rahimi*, 602 U.S. 680 (2024) ............................................................................ 15

*United States v. Skelly*, 442 F.3d 94 (2d Cir. 2006) .................................................................... 34

*United States v. Szur*, 289 F.3d 200 (2d Cir. 2002) .................................................................... 35

*United States v. Terry*, 2011 WL 2111127 (N.D. Ohio May 26, 2011) ...................................... 34

*VanDenBroeck v. CommonPoint Mortg. Co.*, 210 F.3d 696 (6th Cir. 2000) .............................. 38

*Volbers-Klarich v. Middletown Mgmt., Inc.*, 929 N.E.2d 434 (Ohio 2010) ................................ 20

*Walker v. Cedar Fair, L.P.*, 729 F.Supp.3d 765 (N.D. Ohio 2024) ................................. 6

*Walker v. Dominion Homes, Inc.*, 842 N.E.2d 570 (Ohio Ct. App. 2005) ................................ 24

*Wallace v. Midwest Fin. & Mortg. Servs., Inc*, 714 F.3d 414 (6th Cir. 2013)............................ 39

*Walton v. Residential Fin. Corp.*, 905 N.E.2d 1307 (Ohio Ct. Com. Pl. 2009)......................... 26

*Weiss v. Bank of Am. Corp.*, 153 F.Supp.3d 831 (W.D. Pa. 2015)................................ 36

*Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788 (6th Cir. 2012) ............................. 21

*Young v. UC Health*, 2015 Ohio Misc. LEXIS 40122 (Ohio Ct. Com. Pl. Sep. 2, 2015) ........... 20

*Zangara v. Travelers Indem. Co. of Am.*, 423 F.Supp.2d 762 (N.D. Ohio 2006)........................ 42

**Statutes**

12 C.F.R. § 1026.36(e)(1) ................................................................................................. 32

18 U.S.C. § 1952 ............................................................................................................. 35

Mich. Comp. Laws Ann. § 750.125 ................................................................................ 35

Ohio Admin. Code 13:8-3-03(F) ..................................................................................... 28

Ohio Admin. Code 1301:8-2-01(C) ........................................................................... 27, 28

Ohio Admin. Code 1301:8-7-01 ...................................................................................... 27

Ohio Admin. Code 1301:8-7-16(A)-(C) .......................................................................... 27

Ohio Admin. Code 1301:8-7-16(E)-(K) .......................................................................... 27

R.C. 109.02 ............................................................................................................... 14, 17

R.C. 1322.40(B) ........................................................................................................ 28, 29

R.C. 1322.40(C) ........................................................................................................ 27, 28

R.C. 1322.45 .................................................................................................................... 27

R.C. 1322.45(A) ........................................................................................................ 26, 27

R.C. 1322.45(B) ........................................................................................................ 27, 28

R.C. 1322.52(B)(1) ................................................................................................ 11

R.C. 1322.52(C) ..................................................................................................... 11

R.C. 1345.01 ............................................................................................................ 6

R.C. 1345.02(B) ..................................................................................................... 20

R.C. 1345.02(F) ..................................................................................................... 20

R.C. 1345.07 ........................................................................................................... 11

R.C. 1345.07(A)(1)–(2) ................................................................................. 5, 10, 11

R.C. 1345.07(A)(3) ................................................................................................ 10

R.C. 1345.07(B) ............................................................................................... 10, 11

R.C. 1345.07(D) .................................................................................................... 5, 8

R.C. 1345.09 ........................................................................................................... 11

R.C. 1345.09(B) ..................................................................................................... 5, 11

R.C. 2323.34(C) ..................................................................................................... 12

R.C. 2913.05(A) ..................................................................................................... 31

R.C. 2923.31(C) ..................................................................................................... 35

R.C. 2923.31(E) ..................................................................................................... 30

R.C. 2923.31(I) ................................................................................................ 30, 35

R.C. 2923.32(A) ..................................................................................................... 29

R.C. 2923.34(A) ..................................................................................................... 12

R.C. 2923.34(B) ..................................................................................................... 12

R.C. 2923.34(E) ............................................................................................. 12, 30, 38

**Other Authorities**

23 Ohio Jur.3d § 389 .................................................................................................... 10

Black's Law Dictionary (12th ed. 2024)....................................................................... 28

Clinton J. Miller & Terry M. Miller, *The Constitutional Charter of Ohio's Attorney General*, 37
    Ohio State L.J. 801, 833 (1976)................................................................... 14, 15

Restatement (Second) of Torts § 551(2)(b) ................................................................. 32

U.S. Constitution, Article IV, Section 3 ...................................................................... 19

**Rules**

Fed. R. Civ. P. 9(b) ...................................................................................... 20, 22, 26, 27

## PRELIMINARY STATEMENT

The State of Ohio, through its Attorney General, Dave Yost, has brought suit against United Wholesale Mortgage, LLC ("UWM"), the nation's largest wholesale mortgage lender for broker-originated loans, to hold UWM accountable for its predatory scheme to deceive thousands of Ohio borrowers into overpaying for their mortgages by millions of dollars. UWM falsely claims that mortgage brokers are independent from UWM and serving the interests of borrowers by shopping among different lenders for the best deals available. But at the same time, Ohio alleges, UWM colludes with those brokers and causes them to funnel loans back to UWM, allowing the company to charge above market rates and fees rather than saving borrowers money, as UWM claims.

Ohio has asserted eight Ohio state law causes of action against UWM for its deceptive business practices. Ohio alleges violations of Ohio's Consumer Sales Practices Act, Residential Mortgage Lending Act, and Corrupt Practices Act, and additional common law claims under Ohio law. UWM has moved to dismiss these claims, going as far as to even challenge the Attorney General's authority to bring these claims. But all the claims are adequately pled, and the Attorney General is clearly authorized to bring this action. UWM's motion to dismiss should be denied and Ohio's claims should continue forward to hold UWM accountable for the harm it has caused to Ohio and its citizens.

## FACTUAL BACKGROUND

The wholesale mortgage market is a $4 billion industry in Ohio. Doc. No. 13 ("Compl.) ¶ 26. In this market, consumers do not work directly with retail mortgage lenders. Instead, mortgage brokers shop at a variety of wholesale lenders on their behalf and advise prospective borrowers about their options. *Id.* ¶ 27. These brokers are supposed to be independent agents of the borrowers they serve—they owe a fiduciary duty to those borrowers to act as trustworthy

1

guides that can negotiate with multiple lenders, search a variety of mortgage options, and find the best loans for their clients. *See id.* ¶¶ 30, 35–39. Consumers value and pay for this independence. *Id.* ¶¶ 35–36. They would have no reason to work with a broker (and pay a broker commission) if the broker worked to advance the interests of a preferred lender rather than their interests. *See id.* ¶ 38.

As the largest wholesale lender in Ohio, UWM works to draw consumers into the wholesale mortgage channel by touting the value of independent brokers. *Id.* ¶¶ 2, 32–33. UWM CEO Mathew Ishbia has touted brokers as "completely independent," "not captive or connected to my company," and having "access to all lenders." *Id.* ¶ 41. UWM's social media marketing has boasted that an independent mortgage broker "WORKS ON YOUR BEHALF," "PROVIDES MORE LOAN OPTIONS," and is "NOT TIED TO ONE LENDER." *Id.* ¶ 43. UWM's online broker directory explained that brokers are "independent" and will "shop dozens of lenders to find the right home loan[.]" *Id.* ¶ 94.

UWM pushes similar messaging to the public through its brokers. It strongly encourages affiliated brokers to use UWM-authored marketing content, and it directs them not to change this content. *Id.* ¶¶ 51, 53. And UWM uses these thousands of Ohio brokers to disseminate duplicate representations about the value of an "independent" mortgage broker. *Id.* ¶ 54. UWM conceals its involvement by having "*nothing UWM*" on the broker marketing materials. *Id.* ¶ 52.

Despite UWM's representations, it has actively curtailed the independence of its affiliated brokers. UWM requires brokers that provide UWM loans to agree to a restrictive Wholesale Broker Agreement, the contents of which are *not* disclosed to borrowers. *Id.* ¶¶ 68, 84. In March 2021, UWM imposed an "All In" policy that categorically prohibited brokers from placing loans with "two of UWM's chief competitors, Rocket Mortgage and Fairway Independent Mortgage."

*Id.* ¶¶ 70–74.[1]  When the policy took effect, it had a massive and immediate impact:  Nationally, brokers submitted 17,000 more loan applications to UWM in the month after the policy took effect (April 2021) than in the month before the policy took effect (February 2021).  *Id.* ¶ 75.

The Wholesale Broker Agreement also included a "Lock-In" policy.  Compl. ¶ 79.  This policy prohibits a broker from sourcing a loan from another lender after the broker "locks in" UWM's interest rate quote for that loan.  *Id*. ¶¶ 79–82.  These restrictions are stricter than what any other wholesale lender requires.  *Id.* ¶ 83.  These agreements between UWM and its brokers are not disclosed to Ohio borrowers.  *Id.* ¶ 84.

UWM monitors compliance with the policies using a detailed internal database.  *Id.* ¶¶ 85–86.  UWM has harassed brokers after they place loans with rival lenders and has brought multiple lawsuits seeking to enforce the "All In" policy.  *Id.* ¶¶ 87, 89.  According to the Wholesale Broker Agreement, a broker who violates the "All In" policy faces liquidated damages of at least $50,000.  *Id.* ¶¶ 72, 74.

Further, UWM engineers its directory of purportedly independent brokers to highlight brokers who "funnel nearly all their business to UWM."  *Id.* ¶¶ 99–109.  Website placement is just one of several benefits that UWM offers to loyal brokers—other benefits include faster underwriting and exclusive awards.  *Id.* ¶¶ 111–25.

UWM's policies, and especially the "All-In" policy, have created a large group of affiliated brokers who send most or all of their loans to UWM.  From 2020 to 2023, the share of loan officers working for Ohio brokers who send over 75% of loans to UWM more than doubled to about 43%.

---

[1] UWM cites assertions by its CEO Mathew Ishbia that supposedly justify the boycott. Doc. No. 16 ("Mot.") 4–5 (citing *Okavage Grp., LLC v. United Wholesale Mortg., LLC*, 2024 WL 982380, at *2 (M.D. Fla. Feb. 6, 2024)).  These alleged statements are outside the four corners of the complaint and cannot be afforded judicial notice because Ishbia is not a source "whose accuracy cannot reasonably be questioned."  Fed. R. Civ. P. 201(b)(2).

*Id.* ¶ 128.  But UWM is not the best deal 75% (or all) of the time.  Between 2021 and 2023, UWM "dramatically drove up closing costs," so that a UWM mortgage costs more than the competition on average and would not typically be the best deal available.  *See id.* ¶ 148.  Ohio borrowers who used brokers loyal to UWM paid, on average, $298 more in origination fees.  *Id.* ¶ 150.

On April 16, 2025, Ohio filed a complaint against UWM in the Montgomery County Court of Common Pleas ("the Complaint").  The Complaint raised statutory claims under the Ohio Consumer Sales Practices Act, R.C. 1345.01 *et seq.* (counts 1 to 3), the Ohio Residential Mortgage Lending Act, R.C. 1322.01 *et seq.* (count 4), and the Ohio Corrupt Practices Act, R.C. 2923.31 *et seq.* (count 5).  Compl. ¶¶ 216–308.  UWM also brought claims for common-law civil conspiracy (count 6), unjust enrichment (count 7), and fraud (count 8).  *Id.* ¶¶ 309–43.  On May 15, 2025, UWM filed a Notice of Removal.  Doc. No. 1.  On July 7, 2025, Ohio moved to remand and UWM moved to dismiss.  Doc. Nos. 16, 17.

## LEGAL STANDARD

At the motion-to-dismiss stage, the reviewing court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."  *Cagayat v. United Collection Bureau, Inc.*, 952 F.3d 749, 753 (6th Cir. 2020) (citation omitted).  To survive a motion to dismiss, "a plaintiff's complaint must present sufficient facts to state a claim to relief that is plausible on its face."  *Id.* (citation and internal quotation marks omitted).

## ARGUMENT

### I.    Ohio Has Authority to Bring Its Claims

Ohio brings two sets of claims: statutory claims and common law claims.  For the statutory claims, the underlying statutes give the Attorney General authority to seek the requested relief on

behalf of Ohio.  For the common law claims, the Attorney General can rely on his broad inherent powers to seek redress.

### A. Ohio Has Express Authorization to Bring Its Statutory Claims

#### 1. Ohio Can Pursue Injunctive Relief and Declaratory Relief Under the Ohio Consumer Sales Practices Act ("CSPA")

UWM concedes Ohio may seek declaratory and injunctive relief pursuant to the CSPA. Doc. 16 ("Mot.") 2; *see* R.C. 1345.07(A)(1)–(2).

#### 2. Ohio Pled Valid Claims For Civil Penalties Under the CSPA

UWM argues that Ohio cannot obtain civil penalties for UWM's CSPA violations because UWM lacked sufficient notice under R.C. 1345.07(D).  Mot. 13–16.  But for one, UWM's argument is premised entirely on caselaw interpreting *R.C. 1345.09(B)*—a different provision, under which notice by administrative rule or a decision made available for public inspection a prerequisite to bringing a class action or obtaining treble damages by a private plaintiff.  UWM does not cite any cases interpreting R.C. 1345.07(D), much less cases holding that it must be interpreted in precisely the same way as R.C. 1345.09(B).  But even if R.C. 1345.07(D) requires the same "substantial similarity" as the inquiry under R.C. 1345.09(B), the Complaint identifies four decisions that provide notice that UWM's misrepresentations that their brokers would negotiate with other lenders and were independent of UWM were deceptive and unfair.  Compl. ¶ 232.  UWM's arguments to the contrary are meritless.

First, UWM argues that Ohio's cases are not sufficiently specific because *Lavensky*, *Rojas*, and *Lardakis* do not involve "lenders-brokers operating in the mortgage industry" and none of Ohio's cases involved a scheme to specifically misrepresent the independence of mortgage

brokers. Mot. 15-16.[2] Before addressing the ways in which the cases cited by Ohio do provide notice, as a threshold matter, the sufficiency of the notice those cases provide is not an appropriate subject for a 12(b)(6) motion to dismiss because Ohio has expressly plead that UWM's acts and practices "have been previously determined by a court in Ohio to violate R.C. 1345.01 *et seq.*". *See Ferron v. Dish Network*, 961 N.E.2d 705, 710 (Ohio 2011) (allegation that Dish Network violated the CSPA by committing an act or practice declared to be deceptive by rules adopted by the attorney general presumed to be true).

In any case, UWM is wrong about notice. Notice can "be industry- *or* conduct-specific," and "[s]ubstantial similarity' means a similarity not in every detail, but in essential circumstances or conditions." *Marrone v. Philip Morris USA, Inc.*, 850 N.E.2d 31, 34, 36 (Ohio 2006) (emphasis added); *see also Walker v. Cedar Fair, L.P.*, 729 F.Supp.3d 765, 771 (N.D. Ohio 2024); *Gascho v. Glob. Fitness Holdings, LLC*, 863 F.Supp.2d 677, 695 (S.D. Ohio 2012) ("Whether the same industry is involved is not a threshold test."). Although *Lavensky*, *Rojas*, and *Lardakis* involved mortgage loan adjustors rather than brokers or lenders, UWM's cases are based on much more significant differences.[3]

The cases cited by Ohio go well beyond simply stating a "generic prohibition." *Marrone*, 850 N.E.2d at 36. *Lavensky* and *Rojas* ensured UWM was on notice that **misrepresenting that**

---

[2] *See Ohio ex rel. Ohio Att'y Gen. v. Rojas*, No. CV-12-780588 (Ohio Ct. Com. Pl. Oct. 10, 2012); *Ohio ex rel. Rogers v. Lavensky*, No. CV-07-632077 (Ohio Ct. Com. Pl. Oct. 1, 2008); *Lardakis v. Martin*, No. CV-94-01-0234 (Ohio Ct. Com. Pl. July 29, 1994).

[3] *See Robins v. Glob. Fitness Holdings, LLC*, 838 F.Supp.2d 631, 648 (N.D. Ohio 2012) (cases about concrete, construction, car, and windows did not provide notice in case about health spa contracts); *CACH, LLC v. Young*, 2021 WL 6276314, at *23–25 (Ohio Ct. App. Dec. 17, 2021) (cases about garnishment, windows, health spas, default judgment, and attorney's fees were insufficient for notice in case about debt collector filing time-barred collection suits and seeking improper interest).

**its brokers would negotiate with other lenders was a deceptive practice**. In *Lavensky*, the defendant offered to "save consumers' homes from foreclosure" by negotiating with the consumer's mortgage company. ¶ 5. The court determined that the defendant made "false or misleading statements concerning material terms of the transaction to customers," including misrepresentations of his ability "**to negotiate a buying price with the consumer's mortgage company**." ¶¶ 5, 19–21 (emphasis added). Similarly, in *Rojas*, the defendant claimed he "would negotiate with lenders to modify consumers' current mortgages to either lower the current interest rate, principal and interest payments, and/or negotiate a plan to rectify past due mortgage payments." ¶ 5. The court determined that the defendant "committed unfair and deceptive acts or practices" by making "false and misleading statements" that he "**would negotiate with lenders to obtain modification of consumers' current mortgages**." ¶ 20 (emphasis added). UWM did the same here, by falsely claiming its brokers would negotiate with other lenders to obtain lower interest rates and fees while funneling loans to UWM. Compl. ¶ 57, 95. *Lardakis* determined that "breaching fiduciary duties to clients" and "conveying factually incorrect information to clients" are "unfair and deceptive" acts in the context of a housing transaction. ¶¶ 12-13.

*Bluegrass* put UWM on notice that misrepresenting the nature of its brokers' affiliation with UWM would violate the CSPA. *State ex rel. Dann v. Bluegrass Mortg. Serv., Inc.*, No. 07-10425 (Ohio Ct. Com. Pl. Mar. 17, 2008). In *Bluegrass*, the defendant mortgage broker sent mailings to consumers designed to "mislead[] consumers into believing that the correspondence [was] from their mortgage company." ¶¶ 4–5. Consumers who "called the telephone number in the direct mailing were solicited to purchase new loan products," because the defendant had "no affiliation with consumers' current lenders." ¶ 7. This case is a mirror image of *Bluegrass*, in which UWM represented that its brokers were *not* affiliated with UWM. Anyone on notice that

falsely asserting an affiliation is deceptive is also effectively on notice that denying the same kind of affiliation is also deceptive—both are misrepresenting the relationship. This level of similarity is more than sufficient to support notice. *See Nathan v. Whirlpool Corp.*, 492 F.Supp.3d 747, 766 (S.D. Ohio 2020) (used appliances provided notice about new appliances); *Blankenship v. CFMOTO Powersports, Inc.*, 961 N.E.2d 750, 758, 760 (Ohio Ct. Com. Pl. 2011) (misrepresentation of car model provided notice regarding misrepresentations about car condition); *In re Smitty's/CAM2 303 Tractor Hydraulic Fluid Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2022 WL 710192, at *26 (W.D. Mo. Mar. 9, 2022) (misrepresentations regarding car engine provided notice about misrepresented oil contents in tractor hydraulic fluid).

Second, UWM argues that *Bluegrass*, *Rojas*, and *Lardakis* "are insufficient as a matter of law" for notice because they led to consent or default judgments. Mot. 16 & n.6 (quoting *Tribble v. Kellogg Co.*, 2012 WL 13435015, at *7 (N.D. Ohio June 19, 2012)). But UWM's cases at most hold that a consent judgment that "does not reflect an adjudication by the court as to the underlying issues" cannot provide notice, and that holding does not apply to Ohio's cases here. *Tribble*, 2012 WL 13435015, at *7 (quoting *Gascho*, 863 F.Supp.2d at 694). In both *Bluegrass* and *Rojas*, the court granted the Attorney General's "request for a Declaratory Judgment that **the types of acts set forth above in the Conclusions of Law violate the Ohio Consumer Sales Practices Act … and its Substantive Rules**." *Bluegrass*, at Order ¶ 1 (emphasis added); *see also Rojas* at ¶ 25; *Lardakis* at ¶¶ 7–16. Thus, none of these cases simply "set forth the terms of a permanent injunction," and in all of them "the courts entering judgment … analyze[d] the pertinent facts and legal issues." *Tribble*, 2012 WL 13435015, at *6–7.

Moreover, *Gascho* and *Tribble* misinterpreted the CSPA, and the Court should decline to follow those cases. R.C. 1345.07(D) authorizes civil penalties when an act or practice "was

**determined** by a court of this state to violate" the CSPA and was "committed after the **decision containing the court's determination** was made available for public inspection." (emphasis added). This language treats any "decision" that "contain[s]" a "determination" as sufficient, and it makes "no difference if the judgment was reached by default, consent, bench trial or jury trial." *Musuraca v. Kurlemann Builders, Inc.*, 2007 WL 9898980, at *1 (Ohio Ct. Com. Pl. Oct. 25, 2007). Thus, "even within a consent judgment, 'an act or practice determined by a court' to violate the OCSPA is actionable[.]" *Charvat v. Telelytics, LLC*, 2006 WL 2574019, at *11 (Ohio Ct. App. Aug. 31, 2006). By ruling otherwise, *Tribble* and *Gascho* effectively read the words "determined by a court of this state **in a fully litigated case**" into the statute. But courts "must give effect to the words used, refraining from inserting or deleting words." *State v. Gonzalez*, 81 N.E.3d 419, 420 (Ohio 2017). Beyond that, interpreting the CSPA to require a determination rendered in a "fully litigated" case would force the Attorney General to litigate every CSPA case to a final judgment to establish a predicate for civil penalties, despite the fact that Ohio "law highly favors settlement agreements." *Infinite Sec. Sols., LLC v. Karam Props., II, Ltd.*, 37 N.E.3d 1211, 1216 (Ohio 2015). But "[t]he General Assembly is not presumed to do a vain or useless thing," or "to have intended to enact a law producing unreasonable or absurd consequences." *Celebrezze v. Hughes*, 479 N.E.2d 886, 889 (Ohio 1985) (citation omitted).

Further, *Gascho* and *Tribble* never explain why notice under the CSPA would require a "precedential" judgment in a "fully litigated" case—or even what it means for a court of common pleas decision to qualify as "precedential." *Tribble*, 2012 WL 13435015, at *7 (quoting *Gascho*, 863 F.Supp.2d at 694). "CSPA claims" are "creature[s] of statutory law," not judge-made common law. *Hamilton v. Ball*, 7 N.E.3d 1241, 1257 (Ohio Ct. App. 2014). The statute requires notice to "inform the legal community, consumers, and suppliers of their rights and responsibilities under

Ohio consumer laws," not to ensure the judgment is binding as a matter of *stare decisis*. *Id.* at 1254. And in general, *all* judgments of Ohio trial courts are not binding as precedent. *See* 23 Ohio Jur.3d § 389; *State v. McDowell*, 781 N.E.2d 1057, 1061-62 (Ohio Ct. App. 2002). Such judgments are binding as res judicata, but "a judgment entered by consent … is an adjudication as effective as if the merits had been litigated." *Gilbraith v. Hixson (In re Gilbraith)*, 512 N.E.2d 956, 959 (Ohio 1987).

### 3. Ohio Can Seek Damages for Consumers Under the CSPA Pursuant to R.C. 1345.07(B)

UWM also argues that the CSPA only authorizes the Attorney General to pursue damages through a class action under R.C. 1345.07(A)(3), so Ohio cannot pursue restitution and damages here. Mot. 17. But this argument is foreclosed by *Celebrezze v. Hughes*, 479 N.E.2d 886 (Ohio 1985), which expressly held that even when a suit under R.C. 1345.07(A) was "not brought as a class action," the Attorney General may seek "damages" under R.C. 1345.07(B), which authorizes the trial court to "make appropriate orders … to reimburse consumers found to have been damaged" in "*any* action brought pursuant to R.C. 1345.07(A)." *Id.* at 889–90 (quoting R.C. 1345.07(B)); *see also State ex rel. Dewine v. The Game Smith*, 2011 Ohio Misc. LEXIS 16731, at *5 (Ct. Com. Pl. Jan. 11, 2011) (awarding restitution); *Cordray v. JR & Sons Quality Home Improvements*, 2010 Ohio Misc. LEXIS 11786, at *8 (Ct. Com. Pl. June 11, 2010) (same).

UWM fails to distinguish *Hughes*. *First*, UWM claims *Hughes* held only that damages are available in an Attorney General action under the Odometer Rollback and Disclosure Act, not the CSPA. Mot. 18. But *Hughes* expressly held that "damages" may be awarded under "**both Acts** regardless of whether one or many consumers were harmed and irrespective of whether the action was instituted personally by the injured party or by the Attorney General." 479 N.E.2d at 889 (emphasis added).

*Second*, UWM is wrong in stating *Hughes* affirmed the damages "largely because the case involved such 'a small group of consumers' that a class action would have been 'impracticable,' 'absurd, vain, and useless.'" Mot. 35 (quoting *Hughes*, 479 N.E.2d at 889). The court's holding was based on the text of R.C. 1345.07(B), which authorizes courts "to reimburse consumers" in "*any* action brought pursuant to R.C. 1345.07(A)." *Hughes*, 479 N.E.2d at 889 (quoting R.C. 1345.07(B)). The court noted "there are times when it would be impracticable for the affected persons individually to bring suit, yet the prerequisites of a class action … cannot be met" only to underscore that mandating class-action procedures in a CSPA suit brought by the Attorney General, as UWM asks this Court to do here, would be "absurd, vain, and useless." *Id.* at 889–90.

*Third*, UWM claims *Hughes* was abrogated by *Felix v. Ganley Chevrolet, Inc.*, 49 N.E.3d 1224 (Ohio 2015)—a case that did not even cite *Hughes* or R.C. 1345.07 and dealt with a separate statutory section. Mot. 19. *Felix* relied on language in R.C. 1345.09(B) permitting treble and statutory damages in an individual action but not in a class action to hold that proof of actual injury is necessary to certify a class under R.C. 1345.09(B). *Felix*, 49 N.E.3d at 1233–34. No similar language is present in R.C. 1345.07. And although the court said, "the trial court's holding that it could award $200 to each member of the class as a matter of the trial court's discretion is based on a fiction," this conclusion was based on the text of R.C. 1345.09, which provides no mechanism to award damages "absent a showing that the class member was injured and sustained damages as a result of the defendant's conduct." *Id.* at 1233.

### 4. Ohio May Seek Injunctive Relief and Damages Under the Residential Mortgage Lending Act ("RMLA")

UWM concedes that Ohio may seek injunctive relief under the Residential Mortgage Lending Act ("RMLA"). Mot. 20; R.C. 1322.52(B)(1). Ohio can also obtain restitution and other damages under the common law for RMLA violations. *See* R.C. 1322.52(C) ("The remedies

provided by this section are in addition to any other remedy provided by law."); *see Hood ex rel. State v. BASF Corp.*, 2006 WL 308378 (Miss. Ch. Jan. 17, 2006) (interpreting similar Mississippi statute to permit common-law punitive damages).

**5.  Ohio May Seek Triple Damages and Other Relief Under the Ohio Corrupt Practices Act ("CPA")**

Ohio may bring an action under the Ohio Corrupt Practices Act ("CPA") as a party that was injured by UWM's violation of the CPA.  The CPA permits "[a]ny person who is injured or threatened with injury by a violation of section 2923.32" to "institute a civil proceeding."  R.C. 2923.34(A).  Such a plaintiff may obtain relief consisting of "any appropriate orders to ensure that the violation will not continue or be repeated," including injunctive relief.  R.C. 2923.34(B), (D). Treble damages, attorney's fees, and costs are also available.  R.C. 2923.34(E), (F).

UWM claims that the statute provides no cause of action for the Attorney General.  Mot. 20–21.  But the CPA expressly contemplates cases in which "the attorney general instituted the proceeding."  R.C. 2323.34(C).  The State itself will frequently be "injured or threatened with injury" by a corrupt enterprise, and so it can bring an action based on injury to itself.  R.C. 2923.34(A).  Ohio need only show an indirect injury.  *See* R.C. 2923.34(E) (referring to "any person directly or indirectly injured").

Ohio has been injured by UWM's corrupt practices, as the complaint alleges.  The State "has a sovereign interest in the economic well-being of Ohio residents and in the maintenance and integrity of the mortgage lending market."  Compl. ¶ 19.  UWM harms Ohio when it injures its mortgage marketplace and the economic well-being of thousands of its citizens.  *See Iron Workers Loc. Union No. 17 Ins. Fund v. Philip Morris Inc.*, 23 F.Supp.2d 771, 786–88 (N.D. Ohio 1998) (interpreting the CPA and holding that health-related trusts had standing to sue tobacco entities). Those harms are sufficient under the CPA, just as it is well-established that they provide *parens*

*patriae* standing. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982) ("First, a State has a quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general."); *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 671 (9th Cir. 2012) (recognizing "Nevada's sovereign interest in protecting its citizens and economy from deceptive mortgage practices"); *District of Columbia v. JTH Tax LLC*, 2023 WL 130736, at *4 (D.D.C. Jan. 9, 2023) (collecting cases "finding that states have quasi-sovereign interests in the enforcement of consumer protection laws").[4]

### B. The Attorney General Has Constitutional And Statutory Authority to Prosecute Claims For Restitution and Damages That Implicate The State's Sovereign Interests

UWM argues the Attorney General cannot seek restitution or damages without an express delegation of statutory authority. Mot. 20. But the Ohio Supreme Court has rejected the argument that "the attorney general's powers should be restricted to those specified by the General Assembly" and held that the Attorney General "has common-law—as well as statutory—authority to institute suits on behalf of the public[.]" *State ex rel. Cordray v. Marshall*, 915 N.E.2d 633, 637–38 (Ohio 2009). And "[t]he Ohio Supreme Court has long recognized the broad inherent common law powers of the attorney general," which include "contesting infringements of the rights of the general public via the doctrine of parens patriae" in suits for restitution and damages. *Ohio v. United Transp., Inc.*, 506 F.Supp. 1278, 1281–82 (S.D. Ohio 1981) (collecting cases). The General Assembly ratified this grant of authority in R.C. 109.02, which provides that "[t]he attorney general is the chief law officer for the state[.]" As UWM's own authority explains, by

---

[4] UWM's cases do not show otherwise. In *Cleveland v. JP Morgan Chase Bank, N.A.*, the Ohio Court of Appeals relied not just on the connection between the corrupt practices and the injury but also on the lack of any injury. *See* 2013 WL 1183332, at *9 (Ohio Ct. App. Mar. 21, 2013). *Town of W. Hartford v. Operation Rescue* applied narrower federal law. 915 F.2d 92, 103 (2d Cir. 1990).

using "the term 'chief law officer,'" R.C. 109.02 establishes that "the attorney general is statutorily clothed with all the traditional incidents of attorney generalship." Clinton J. Miller & Terry M. Miller, *The Constitutional Charter of Ohio's Attorney General*, 37 Ohio State L.J. 801, 833 (1976). UWM's arguments to the contrary are meritless.

*First*, UWM asserts that the Ohio Attorney General has the same common-law powers as the attorney general of **English** common law, who could only "'sue or defend suits' on behalf of those who were 'legally incapable of protecting their own rights'—such as young children and the mentally incompetent." Mot. 10 (citing *Chapman v. Tristar Prods., Inc.*, 940 F.3d 299, 305 (6th Cir. 2019)). But as the Supreme Court long ago explained, the English "common-law approach … has relatively little to do with the concept of *parens patriae*" that "developed in American law" and "does not involve the States stepping in to represent the interests of particular citizens who, for whatever reason, cannot represent themselves." *Snapp*, 458 U.S. at 600. Under the American *parens patriae* doctrine, a state sues "to vindicate its *own* sovereign and quasi-sovereign interests," including the "health, comfort, and welfare" of its citizens. *Kentucky v. Biden*, 23 F.4th 585, 596, 599 (6th Cir. 2022) (quoting *Pennsylvania v. West Virginia*, 262 U.S. 553, 592 (1923)).

The Ohio Constitution and R.C. 109.02 incorporate the American understanding of the attorney general's common-law authority. The Attorney General's powers are not spelled out in Article III, Section 1 of the Ohio Constitution or R.C. 109.02. The Attorney General's powers are "defined by the traditional role of the attorney general as the lawyer of the government and the legal guardian of the public interests and by the incidents necessary for the fulfillment of that role." Miller & Miller, *supra*, at 832. "The office of the Attorney General of Ohio was created by Article III, Section 1 of the Ohio Constitution of 1851"—long after American and English common law

14

had diverged. *United Transp., Inc.*, 506 F.Supp. at 1281.[5] And as the Ohio Supreme Court has held, the Attorney General's powers under the Ohio Constitution must be defined by reference to "contemporaneous common-law principles" in effect when it was adopted. *Cordray*, 915 N.E.2d at 638 (quoting *State v. Wing*, 64 N.E. 514, 516 (Ohio 1902)). Thus, Ohio precedent holds that the Ohio Attorney General possesses all powers that "usually pertain to an attorney general" under American common law. *State ex rel. Doerfler v. Price*, 128 N.E. 173, 175 (Ohio 1920); *see also Cordray*, 915 N.E.2d at 638 (allowing exercise of authority "consistent with the common-law powers of" "the majority of state attorneys general."); *see also State v. Johnson*, 1981 WL 5432, at *3 (Ohio Ct. App. Oct. 30, 1981) ("[T]he attorney general has all the common law powers and duties pertaining to his office except where those powers and duties have been expressly proscribed."); *State ex rel. Petro v. Marshall*, 2006 WL 2924762, at *3 (Ohio Ct. App. Oct. 10, 2006) (allowing exercise of authority where Ohio Attorney General argued that "courts have recognized that the office of attorney general has all of the powers that attorneys general enjoyed at common law").

---

[5] This does not mean powers exercised by the Attorney General today must have a "historical twin" that existed in 1851. *Cf. United States v. Rahimi*, 602 U.S. 680, 701 (2024) (citation omitted). As UWM's own authority acknowledges, "the attorney general concept adopted by the constitutional framers was comprised of a basic governmental role and its desirably fluid incidents, rather than a static collection of detailed traits." Miller & Miller, *supra*, at 830; *see also id.* at 813 n.52. And in identifying common-law powers of the Attorney General, Ohio courts have considered a variety of sources, including precedent from other jurisdictions. *See, e.g., State ex rel. Little v. Dayton & Se. R.R. Co.*, 36 Ohio St. 434, 440 (1881) (citing cases from California, New York, and New Jersey, all decided after 1851); *Brown v. Concerned Citizens for Sickle Cell Anemia, Inc.*, 386 N.E.2d 1155, 1158 (Ohio 1978) (considering both the Restatement of Restitution and Blackstone's Commentaries on the Laws of England); *Cordray*, 915 N.E.2d at 638 (considering the powers of other "state attorneys general" under present-day law). That so many of UWM's arguments ask this Court to make broad pronouncements about the role of the Attorney General under Ohio law is a factor to consider in remanding the case to state court.

"[T]he common law powers of the Ohio Attorney General" include "the power to bring, on his own initiative, civil actions on behalf of the state" to vindicate its sovereign and quasi-sovereign interests under "the doctrine of parens patriae." *United Transp.*, 506 F.Supp. at 1282; *see also State ex rel. Little v. Dayton & Se. R.R. Co.*, 36 Ohio St. 434, 440 (1881); *Cordray*, 915 N.E.2d at 638.[6] American common law recognizes that a state's attorney general has broad authority to pursue civil remedies for injuries that "'affect her citizens at large,'" *Snapp*, 458 U.S. at 603 (quoting *Louisiana v. Texas*, 176 U.S. 1, 19 (1900)), and may "bring any action thought 'necessary to protect the public interest,'" *Commonwealth ex rel. Beshear v. Ky. Off. of Gov. ex rel. Bevin*, 498 S.W.3d 355, 362 (Ky. 2016); *see also* Myer & Myer, *supra*, at 841 (The Attorney General has inherent authority to "pursue whatever course he determines to be necessary for the vindication of the right of the public."); *Texas v. Scott & Fetzer Co.*, 709 F.2d 1024, 1027 (5th Cir. 1983)); *Pub. Def. Agency. v. Super. Ct.*, 534 P.2d 947, 950 (Alaska 1975); *Att'y Gen. v. Del. & Bound Brook R.R. Co.*, 27 N.J. Eq. 631, 633 (N.J. 1876).

The Attorney General's authority also encompasses the power to seek restitution and/or damages for injuries to Ohio's sovereign interests. Under Ohio law, "the attorney general has all the common law powers and duties pertaining to his office except where those powers and duties have been expressly proscribed." *Johnson*, 1981 WL 5432, at *3; *see also Petro*, 2006 WL 2924762, at *3. As a matter of prevailing common law, it is well established that "[s]tate

---

[6] UWM sets up a false dichotomy between the Attorney General's common-law authority and *parens patriae* powers. *See* Mot. 9–11. To define what it views as the Attorney General's separate common-law authority, UWM cites a footnote from Miller & Miller that is itself about *parens patriae*. Miller & Miller, *supra*, at 802 & n.6 (explaining the attorney general's role of "contesting infringements of the rights of the general public via the doctrine of *parens patriae*"). Core examples that UWM cites (the enforcement of charities and curtailment of public nuisance) are also examples of *parens patriae* authority. *Id.* at 802 n.6; *Sarkeys v. Indep. Sch. Dist. # 40*, 592 P.2d 529, 533 (Okla. 1979) (citing 3 Blackstone, Commentaries 427)).

governments may act in their parens patriae capacity…in a suit to recover damages for injury to a sovereign interest." *Alaska Sport Fishing Ass'n v. Exxon Corp.*, 34 F.3d 769, 773 (9th Cir. 1994); *see also Ohio Att'y Gen. v. Suwinski (In re Suwinski)*, 509 B.R. 568, 577 (S.D. Ohio 2013) (Attorney General had "right to seek damages on behalf of the Consumers"); *United Transp.*, 506 F.Supp. at 1281(Attorney General had authority to assert Ohio's rights under federal antitrust law).[7] No statute prohibits the Attorney General from seeking restitution or damages in a suit to vindicate Ohio's sovereign interests, and "[i]n the absence of specific statutory language to the contrary, his common law powers should not be repudiated." *United Transp., Inc.*, 506 F.Supp. at 1283.

The claims alleged in the Complaint seek to redress injuries to Ohio's sovereign and quasi-sovereign interests, so the Attorney General necessarily had the authority to bring those claims under both the Ohio Constitution and R.C. 109.02. The claims asserted in the Complaint uniformly implicate Ohio's "recognized quasi-sovereign interest in the health and 'economic well-being' of [its] populace[.]" *Kentucky*, 23 F.4th at 599 (quoting *Snapp*, 458 U.S. at 605); *see also Chapman*, 940 F.3d at 305 (similar); *Missouri v. Illinois*, 180 U.S. 208, 241 (1901) (similar); *Pennsylvania*, 262 U.S. at 592 (similar). The statutory claims asserted in Counts 1 through 5 implicate Ohio's "sovereign interest[]" in "the exercise of sovereign power over individuals and entities" subject to

---

[7] *See also BASF Corp.*, 2006 WL 308378, at *3–4, *13–15 (permitting attorney general to bring common law claims for damages on behalf of citizens); *State v. Exxon Mobil Corp.*, 406 F.Supp.3d 420, 458–71 (D. Md. 2019) (same); *Spitzer v. Coventry First LLC*, 2007 WL 2905486 (N.Y. Sup. Ct. Sep. 25, 2007) ("The *parens patraie* doctrine enables the State to seek damages."); *State by Humphrey v. Alpine Air Prods., Inc.*, 490 N.W.2d 888, 896 & n.4 (Minn. Ct. App. 1992) (allowing attorney general action for restitution under common law); *State v. First Nat'l Bank of Anchorage*, 660 P.2d 406, 421 (Alaska 1982) ("[T]he State has the authority to bring suit in the public interest on the basis of common law fraud to obtain restitution."); *Maine v. M/V Tamano*, 357 F.Supp. 1097, 1102 (D. Me. 1973) ("If Maine can establish damage to her quasi-sovereign interests …. there is no apparent reason why the present action to recover such damage cannot be maintained.").

its jurisdiction, which "involves the power to create and enforce a legal code, both civil and criminal." *Snapp*, 458 U.S. at 601. The claims for restitution alleged in Counts 1, 3, and 7 also advance Ohio's sovereign "interest in disgorging the benefit from the violator" and "disallowing the retention of ill-gotten gains," which goes beyond "mere representation of particular individual consumers." *Edmond v. Consumer Prot. Div. (In re Edmond)*, 934 F.2d 1304, 1310–11 (4th Cir. 1991); Compl. ¶¶ 237, 253, 335–37; *Holden v. Heckler*, 584 F.Supp. 463, 486, 490 (N.D. Ohio 1984) (permitting Attorney General to seek restitution, restoration of medical benefits). And at a minimum, Count 7 is clearly within the Attorney General's authority insofar as it seeks to impose a "constructive trust" on "all wrongful or inequitable sums received by UWM." Compl. ¶ 337. The Attorney General may already sue for constructive trust "in seeking to protect the public interest" in the context of charity. *Concerned Citizens*, 382 N.E.2d 1155, 1158 (Ohio 1978).

*Second*, UWM cites cases asserting that *parens patriae* authority is vested in the legislature, but these cases addressed the English *parens patriae* doctrine and have no bearing on the Attorney General's authority to bring this suit. As the Supreme Court has explained, American courts transformed the English "common-law concept of [a] royal prerogative" to "take care of persons who are legally unable" to take care of themselves into "a legislative prerogative" to enact laws "for the prevention of injury to those who cannot protect themselves." *Snapp*, 458 U.S. at 600 (quoting *Mormon Church v. United States*, 136 U.S. 1, 57 (1890)). Both *State ex rel. Fortini v. Hoffman*, 12 Ohio App. 341 (Ohio Ct. App. 1920), and *Mormon Church* addressed this version of the *parens patriae* doctrine, not the power to bring suits to vindicate sovereign interests. *Hoffman* stated that "the power of *parens patriae* belongs exclusively to the legislature of each state and is not possessed by the courts." *Id.* at 344. But it was addressing the division of "jurisdiction over minors" between the General Assembly and the judiciary under Ohio law, which "[i]n England"

18

was part "of the king's executive power"—not the Attorney General's authority to bring claims for restitution and/or damages for injuries to Ohio's sovereign interests. *Id.*

*Mormon Church v. United States*, 136 U.S. 1 (1890), held that Congress had the power under the Territory Clause of Article IV, Section 3 of the Constitution to authorize forfeiture proceedings regarding property of a corporation that was dissolved to prevent "polygamy in the territories of the United States." *Id.* at 7, 64–66. Although the Court said that "here the legislature is the *parens patriae*," *id.* at 56–57, this was because "[t]he power of Congress over the territories of the United States is general and plenary," *id.* at 42; *see also United States v. California*, 332 U.S. 19, 27 (1947) (Congress's power under the Territory Clause is "without limitation" and "neither the courts nor the executive agencies, could proceed contrary to an Act of Congress in this congressional area of national power."). The Court did not hold that all incidents of *parens patriae* authority are necessarily vested in the legislature, and the Court recognized that the *parens patriae* power can be vested in any branch of the "government of the state," depending on where "that power is lodged" by state law. *Mormon Church*, 136 U.S. at 57. Here, the relevant power is vested in the Ohio Attorney General.[8]

## II. Ohio Pleads Viable Claims

### A. Ohio States Claims Under the CSPA

UWM takes a blunderbuss approach to attacking Ohio's CSPA claims, arguing that the alleged misstatements are insufficiently pled, non-actionable, not false, and not made by UWM. UWM's scattershot objections all fall short.

---

[8] For the same reasons discussed in this section, the Attorney General undoubtedly has Article III standing, contrary to UWM's assertion. *See* Mot. 22 n.7.

### 1. Ohio Need Not Plead All of Its CSPA Claims With Particularity

Under controlling Ohio law, CSPA claims do not necessarily sound in fraud.[9] This makes sense. Many CSPA provisions do not require the plaintiff to prove any state of mind, let alone intent to defraud. *Compare* R.C. 1345.02(B)(1)–(4), (8) (no mental state), *with* R.C. 1345.02(F) (knowing mental state); *see also Grgat v. Giant Eagle, Inc.*, 135 N.E.3d 846, 851 (Ohio Ct. App. 2019) (looking to reasonable *consumer's* state of mind). Ohio's claims under such provisions should be held to the normal plausibility pleading standard. *See* Compl. ¶¶ 228–32. Other claims sound in negligence and also need not be pled with particularity. Compl. ¶¶ 238–53; *see Schmitz v. NCAA*, 67 N.E.3d 852, 870 (Ohio Ct. App. 2016) ("But *unlike plaintiffs' negligence claim*, the fraud claim must be pled with particularity pursuant to Civ.R. 9(B)." (emphasis added)); *Rheinfrank v. Abbot Lab'ys*, 2013 WL 4067826, at *3 (S.D. Ohio Aug. 12, 2013) (collecting cases).

### 2. Ohio Has Met the Pleading Standard of Rule 9(b)

Ohio's claims satisfy Rule 9(b), which requires claims that sound in fraud to "(1) specify the allegedly fraudulent statements, (2) identify the speaker, (3) plead when and where the statements were made, and (4) explain what made the statements fraudulent." *Gordon v. B. Braun Med. Inc.,* 2020 WL 1491378, at *10 (S.D. Ohio Mar. 27, 2020) (*quoting Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012)). Ohio's Complaint does just this.

---

[9] *See Young v. UC Health*, 2015 Ohio Misc. LEXIS 40122, at *15–16 (Ohio Ct. Com. Pl. Sep. 2, 2015) (citing *Reynolds v. Durrani*, No. CV 2013-04-1187 (Ohio Ct. Com. Pl. June 2, 2014)); *Ferron v. Dish Network, LLC*, 961 N.E.2d 705, 712 (Ohio Ct. App. 2011); *see also Volbers-Klarich v. Middletown Mgmt., Inc.*, 929 N.E.2d 434, 440–41 (Ohio 2010) (applying particularity pleading standard to fraud claim but not CSPA claim); *Harper v. Weltman, Weinberg & Reis Co.*, 2019 WL 3494002, at *5 (Ohio. Ct. App. Aug. 1, 2019) (stating in addressing CSPA claim that Ohio law does not require pleading with particularity); *Helton v. U.S. Restoration & Remodeling, Inc.*, 2013 Ohio Misc. LEXIS 27341, at *13–14 (Ohio Ct. Com. Pl. Sep. 12, 2013) (same). One older unpublished case is to the contrary. *Long v. Ford Motor Co.*, 1983 Ohio App. LEXIS 14177, at *4 (Ohio Ct. App. Sept. 15, 1983).

*First*, UWM's assertion that the Complaint fails to plead the CSPA claims with particularity is meritless. Mot. 23-24. The Complaint details dozens of false and misleading statements by UWM, detailing the timing, speaker, and content. *See, e.g.,* Compl. ¶¶ 9, 11, 57, 96–97, 99-109, App'x A. Ohio's allegations show (1) UWM's specific misstatements about broker "independence," (2) when it made those statements, (3) the date, time, and medium for those statements, including links to those statements, and (4) why UWM's scheme to corrupt broker independence renders those statements fraudulent. *Id.*; *see id.* ¶¶ 66–151. This is more than "enough specificity to put defendants on notice as to the nature of the claim"—all that is required at this stage. *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788 (6th Cir. 2012) (quoting *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 (6th Cir. 1988)).

*Second*, UWM inexplicably claims that Rule 9(b) somehow inserts an additional element into the CSPA, arguing the Complaint fails to demonstrate that "any particular Ohio resident actually 'relied upon'" its misstatements. Mot. 24. But "reliance" is not an element CSPA claim. *See Jones v. J. Duran, Inc*., 2020 WL 5743212, at *3 (Ohio Ct. App. Sept. 25, 2020); *Guth v. Allied Home Mtg. Cap. Corp.*, 2008 WL 2635521, at *6-7 (Ohio Ct. App. July 7, 2008). And, even if it were, "[g]enerally, whether a plaintiff justifiably relied on an allegedly fraudulent misrepresentation or omission is a question of fact and not appropriate for determination on a motion to dismiss." *In re Nat'l Prescription Opiate Litig.*, 2018 WL 4895856, at *41 (N.D. Ohio Oct. 5, 2018), *report and recommendation rejected in part on other grounds,* 2018 WL 6628898 (N.D. Ohio Dec. 19, 2018). [10]

---

[10] In any event, although Ohio need not show reliance, it has done so. *See* Section II.F.

UWM cites no case suggesting reliance is an element of the CSPA.  The two cases cited by UWM have nothing to do with the CSPA: *Bennett* applied the Rule 9(b) standard to a common-law fraud claim under Michigan law—not a CSPA claim under Ohio law.  Mot. 24 (citing *Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010)).  Likewise, *Republic Bank* analyzed Rule 9(b) in the context of the plaintiff's claims for common law fraud by omission under Kentucky law.  *Id.* (citing *Republic Bank*, 683 F.3d at 255–56).  Thus, Ohio has met its pleading burden under Rule 9(b) with respect to the CSPA, and the CSPA claims should not be dismissed.

### 3.     Ohio Adequately Alleges Actionable, Deceptive Conduct

UWM raises five arguments against Ohio's CSPA claims.  Mot. 25–29.  These arguments fail because they are based on UWM's inaccurate interpretations of CSPA and the cited authority, and because they are rooted in questions of fact, not law.

***Statute of Limitations.***  UWM incorrectly argues that the CSPA claims are barred by the two-year statute of limitations.  Mot. 25; *see* R.C. 1345.07(E).  This argument disingenuously ignores the many allegations in the Complaint demonstrating UWM's recent and ongoing deceptive conduct, *see, e.g.*, Compl. ¶¶ 9, 11, 57, 96–97, 99–109, 117, 251, and instead relies on selective references to other allegations in the Complaint which, while made more than two years ago, are also pled to support Ohio's claims with longer statutory limits, *see* Sections II.B to II.F.  For example, UMW has said within the last two years that brokers are "independent," not "captive," and "work not just with UWM but … with many other lenders."  Compl. ¶ 9.  Similar misleading statements and omissions are still being presented to Ohio borrowers on UWM's website and on social media.  *See* Compl. ¶¶ 11, 44, 57, 96, 251, App'x A; *Lester v. Wow Car Co.*, 2013 WL 6058676, at *2 (S.D. Ohio Nov. 14, 2013) (finding CSPA claim not barred where defendant's website still "contained false and deceptive advertising" after the underlying transaction).  Ohio's CSPA claims are timely.

*Falsity*. UWM misleadingly asserts that Ohio has not identified *any* false statements because it does not quote UWM saying brokers would "shop the *entire universe* of loan products." Mot. 25-26. This mischaracterization ignores the central allegations of Ohio's claims. UWM is a wholesale lender and its loans must be originated through an independent broker who owes a fiduciary duty to the prospective borrower. Compl. ¶¶ 26-30. As set forth in the Complaint, UWM heavily markets to Ohio consumers the supposed independence of those brokers by, for example, touting that they are "independent" and "shop around to find the best interest rates." Compl. ¶¶ 9, 96, 144, App'x A. At the same time, UWM has already surreptitiously compromised the independence of all Ohio brokers who work with UWM in ways that were not disclosed to Ohio borrowers. Compl. ¶¶ 15, 54, 67–84, 99–125, 128–32. Under the CSPA, where "the supplier does or says something, regardless of intent, which has the likelihood of inducing in the mind of the consumer a belief which is not in accord with the facts, the act or statement is deceptive." *Durnell's RV Sales Inc. v. Beckler*, 226 N.E.3d 362, 380 (Ohio Ct. App. 2023) (citation omitted).

*Actionability*. Having ignored the actual allegations in the Complaint and the straightforward fraudulent activities described above, UWM next asserts that some, but admittedly not all, of its misleading or false statements are "puffery" or "mere non-disclosure" and thus exempted under CSPA. Mot. 26–28. This argument should be rejected.

**1.** With respect to UWM's "puffery" argument (Mot. 26–27), while "a general claim of superiority over comparable products that is so vague that it can be understood as nothing more than mere expression of opinion" may constitute puffery, a "false representation of fact" does not. *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, 649 F.Supp.2d 702, 725-27 (N.D. Ohio 2009). UMW points to two cherry-picked statements from the Complaint: "that mortgage brokers are 'best for consumers' and offer 'the best deal.'" Mot. 27 (citing Compl. ¶ 41).

23

UWM again ignores the many examples in the Complaint showing that UWM emphasizes that brokers are "independent," "work with a variety of lenders," "shop around to find the best interest rates," and are "an advocate on your side that will shop multiple lenders." *See, e.g.* Compl. ¶¶ 44, 57, 96, 298. These statements go well beyond "exaggerated blustering or subjective boasting upon which no reasonable consumer would rely." *Outdoor Techs., Inc. v. Vinyl Visions, LLC*, 2006 WL 2849782, at *4 (S.D. Ohio Sept. 29, 2006).

**2.** UWM also asserts that "failure to tell a consumer about the practices of a third party, absent some additional duty to disclose, is not actionable" under the CSPA. Mot. 28.[11] But, as the Complaint makes clear, UWM *did* have a duty to disclose brokers' contractual obligations, particularly because those obligations impacted the services borrowers believed their brokers would provide. *See* Compl. ¶¶ 38, 63, 66, 84, 151, 155, 235, 251; *see also* Section II.C.1. That is precisely the type of material omission the legislature intended to be actionable under CSPA. *See Thomas v. Nat'l Coll. of Va., Inc.*, 901 F.Supp.2d 1022, 1033 (S.D. Ohio 2012) ("Failure to disclose a substantial fact may constitute an unfair or deceptive act" under CSPA); *Walker v. Dominion Homes, Inc.*, 842 N.E.2d 570, 579 (Ohio Ct. App. 2005) ("The duty at issue here is the duty to refrain from unfair, deceptive, or unconscionable acts. The trier of fact can certainly consider the failure to disclose information in determining whether the defendant committed [a CSPA violation]." (citation omitted)). Ohio's CSPA claims are actionable.

***Third-party statements***. UWM's own authority contradicts its assertion that it is not liable for statements made by brokers. As set forth above, UWM is a *wholesale* lender and its loans *must* be originated through an independent broker. *See* Compl. ¶¶ 26–30. UWM relies heavily on

---

[11] All of UWM's cited authority involves either grocery store promotions, physician billing practices, or the non-disclosure of vehicle defects, scenarios which are in no way analogous to this action. *See* Mot. 28.

*Charvat* for the proposition that "[UWM's] benefit was 'too far removed from the actual solicitation.'" Mot. 28 (ellipsis omitted) (quoting *Charvat v. Farmers Ins. Columbus, Inc*., 897 N.E.2d 167, 178 (Ohio Ct. App. 2008)). That contention is meritless. As a wholesale lender, those independent brokers are the only means for borrowers to obtain mortgages from UWM; UWM cannot interact directly with the borrower. Unsurprisingly, *Charvat* is readily distinguishable as, in that case, the telemarketing call at the center of the CSPA claim was not made on behalf of the defendant insurance company, which had not hired or directed the telemarketing company to make the call. 896 N.E.2d at 177–78.[12] Ohio's Complaint alleges that UWM—which actually supplied brokers with marketing materials to disseminate to consumers—makes, and directs brokers to make, deceptive statements and omissions for UWM's direct financial benefit. Compl. ¶¶ 47-54, 84, 155, 161. The *Charvat* court even reasoned that the defendant might be liable if the circumstances were more analogous to Ohio's claims. *See Charvat*, 897 N.E.2d at 178 (noting if defendant "had hired and then directed" the telemarketing agency, its "actions would have been more directly responsible for 'effecting' the consumer transaction").

**Proximate Cause.** Finally, UWM argues Ohio's CSPA claims "fail for a lack of proximate cause" between the CSPA violations and harms to Ohio borrowers. Mot. 29. But "[o]rdinarily, proximate cause is a question of fact for a jury" inappropriate for determination on a motion to dismiss. *Bethel Oil & Gas, LLC v. Redbird Dev., LLC*, 258 N.E.3d 470, 495 (Ohio Ct. App. 2024); *see also O'Byrne v. Weyerhaeuser Co*., 2022 WL 4133219, at *25 (S.D. Ohio Sept. 12, 2022). A plaintiff need not show that a "better deal" was available "absent the alleged CSPA violations."

---

[12] The *Charvat* court was also determining whether Farmer was a "supplier" under the CSPA—something UWM does not dispute. *See Charvat*, 897 N.E.2d at 178.

Mot. 29. Nor is it "clear that no representation … played any role," as in the main CSPA case UWM cites. *Reeves v. PharmaJet, Inc.*, 846 F.Supp.2d 791, 798 (N.D. Ohio 2012).

Nevertheless, Ohio's Complaint specifically alleges how UWM's CSPA violations proximately caused injuries to Ohio's citizens and Ohio's wholesale mortgage market. UWM repeatedly made deceptive statements to consumers that brokers are "independent" and will shop multiple lenders to find borrowers the best interest rate and deal, without disclosing Ohio consumers that a huge swath of those brokers funnel most or all of their loans to UWM and place borrowers in more expensive loans. Compl. ¶¶ 9, 84, 96, 234–235, App'x A. In reliance on and as a proximate result of UWM's statements, Ohio borrowers entered the wholesale mortgage channel (*id.* ¶¶ 14, 156, 161) where they unknowingly hired UWM's captive brokers, paid those brokers fees despite the fact that did not do their job (by shopping multiple lenders as they were paid to do) and paid significantly more for their mortgages, on average, than they would have paid for mortgages from other lenders (*id.* ¶¶ 135–136, 139, 144). As a result, UWM has undermined the wholesale mortgage market's structure and purpose. *Id.* ¶ 1. Those direct injuries were caused by UMW's violations of CSPA, not an intervening third party.

## B. Ohio States Claims Under the RMLA

Ohio has adequately pled its claims under the RMLA. Much of UWM's argument is derivative of its CSPA argumentation and fails for the same reasons.

### 1. Ohio Need Not Plead All of Its RMLA Claims with Particularity

Ohio does not need to satisfy Rule 9(b) regarding RMLA claims that do not require intent to defraud. *See* Section II.A.1. Many of the alleged RMLA violations do not require intent. *See* Compl. ¶¶ 260-62; R.C. 1322.40(B) (no state of mind); *id.* ¶ 267-69; R.C. 1322.45(A) (affirmative duties); *Walton v. Residential Fin. Corp.*, 905 N.E.2d 1307, 1309 (Ohio Ct. Com. Pl. 2009) (noting that predecessor statute "[i]n many instances … does not require knowledge of falsity, intent,

reliance, or even injury"). Similarly, R.C. 1322.40(C) prohibits "improper" dealings, and "deception is not the touchstone of improper conduct." *Steele v. Cmty. Loan Servicing, LLC*, 2024 WL 37116, at \*5 (S.D. Ohio Jan. 3, 2024); *see also* Ohio Admin. Code 1301:8-7-16(A)-(C), (E)-(K) (no mental state requirement). Accordingly, Rule 9(b) does not apply to many of the RMLA claims.[13]

### 2. Ohio Adequately Alleges the Existence of Affiliation Between UWM and Its Brokers

UWM claims R.C. 1322.45 does not apply to it because it is a wholesale lender operating "exclusively through unaffiliated third-party mortgage brokers." Mot. 30; *see* R.C. 1322.45(B). UWM relies on irrelevant provisions of the Ohio Administrative Code to argue that a lack of corporate relationships decides the issue. Mot. 30–31.[14] But the two definitions it cites simply do not apply to R.C. 1322.45.[15] Because "neither of these statutory definitions is made expressly applicable," courts should apply the "usual, normal and customary meaning of 'affiliated.'" *State ex rel. Herman v. Klopfleisch*, 651 N.E.2d 995, 998 (Ohio 1995).

The plain meaning of "affiliate" includes, at a minimum, a "condition of being united; being in close connection, allied, associated, or attached as a member or branch." *E. Ohio Gas Co. v. Pub. Utilities Comm'n of Ohio*, 530 N.E.2d 875, 879 (Ohio 1988) (quoting Black's Law Dictionary 54 (5th ed. 1979)); *see also Klopfleisch*, 651 N.E.2d at 998 (also citing Black's Law

---

[13] In any event, Ohio has satisfied the Rule 9(b) standard and pled with sufficient particularity. *See* Section II.A.2.

[14] UWM also relies on Ohio's references to brokers as third parties, but the cited excerpts from the complaint clearly involve general allegations about the mortgage industry, not admissions about UWM's brokers specifically. *See* Compl. § I, ¶ 26.

[15] *See* Ohio Admin. Code 1301:8-2-01(C) (stating definition for R.C. 1321.01 to 1321.19); Ohio Admin. Code 1301:8-3-03(F) (stating definition for R.C. 1321.51 to 1321.60); *see also* Ohio Admin. Code 1301:8-7-01 (relevant definitions).

Dictionary). The Ohio Supreme Court has expressly held that "'affiliated with' and 'under the control of' are not synonymous," and it has rejected an interpretation almost identical to UWM's. *E. Ohio Gas*, 530 N.E.2d at 879.[16] Ohio has clearly alleged facts showing that UWM and its loyalist brokers were at least "allied," "associated," or "united"—and therefore not "unaffiliated." *See* R.C. 1322.45(B).

### 3. Ohio Adequately Pleads Claims Under R.C. 1322.40

Ohio states claims under R.C. 1322.40(B), (C), and (I). UWM argues that R.C. 1322.40(B) applies only to UWM's own statements. Mot. 31. But the Complaint explains that UWM "instructs brokers to use marketing tools designed by UWM's in-house marketing team" and "affirmatively direct[s] brokers not to change the UWM-authored marketing content." Compl. ¶¶ 47–54. UWM sufficiently controls the communications it produces and publishes through brokers such that it can be said to "make" them.[17] The statute anticipates that a party might act through "other means," R.C. 1322.40(C), and here UWM utilized its brokers.

In arguing for a more restrictive construction, UWM relies on a federal securities-fraud case—*Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011)—that has nothing to do with Ohio's consumer protection laws. Mot. 31. *Janus* relied on the "narrow scope" afforded a judicial-created private right of action, 564 U.S. at 144, and "its holding was confined to cases invoking the implied private right of action," *Prousalis v. Moore*, 751 F.3d 272, 276 (4th

---

[16] *Compare E. Ohio Gas*, 530 N.E.2d at 879 (rejecting definition of "affiliated with" as "the power to cause the **direction of policies**, either directly or indirectly" (emphasis added)), *with* Ohio Admin. Code 13:8-2-01(C)-(D) (defining "affiliated with" by reference to control, and defining control as "the authority to direct or cause the **direction of the management and policies** through ownership, by contract, or otherwise" (emphasis added)), *and* Ohio Admin. Code 13:8-3-03(F) (same).

[17] *See* Black's Law Dictionary (12th ed. 2024) (defining "make" as "[t]o cause (something) to exist"); Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/make (defining "make" as "to produce something, often using a particular substance or material").

Cir. 2014). In contrast, the "Ohio Supreme Court has held that consumer protection laws must be interpreted in a manner that is calculated to provide courts with flexibility…." *Motzer Dodge Jeep Eagle, Inc. v. Ohio Att'y Gen.*, 642 N.E.2d 20, 26 (Ohio Ct. App. 1994). *Janus*'s narrow definition does not apply to the RMLA.

UWM also relies on its CSPA arguments to assert that its statements are not actionable for purposes of R.C. 1322.40(B) and (C). Mot. 31. This defense fails for the reasons discussed previously. *See* Section II.A.3. It also fails because the RMLA uses a broader standard than the actionability required for fraud: "improper" means "not in accord with fact, truth, or right procedure." *FV 1 Inc. v. Goodspeed*, 974 N.E.2d 664, 676 (Ohio Ct. App. 2012) (quoting Merriam Webster Online Dictionary, http://www.merriam-webster.com/dictionary/improper); *City of Gahanna v. Ohio Mun. Joint Self-Ins. Pool*, 2020 WL 9594330, at *9 (Ohio Ct. Com. Pl. Apr. 16, 2020) (same). Ohio has met this lower standard, which is "not well-suited for judgment on the pleadings." *Guzman v. USAA Fed. Savings Bank*, 2024 WL 1973096, at *17 (N.D. Ohio May 3, 2024).[18]

### C.    Ohio States Claims Under the CPA

Ohio sufficiently pleads a CPA claim. Under R.C. 2923.32(A)(1), it is unlawful for any "person employed by, or associated with, any enterprise" to "conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity…." To state a claim, a plaintiff must allege: "(1) that the conduct of the defendant involves the commission of two or more specifically prohibited state or federal criminal offenses, (2) that the prohibited criminal conduct of the defendant constitutes a pattern of corrupt activity, and (3) that the defendant has participated in the affairs of an enterprise." *Bradley v. Miller*, 96 F.Supp.3d 753, 771 (S.D. Ohio

---

[18] Ohio states claims under R.C. 1322.40(I) based on its CSPA claims. *See* Section II.A.

2015) (quoting *Hall v. CFIC Home Mtg.*, 888 N.E.2d 469, 477 (Ohio Ct. App. 2008)). "[A]ny person directly or indirectly injured by conduct in violation of section 2923.32 of the Revised Code … shall have a cause of action for triple the actual damages the person sustained." R.C. 2923.34(E).

While the CPA is "somewhat similar to federal RICO," it "has significantly different and more liberal standing provisions." *Iron Workers Loc. Union No. 17 Ins. Fund v. Philip Morris Inc.*, 29 F.Supp.2d 825, 833 (N.D. Ohio 1998). Specifically, "[b]y affording a cause of action to any person directly *or indirectly* injured, the Ohio General Assembly departed from the language used by Congress in drafting a federal cause of action under the federal RICO law." *Id.* emphasis added). Accordingly, the CPA "is interpreted more broadly than federal civil RICO." *Smith v. FirstEnergy Corp.*, 518 F.Supp.3d 1118, 1125 (S.D. Ohio 2021).

UWM argues Ohio's CPA claim must be dismissed because Ohio fails to adequately allege (1) predicate acts constituting a "pattern of corrupt activity"; (2) a cognizable "enterprise"; and (3) proximate cause. Mot. 30–35. UWM is wrong across the board.

### 1. Ohio Adequately Alleges a Pattern of Corrupt Activity

The Complaint pleads facts sufficient to establish "a pattern of corrupt activity." "Corrupt activity" means "engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in" any of a long list of predicate state and federal offenses as set forth in R.C. 2923.31(I). A "pattern of corrupt activity" means "two or more incidents of corrupt activity" that are (i) "related to the affairs of the same enterprise," (ii) "not isolated," and (iii) "not so closely related to each other and connected in time and place that they constitute a single event." R.C. 2923.31(E). Ohio's allegations meet this standard.

***Mail and Wire Fraud.*** Ohio adequately alleges multiple predicate acts of mail and wire fraud. To plead predicate acts of mail or wire fraud, a plaintiff must allege "(1) a scheme or artifice

to defraud; (2) use of interstate [mail or] wire communications in furtherance of the scheme; and (3) intent to deprive a victim of money or property." *United States v. Daniel*, 329 F.3d 480, 485 (6th Cir. 2003); *United States v. Bibby*, 752 F.2d 1116, 1125–26 (6th Cir. 1985) (mail and wire fraud require "essentially the same things").[19] UWM argues Ohio's allegations are deficient on several erroneous grounds.[20]

*First*, UWM incorrectly argues the alleged misrepresentations and omissions are not "material." Mot at 37. A "material" misrepresentation or omission is one that "would have affected a reasonable person's actions in the situation." *Daniel*, 329 F.3d at 487. Ohio clearly meets that standard by alleging that enterprise participants falsely claim that mortgage brokers "independently" shop for loans to get the best prices for consumers when, in fact, they are giving most and sometimes all of their business to UWM as described above. Compl. ¶¶ 9, 57, 128, 152–155. These representations would affect a borrower's decision to hire an "independent" broker instead of a broker who steers all of their business to UWM despite UWM's loans costing substantially more than its competitors.[21]

UWM asserts that the enterprise's misrepresentations are "mere puffery." Mot. 37. *See* discussion of "puffery" argument in the CSPA section above. Section II.A.3.

---

[19] Ohio telecommunications fraud requires essentially the same proof. *See* R.C. 2913.05(A).

[20] Ohio satisfies the pleading standard for fraud. *See* Section II.A.2; *see also Fenner v. Gen. Motors (In re Duramax Diesel Litig.)*, 298 F.Supp.3d 1037, 1083–84 (E.D. Mich. 2018) (finding RICO allegations satisfied Rule 9(b) where complaint "identified a number of advertisements" that were material to the scheme "regardless of whether [they] would be actionable on their own").

[21] Or at the very least, there are genuine disputes as to their materiality that cannot be resolved on a motion to dismiss.

UWM also asserts that "statements or omissions about broker independence" cannot be material because they "do not even qualify as 'material disclosures' under the subject-matter-specific rules for TILA." Mot. 37. But those rules do not render broker independence *immaterial*. Rather, they specifically prohibit brokers from steering consumers into transactions "based on the fact that the [broker] will receive greater compensation from the creditor … unless the consummated transaction is in the consumer's interest." 12 C.F.R. § 1026.36(e)(1). Regardless, the TILA regulations do not purport to define what is "material" for purposes of the mail or wire fraud statutes, and UWM cites nothing to demonstrate the contrary.

*Second*, UWM incorrectly argues that it has no duty to disclose brokers' lack of independence because it has no fiduciary relationship with consumers, and thus the alleged omissions are not actionable. Mot. 37–38. But UWM's principal duty to disclose arises not from a fiduciary relationship, but rather (i) its knowledge of "facts basic to the transaction" about which it knows consumers are misinformed; and (ii) its "partial or ambiguous" affirmative statements of broker independence which are rendered misleading by its nondisclosure of contrary information. *See* Restatement (Second) of Torts § 551(2)(b), (e) (1977); *Rubin v. Schottenstein, Zox & Dunn*, 143 F.3d 263, 268 (6th Cir. 1998) (a speaker "assumes a duty to provide complete and nonmisleading information with respect to subjects on which he undertakes to speak").[22] UWM affirmatively touts the independence of its brokers both online and through the materials it provides to the brokers themselves. Compl. ¶¶ 43–54. Yet UWM did not disclose, for example, that in 2023, 216 supposedly "independent" loan officers were sending more than 99% (*e.g.*, all)

---

[22] Separately, mortgage brokers, who are also participants in the scheme to defraud, indisputably owe their clients fiduciary duties. *See, e.g.*, *Lee v. Countrywide Home Loans*, 2010 WL 1487131, at *5 (N.D. Ohio Apr. 13, 2010), *aff'd in relevant part*, 692 F.3d 442 (6th Cir. 2012).

of their business to UWM—even though UWM offered the best prices only a fraction of the time. *Id.* ¶¶ 128, 135–39.[23]

*Third*, UWM incorrectly argues Ohio's allegations of "specific intent to deceive or defraud" are inadequate because the circumstances alleged are not "indicative of malintent." Mot. 38. To start, UWM's statements are indicative of malintent. UWM's CEO Mathew Ishbia, in his own words, explained the following: "Mortgage brokers are completely independent. They are not captive or connected to my company or any company. They are independently shopping . . . That's because the broker has access to multiple lenders instead of just one." Compl. ¶ 6. In light of the alleged scheme, the purpose of which is to undermine the very independence of the broker system by steering business exclusively to UWM against the best interests of the borrower and to *hide that fact from consumers*, the statements are intentional misinformation plain and simple. Intent to defraud exists if "the defendant by material misrepresentations intends the victim to accept a substantial risk that otherwise would not have been taken." *Daniel*, 329 F.3d 480, 487 (6th Cir. 2003). "Intent can be inferred from efforts to conceal the unlawful activity, from misrepresentations, from proof of knowledge, and from profits." *United States v. Goodwin*, 748 F. App'x 651, 655 (6th Cir. 2018). Here, Ohio has alleged UWM made verifiably false statements about brokers' "independence" to induce and deceive borrowers to take out loans from UWM and to propagate the fiction that consumers were getting a loan that was in their best interests. Compl. ¶¶ 6–16, 46, 52, 144, 295–99. And UWM did so, Ohio alleges, in furtherance of a scheme to grow

---

[23] Ohio has also alleged a conspiracy count under which co-conspirator liability may apply. UWM does not dispute that brokers had a disclosure duty which they wrongly breached. It cannot be decided on a motion to dismiss whether UWM can be liable for conspiring to breach those disclosure duties.

its market share in pursuit of pecuniary gain. *Id.* ¶¶ 18, 146–48, 150–51. The Complaint thus plausibly pleads specific intent.

**Honest Services Fraud.** Ohio also adequately alleges multiple predicate acts of honest services fraud under 18 U.S.C. § 1346. *Id.* ¶¶ 294–99, 302. Relying on *Skilling v. United States*, 561 U.S. 358, 408 & (2010) and *United States v. Frost*, 125 F.3d 346, 366 (6th Cir. 1997), UWM incorrectly argues that the honest services fraud statute cannot apply here because the statute only applies in cases where *federal law* creates the fiduciary duty that has been breached, and the Complaint alleges no such federal fiduciary duty for mortgage brokers. Mot. 38–39 (emphasis added). That argument fails for two reasons.

*First*, many courts post-*Skilling*—including the Sixth Circuit and district courts within it— have acknowledged that fiduciary duties arising under state law are relevant in determining liability under § 1346.[24] And UWM does not dispute that it is "well settled" under Ohio law that "'[a] mortgage broker has a fiduciary duty to his or her client.'" *Lee*, 2010 WL 1487131, at *5 (quoting *Swayne v. Beebles Invs., Inc.,* 891 N.E.2d 1216, 1226 (Ohio Ct. App. 2008)).

*Second*, the Complaint sufficiently alleges that brokers owe fiduciary duties under the "[p]articular factual circumstances." *United States v. Harris*, 881 F.3d 945, 952 (6th Cir. 2018) (quoting *United States v. Skelly*, 442 F.3d 94, 98 (2d Cir. 2006)). "Most commonly," a fiduciary relationship "exists in situations in which a broker has" some "discretionary authority" over the customer's affairs. *Skelly*, 442 F.3d at 98; *see also United States v. Szur*, 289 F.3d 200, 211 (2d

---

[24] *See, e.g.*, *United States v. Householder*, 137 F.4th 454, 502 (6th Cir. 2025) (evaluating existence of fiduciary duty in the § 1346 context and noting that "[a] 'duty' typically arises from a specific source of law—usually state law" and that "courts often must 'look to state law' when considering whether a fiduciary duty exists") (Thapar, J., concurring); *see also United States v. Terry*, 2011 WL 2111127, at *7 (N.D. Ohio May 26, 2011), *aff'd*, 707 F.3d 607 (6th Cir. 2013) ("this Court finds that the legal duty underlying a charge of honest services fraud must be rooted in state law").

Cir. 2002) ("a relationship of trust and confidence does exist between a broker and a customer with respect to those matters that have been entrusted to the broker"). Ohio alleges that consumers entrust their brokers with core mortgage-shopping functions, including surveying the wholesale market, selecting loan options, and negotiating with lenders on the consumer's behalf. *E.g.*, Compl. ¶¶ 4, 34–36. Brokers are thus alleged to have significant discretion, influence, and control. *See id.* Ohio has therefore satisfied its pleading burden with respect to the existence of brokers' fiduciary responsibilities.

**Travel Act.** Ohio sufficiently pleads predicate Travel Act violations as well. The Travel Act prohibits "unlawful activity" in interstate commerce, including "bribery … in violation of the laws of the State in which committed[.]" 18 U.S.C. § 1952. UWM incorrectly claims Ohio cannot support its CPA claims with a Travel Act violation based on a violation of another state's commercial bribery statute because such a violation is not actionable without a prior conviction. Mot. 36 (citing R.C. 2923.31(I)(3)). But a violation of the Travel Act ***based on*** a violation of another state's law is not a CPA predicate under R.C. 2923.31(I)(3) (which covers violations of other states' laws) but under R.C. 2923.31(I)(1) (which covers racketeering activity under the RICO). Thus, for example, when UWM and its broker partners repeatedly engaged in interstate commerce in violation of Michigan's commercial bribery statute, Mich. Comp. Laws Ann. § 750.125, they were violating the Travel Act and committing CPA predicates under R.C. 2923.31(I)(1). The prior conviction requirement under subsection (I)(3) does not come into play.

### 2. Ohio Adequately Alleges an Enterprise.

The Complaint also sufficiently pleads a CPA enterprise. The definition of an "enterprise" includes "any organization, association, or group of persons associated in fact although not a legal entity." R.C. 2923.31(C). In cases where the enterprise is "entirely an 'association in fact,'" the plaintiff merely must show that the enterprise is "a continuing unit that functions with a common

purpose." *State v. Beverly*, 37 N.E.3d 116, 118, 119 (Ohio 2015) (noting the statute's definition of "enterprise" is "remarkably open ended"). This can be accomplished by establishing "the predicates are a regular way of conducting defendant's ongoing legitimate business (in the sense that it is not a business that exists for criminal purposes)[.]" *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 243, (1989).

The enterprise alleged here meets this standard. The Complaint describes a hierarchical framework through which UWM deployed organized incentives and threats to "cultivate 'loyalist' brokers" and to systematically deceive consumers into retaining those "loyalist" brokers based on false claims of "independence." Compl. ¶¶ 66, 85–89, 90–125, 283–91. Indeed, as Ohio explains, the members of the enterprise all serve "a common purpose: to sell as many mortgages as possible and thereby maximize the revenue and profitability of the Enterprise's members." *Id.* ¶ 291. And they rely on one another to achieve their collective aim: UWM depends on participating brokers to funnel clients into UWM loans, while the brokers depend on UWM to funnel clients and value back to them. *Id.* ¶¶ 152, 157–61, 296, 298, 300. The allegations thus clear the bar.

UWM incorrectly claims the enterprise alleged here "is a classic rimless hub-and-spoke conspiracy," and such conspiracies categorically cannot qualify as "enterprises" under the CPA. Mot. 33–34. But not a single court in Ohio or the Sixth Circuit so holds. Under *Boyle*, which informs Ohio courts' analysis of the CPA (*see Beverly*, 37 N.E.3d at 119), a "RICO enterprise may be shown through proof of a hierarchical structure and without evidence that the lower level members of the enterprise collaborated directly with each other." *Weiss v. Bank of Am. Corp.*, 153 F.Supp.3d 831, 847 (W.D. Pa. 2015). Here, while posing as independent brokers to consumers, there are hundreds of brokers that secretly give *all of their business* to UWM and are, as a result, functionally *de facto* UWM employees. Even if such a "rimless wheel" defense were viable,

multiple cases—including within the Sixth Circuit—have directly rejected it where, as here (*see* Compl. ¶¶ 152, 158, 161, 163), the members of the RICO enterprise were alleged to have knowingly and intentionally conspired with one another. *See, e.g.*, *United States v. Householder*, 2023 WL 23801, *3–4 (S.D. Ohio Jan. 3, 2023); *Root, Inc. v. Silver*, 2024 WL 85057, *11 (S.D. Ohio Jan. 8, 2024). Moreover, where, as here (*see* Compl. ¶¶ 157–59), a plaintiff plausibly alleges that the enterprise members' actions "if taken independently, would be contrary to their economic self-interest," that "tend[s] to exclude the likelihood of independent conduct," destroying a purported "rimless" wheel defense. *Re/Max Int'l, Inc. v. Realty One, Inc.*, 173 F.3d 995, 1009 (6th Cir. 1999); *see also, e.g.*, *In re Deere & Co. Repair Serv. Antitrust Litig.*, 703 F.Supp.3d 862, 901– 08, at *28–31 (N.D. Ill. Nov. 27, 2023) (inferring horizontal conspiracy where alleged "spokes" would have been "economically disadvantaged" if they were "going it alone").

UWM also incorrectly claims the alleged enterprise is too "unstable and fluid" because the size and composition of the enterprise may have changed over time. Mot. 34. Numerous courts have expressly held the opposite: "[b]oth the structure and the personnel of an enterprise may undergo alteration without loss of the enterprise's identity as an enterprise." *Handeen v. Lemaire*, 112 F.3d 1339, 1351 (8th Cir. 1997) (citation omitted); *see also, e.g.*, *United States v. Eppolito*, 543 F.3d 25, 49 (2d Cir. 2008) (association-in-fact enterprise "may continue to exist even though it undergoes changes in membership"); *United States v. Battle*, 473 F.Supp.2d 1185, 1191 (S.D. Fla. 2006) ("an enterprise may consist of a core leader and a changing roster of associates that were engaged, at various times, in obtaining income from illegal acts").

UWM's cases are plainly inapposite and do not hold that an enterprise's members cannot change over time. In *VanDenBroeck*, the enterprise allegations were found deficient because the plaintiff failed to plead any sort of "hierarchical structure" or any definite boundary for the alleged

conspiracy. *VanDenBroeck v. CommonPoint Mortg. Co.*, 210 F.3d 696, 700 (6th Cir. 2000) (noting the conspiracy alleged "could have transpired with any lender in the secondary lending market"). Here, by contrast, there are robust allegations of a hierarchical structure, *see, e.g.*, Compl. ¶¶ 68–75, 85–89, 152–54, 209–15, 290–300, and the enterprise has an outer line of demarcation: only brokers steering loans to UWM in violation of the duties they owe to their clients are alleged to be participating. *Id.* ¶ 285. And in *HMV Properties*, the plaintiffs did "little more than offer conclusory statements as to the existence of an association-in-fact enterprise without offering any facts in support of the *Boyle* factors…" *HMV Props., LLC v. IDC Ohio Mgmt., LLC*, 2011 WL 53166, at *13 (S.D. Ohio Jan. 6, 2011). The same cannot be said of Ohio's Complaint here. *E.g.*, Compl. ¶¶ 47–57, 152–65, 209–15, 290–301.

### 3. Ohio Adequately Alleges Proximate Cause.

Finally, Ohio's allegations of proximate cause are sufficient to support its CPA claim. "Proximate-cause analysis is controlled by the nature of the statutory cause of action. The question it presents is whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014). Under the CPA, "any person directly **or indirectly** injured" has a cause of action. R.C. 2923.34(E) (emphasis added). "[T]he work that the phrase 'indirectly' does in the OCPA is to permit claims for indirect injuries to be brought that might not be permitted under [federal] RICO." *In re Nicole Gas Prod., Ltd.*, 519 B.R. 723, 750 (Bankr. S.D. Ohio 2014), *aff'd sub nom.*, 916 F.3d 566 (6th Cir. 2019). While CPA is generally understood to require at least some "showing of connection" between the alleged violations and injuries, the statute's "indirect injury" language "informs the analysis." *Bradley*, 96 F.Supp.3d at 774. The strict "directness" standard articulated in federal RICO cases thus does not apply. *See, e.g.*, *Smith*, 518 F.Supp.3d at 1125 (noting that "causation" under the CPA "is interpreted more broadly than federal civil RICO"); *CSAHA/UHHS-Canton,*

38

*Inc. v. Aultman Health Found.*, 2012 WL 750972, *10 (Ohio Ct. App. Mar. 5, 2012) (denying motion to dismiss CPA claim on proximate cause grounds "[g]iven Ohio's recognition of recovery for indirect injury" which "is broader than the comparable federal RICO requirement").

Here, Ohio sufficiently pleads causation.  As discussed in Section I.A.3, *supra*, the Complaint alleges that UWM harmed Ohio's sovereign interest in protecting the integrity of its mortgage lending market.  The harm was not only foreseeable but in fact foreseen—UWM openly stated its intent was to "cultivate 'loyalist' brokers" to create a "sticky customer base" and "significant pricing power."  Compl. ¶¶ 60, 66.  And the scheme worked: hundreds of Ohio mortgage brokers and loan officers have become UWM "loyalists," *id.* ¶¶ 126–33, and their borrower-clients are predictably funneled into higher-priced UWM loans, undermining the fundamental structure and purpose of the wholesale market.  *Id.* ¶¶ 1, 14–17, 134–36; *see Bourke v. Carnahan*, 840 N.E.2d 1101, 1106 (Ohio Ct. App. 2005) (denying motion to dismiss CPA claim where defendant's scheme was "designed to" achieve the result it ultimately achieved).

UWM argues that Ohio's theory of causation is deficient because it "passes through several intervening causes," particularly the separate decisions of brokers.  Mot. 35.  But "proximate cause is not...the same thing as a sole cause." *Wallace v. Midwest Fin. & Mortg. Servs., Inc*, 714 F.3d 414, 422 (6th Cir. 2013); *see also Smith*, 518 F.Supp.3d at 1133.  Under Ohio law, "the connection between the defendant's [tortious conduct] as a proximate cause of an injury is not broken, if an intervening event is one which might in the natural and ordinary course of things be anticipated as reasonably probable, and the defendant's [tortious conduct] remains an important link in the chain

of causation." *Taylor v. Webster*, 231 N.E.2d 870, 873 (Ohio 1967). That principle applies here, and UWM's cases are not to the contrary.[25]

### D.    Ohio States a Claim for Civil Conspiracy

UWM raises a number of arguments against the civil conspiracy claim, but they depend on ignoring the allegations made throughout the Complaint and rely primarily on cases decided based on the sufficiency of the evidence, not the pleadings. *First*, Ohio has met its pleading burden for fraud under Rule 9(b). *See* Section II.A.2.

*Second*, UWM cannot re-characterize Ohio's well-pled civil conspiracy claim as a claim for aiding and abetting breach of fiduciary duty. As pled, UWM's activities are far broader than mere abetting: It closely monitors brokers, punishes brokers who do not participate in its scheme, and rewards brokers who do participate. Compl. ¶¶ 85–125. UWM not only encouraged unlawful acts but also furthered the conspiracy with its own unlawful acts. See, e.g., *id*. ¶ 318.

*Third,* UWM claims that "the State has failed to allege a 'malicious combination,'" because the evidence of tacit agreement is consistent with innocent business strategy. Mot. 40–41 (citation omitted). But a malicious combination is often proven through circumstantial evidence. *In re Nat'l Century Fin. Enters., Inc.*, 504 F.Supp.2d 287, 326 (S.D. Ohio 2007). As alleged in the Complaint, conspiracy is evidenced by patterns of funneling loans to UWM and overcharging that do not support alternative innocent explanations. Compl. ¶ 134–142; 149.

---

[25] *See Collier v. LoGiudice*, 818 Fed. App'x 506, 511–12 (6th Cir. 2020) (dismissing federal RICO claim where plaintiff's misconduct broke causal chain); *De Los Angeles Aurora Gomez v. Bank of Am., N.A.*, 2013 WL 12165673, at *6 (C.D. Cal. Aug. 21, 2013) (dismissing federal RICO claim where plaintiffs did not allege that defendant knew of claimed scheme); *GM LLC v. FCA US LLC*, 2020 WL 3833058, at *10 (E.D. Mich. July 8, 2020) (dismissing federal RICO claim where plaintiff failed to allege connection between bribes and denial of benefits).

*Fourth*, UWM asserts that Ohio has failed to plead an unlawful act, that is that brokers did not breach fiduciary duties if they acted as described in the Complaint, because certain disclosures were provided to borrowers. Mot. 41. What disclosures were made is a fact question and cannot be resolved in a motion to dismiss. *See* Section II.C.1. At a minimum, UWM does not claim that consumers were told that brokers would steer borrowers towards UWM loans without regard for the merits of those loans and without comparing them. At least those acts constitute a breach of fiduciary duty.[26] Ohio's cause of action for civil conspiracy against UWM should not be dismissed.

### E. Ohio States Claims for Unjust Enrichment

Ohio alleges valid claims for unjust enrichment under state law. UWM's arguments to the contrary are without merit. *First*, for the reasons discussed above (*See* Section II.A.2), the Complaint is well-pled.

*Second*, UWM cites no authority establishing that Ohio must plead myriad details about each borrower and broker to show knowledge. *See* Mot. 42–43. There is no "'bright line' rule in the law as to the 'knowledge' component" of unjust enrichment, *State Farm Mut. Auto. Ins. Co. v. Balcer Performance & Restoration*, 2018 WL 6436730, at *4 (Ohio Ct. App. Dec. 6, 2018), and "after-the-fact knowledge of a benefit may satisfy" the element, *Calderone v. Baird*, 2025 WL 754069, at *3 (Ohio Ct. App. Mar. 10, 2025). UWM knowingly received millions of dollars from Ohio borrowers as a direct result of its scheme to corrupt brokers and mislead borrowers. Compl. ¶¶ 10, 18, 143, 151, 326. UWM's own statements demonstrate its knowledge of this scheme and

---

[26] *See* Compl. ¶ 30 ("mortgage brokers owe a fiduciary duty to borrowers"); *id.* ¶ 141 (brokers steering high proportion of loans to UWM is incompatible with broker's fiduciary duties); *id.* ¶ 155 (brokers systematically conceal material information from borrower-clients); *id.* ¶¶ 166-207 (allegations about individual Ohio brokers who conspired to steer borrower-clients into UWM mortgages).

the benefits it received under it. *See, e.g.,* Compl. ¶¶ 5–10, 66, 75. That is more than enough to satisfy the "knowledge" requirement at the pleading stage.

*Third*, UWM incorrectly asserts that the mortgage loan agreements entered into by Ohio consumers bar Ohio's unjust enrichment claim. Mot. 43 (citing Compl. ¶ 332). In Ohio, a "claim for unjust enrichment only is barred when a plaintiff seeks a *remedy under the terms of the* contract and *when the subject matter of the dispute is governed by the contract*." *Rorig v. Thiemann*, 2007 WL 2071909, at *10 (S.D. Ohio July 17, 2007) (citation omitted). Here, Ohio's unjust enrichment claim arises out of the deceptive conduct and steering scheme that caused borrowers to enter the contract, not the contract itself. "Plaintiffs' claim…involves facts and actions completely separate from the policy." *Zangara v. Travelers Indem. Co. of Am*., 423 F.Supp.2d 762, 775 (N.D. Ohio 2006), *vacated on jurisdictional grounds*, 2006 WL 825231 (N.D. Ohio Mar. 30, 2006). The contract terms have no bearing on whether UMW was unjustly enriched by the deceptive conduct. *See Zangara*, 423 F.Supp.2d at 775 (finding unjust enrichment claim not barred where contract "does not cover the 'deceptive sales scheme' that Plaintiffs allege; indeed, that is the whole point of the Complaint"); *Rorig*, 2007 WL 2071909, at *10. Because the Court need not look to the terms of the borrowers' mortgage contracts, Ohio's unjust enrichment claim is not barred.

*Fourth*, UWM argues that if the Court finds Ohio's fraud claim viable, it must dismiss the unjust enrichment claim as duplicative, but if the Court dismisses the fraud claim, the unjust enrichment claim fails because it "depends on [those] allegations of fraud." Mot. 43 (quoting *Rorig*, 2007 WL 2071909, at *10) (alteration in original). This argument fails for two reasons. First, courts have addressed this exact argument—where "conduct underlying" an unjust enrichment claim "is the same conduct that forms the basis of the [Plaintiff's] other claims"—and determined that "at the pleading stage, multiple overlapping and conflicting claims may be asserted

alternatively without requiring dismissal." *In re Nat'l Prescription Opiate Litig.*, 458 F.Supp.3d 665, 695 (N.D. Ohio 2020). Second, even if the Court disposes of Ohio's fraud claims at this stage, the unjust enrichment claim is still viable because a finding of fraud is not required for a claim of unjust enrichment. *FedEx Corp. Servs., Inc. v. Heat Surge, LLC*, 131 N.E.3d 397, 402 (Ohio Ct. App. 2019).[27]

### F. Ohio States Claims for Common Law Fraud

UMW makes four arguments in support of its assertion that Ohio has failed to satisfy its pleading stage burden as to the elements of fraud elements, but each fails. *First*, Ohio has met its pleading burden for fraud under Rule 9(b). *See* Section II.A.2.

*Second*, Ohio has shown many actionable affirmative misrepresentations by UWM and omissions that UWM had a duty to disclose to borrowers. *See* Section II.C.1. UWM cites *Blon v. Bank One*, *Akron, N.A.* for the proposition that there is no "duty to disclose" because the relationship between UWM and borrowers was that of "a creditor and consumer stand[ing] at arm's length." 519 N.E.2d 363, 365 (Ohio 1988). But *Blon* explicitly limited the lack of duty to disclose to "the existence and details of a finder's fee or similar arrangement with a credit arranger." *Id.* at 368. Far more analogous here is the Ohio Supreme Court's finding that duties of disclosure between loan processors and borrowers may arise outside of a written contract:

> A fiduciary relationship need not be created by contract; it may arise out of an informal relationship where both parties understand that a special trust or confidence has been reposed… [W]hile a bank and its customer may be said to stand at arm's length in negotiating the terms and conditions of a mortgage loan, it is unrealistic to believe that this equality of position carries over into the area of loan processing[.]

---

[27] The unjust enrichment claim would still not be barred by the mortgage contracts because Ohio alleges illegality (apart from fraud). *See Cristino v. Bur. of Workers' Comp.*, 977 N.E.2d 742, 753 (Ohio Ct. App. 2012) ("The existence of an express contract precludes an unjust-enrichment claim only *in the absence of bad faith, fraud, or **some other illegality**.*" (bold emphasis added)).

*Stone v. Davis*, 419 N.E.2d 1094, 1098 (Ohio 1981); *see also Zangara*, 423 F.Supp.2d at 768.

*Third,* the assertion that UWM lacked "intent to mislead" because its "tactics" were "openly disseminated" is a question of fact unsuitable for the motion to dismiss stage. Mot. 44–45; *see Medpace, Inc. v. Biothera, Inc.,* 2015 WL 1474985, at *20 (S.D. Ohio Mar. 31, 2015) ("Whether a defendant acted with intent to mislead is generally a question of fact for the jury.") As such, "Rule 9(b) provides that intent may be averred generally." *Nat'l Century Fin. Enters.,* 504 F.Supp. at 318. Nevertheless, the Complaint details numerous actions and statements demonstrating UWM's intent to mislead borrowers into hiring "independent" brokers who, as UWM knew, were contractually obligated and incentivized to funnel loans to UWM. *See, e.g.*, Compl. ¶¶ 41, 52, 101, 148.

*Fourth*, UWM incorrectly asserts that Ohio has failed to show borrowers' reliance on UWM's deceptive statements. Mot. 45. As noted above, *see* Section II.A.2, reliance is generally a question for the factfinder inappropriate for determination on a motion to dismiss. *See In re Nat'l Prescription Opiate Litig.*, 2018 WL 4895856, at *41; *see also Nernberg v. Pearce*, 35 F.3d 247, 250 (6th Cir. 1994) ("It is generally accepted that a plaintiff is not required to prove direct reliance on a fraudulent misrepresentation to state a claim for fraud.").

In any event, Ohio has demonstrated justifiable reliance. Under state law, "[r]eliance is justifiable if the representation does not appear unreasonable on its face and if there is no apparent reason to doubt the veracity of the representation under the circumstances." *Medpace, Inc.*, 2015 WL 1474985, at *18. Moreover, Ohio courts have declined to dismiss fraud claims where "the representations and advertisements described in the [] Complaint were published or broadcast

during the years in which" the injurious actions occurred, so that reliance "may be presumed." *Hollar v. Philip Morris Inc.*, 43 F.Supp.2d 794, 809-10 (N.D. Ohio 1998).[28]

Under these circumstances, "the actual facts" were not "equally open to both parties." Mot. 44 (quoting *Dalrymple v. Westerville*, 201 N.E.3d 382, 403 (Ohio Ct. App. 2022)). Borrowers had no reason to believe their brokers were working in concert with UWM to deceive them about the nature of the services they were receiving, particularly given UWM's advertising statements about broker independence and its directive that brokers conceal their special relationship with UWM. *See, e.g.,* Compl. ¶ 9, 52, 84, 94. "In determining whether a plaintiff is justified in relying upon the defendant's representations, a fact finder must not revert to a 'reasonable person' standard," because "[r]eliance is justified if, under the circumstances, the plaintiff did not have reason to doubt the veracity of the representation." *Morgan v. Mikhail*, 2008 WL 4174063, at *15 (Ohio Ct. App. Sept. 11, 2008). Thus, borrowers were justified in relying on UWM's misstatements— indeed, those misstatements underscored the entire value proposition UWM pitched to borrowers to convince them to enter the wholesale mortgage channel.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendant's motion in its entirety.

---

[28] UWM claims the "All-In" policy was "publicly touted" and UWM advertised to brokers that the "PRO Score" means brokers "get[] more FindAMortgageBroker.com leads." Mot. 44 (citing Compl. ¶¶ 75–76, 105, 111–13). These statements were not targeted to borrowers, nor would it be reasonable for borrowers to understand them as negating UWM's statements about broker "independence." *See* Compl. ¶¶ 6–9, 35, 41–56, 51–54, 84, 102-105.

Dated: August 11, 2025              Respectfully submitted,

s/ *Melissa Wright* by s/ *Eric Palmer* per email authorization

**OFFICE OF THE ATTORNEY GENERAL OF OHIO**
Melissa Wright (Ohio Bar No. 77843)
Section Chief, Consumer Protection Section
30 East Broad Street
Columbus, OH 43215
Tel.: (614) 466-8169
Melissa.Wright@OhioAGO.gov

**BOIES SCHILLER FLEXNER LLP**
Jesse Panuccio
Eric Palmer (Ohio Bar No. 99742)
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Tel.: (954) 356-0011
jpanuccio@bsfllp.com
epalmer@bsfllp.com

John T. Zach
Marc Ayala
55 Hudson Yards
New York, New York 10001
Tel.: (212) 446-2300
jzach@bsfllp.com
mayala@bsfllp.com

Tyler Ulrich
100 SE Second Street, Suite 2800
Miami, Florida 33131
Tel.: (305) 357-8422
tulrich@bsfllp.com

*Counsel for Plaintiff State of Ohio*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 11, 2025, a copy of the foregoing was served on the following via CM/ECF:

**JONES DAY**
Jeffrey J. Jones
Michael R. Gladman
Brandy Hutton Ranjan
325 John H. McConnell Boulevard, Suite 600
Columbus, Ohio 43215
Phone:  (614) 469-3939
jjjones@jonesday.com
mrgladman@jonesday.com
branjan@jonesday.com

*Counsel for Defendant United Wholesale Mortgage, LLC*

s/ *Eric Palmer*
Eric Palmer