# Exhibit A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| STATE OF OHIO *ex rel.* DAVE YOST Ohio Attorney General, | |
| Plaintiff, | Case No. 3:25-cv-00160-TMR-CHG |
| v. | Hon. Thomas M. Rose, United States District Judge |
| UNITED WHOLESALE MORTGAGE, LLC, | Hon. Caroline H. Gentry, Magistrate Judge |
| Defendant. | |

**DEFENDANT UNITED WHOLESALE MORTGAGE, LLC'S
[PROPOSED] SURREPLY IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

In his Reply, ECF No. 23, the Attorney General raises two new arguments. Both fail. ***First***, the AG submits new evidence—two retention agreements the AG signed with other outside counsel on other matters—to support his argument that Ohio is the real party in interest. But those agreements include the "State of Ohio" in their definitions of the relevant "Client." The Boies Client Agreement here, by contrast, defines the ***only*** client in this case as "Ohio's consumers and citizens," which is an effective admission that the underlying Ohio consumers are the real parties in interest in this case, and establishes diversity jurisdiction for removal. Indeed, the contrast between the AG's new, unrelated contingency agreements and the Boies Client Agreement supports jurisdiction. ***Second***, after omitting any such argument in his opening brief, the AG now argues in Reply that the Court cannot resolve merits questions in aid of its jurisdictional determination. That argument is wrong, and the AG's supporting caselaw is either inapposite or does not stand for the propositions for which it is cited. This Court can and should resolve any of the merits issues intertwined with jurisdiction here under controlling law.

I. **The AG's new evidence proves that Ohio consumers are the primary beneficiary**

The AG puts forward two new retention agreements in the hopes of proving that the State is the real party in interest. Reply 6-7 n.5. Yet the newly cited 3M PFAS and DuPont Litigation agreements—unlike the one present here—expressly include the State as a "Client." They therefore only underscore that the Boies Client Agreement demonstrates that "Ohio's consumers and citizens," the only defined "Clients" in that agreement, are the real parties in interest here.

In its Opposition (at 5), UWM explained that in his Client Agreement with Boies, the AG "agree[d] that 'Ohio[] consumers' are the sole 'Client'—**not** the State." *See also* ECF No. 22, Ex. 1-A ("Client Agreement"). As UWM argued, this establishes "that [the AG's] primary goal is consumer damages," effectively admitting that consumers are the real parties in interest to whom relief will effectively operate. Opp. 5. In Reply (at 6), the AG does not deny that he signed that

1

Agreement or challenge the admissions in it; instead, he argues it is "absurd" to suggest that the Client Agreement sheds any light on who the real party in interest is in this litigation. In making that argument, the AG cites new evidence: two unrelated "retention agreements between the [AG] and outside counsel," for litigation against 3M and DuPont, signed prior to the Client Agreement here, which the AG claims "similarly define" the word "Client" to "include … citizens" and thus demonstrate that all three agreements merely "track[] the applicable standard for *parens patriae* standing." Reply 6-7 & n.5. The problem for the AG is that the "Client" definitions in the 3M PFAS and DuPont Litigation agreements are critically different on these points:

- Boies Client Agreement: "WHEREAS the [AG] desires to engage Outside Counsel to provide legal representation to Ohio's consumers and citizens (the '**Client**')…" *See* ECF No. 22, Ex. 1-A (emphasis added); Boies Agreement, Ohio AG, Link.

- 3M PFAS & DuPont Litigation Agreements: "WHEREAS the [AG] desired to engage Outside Counsel to provide legal representation to the State of Ohio and the [AG] in his official capacity as chief law officer of the State of Ohio, empowered to represent, under *parens patriae* authority, the citizens of the State of Ohio, and as trustee of state-owned natural resources (the '**Client**')…" *See* 3M PFAS Agreement, Link (emphasis added); DuPont Litigation Agreement, Link; *see also* Reply 7 n.5.

In other words, the Boies Client Agreement in this case defines "Ohio's consumers and citizens" as the ***only*** "Client," while the 3M PFAS and DuPont Litigation agreements define the "Client" to include the State and the AG acting as *parens patriae*. That difference speaks volumes about the real party in interest here. The omission of the State as a "Client" in the Boies Client Agreement shows that the AG made an affirmative determination that the State was ***not*** a client in this case—unlike in other cases. This distinction alone nullifies the AG's prediction that "[i]f UWM is right, every one of [these] cases would become removable." Reply 7.[1] And this new evidence only confirms that the real party in interest here is "Ohio's consumers and citizens."

---

[1] That prediction is wrong for other reasons, including that the parties agree that other factors are also relevant to the determination of the real party in interest. *See* Mot. 7-8, 10; Opp. 5-7.

2

To the extent the AG argues that the retention agreements are not relevant to the "essential nature and effect of the proceeding," Reply 6, or that the Court should ignore this evidence, he is wrong: "[T]he real party in interest must be 'determined by the essential nature and effect of the proceeding as it appears from the entire record.'" *Geeslin v. Merriman*, 527 F.2d 452, 455 (6th Cir. 1975). Here, the entire record—including the Boies Client Agreement—demonstrates that Ohio consumers are the real parties in interest.

## II. This Court can and should consider merits issues in resolving jurisdiction

Binding precedent holds that this Court can and should resolve merits issues like these that are intertwined with jurisdiction, and the AG's new arguments to the contrary distort his cases, ignore his own merits arguments, and misstate the law. In his Motion to Remand, the AG did not argue that merits issues cannot be decided. Opp. 6 n.3 ("The AG rightly does not dispute the propriety of resolving the underlying merits as 'necessary to decide' jurisdiction where those issues are 'intertwined.'" (citing *Y.A. by Alzandani v. Hamtramck Pub. Schs.*, 137 F.4th 862, 874 (6th Cir. 2025)). The AG now raises that argument for the first time in Reply, despite making merits arguments of his own in both briefs. *See, e.g.*, Mot. 11-12 (arguing the AG's statutory powers under the CSPA); Reply 18 (arguing mortgage brokers have fiduciary duties under federal law).

As both the Sixth Circuit and the Supreme Court have held, courts have the power to resolve merits issues that are intertwined with jurisdiction. *See Y.A.*, 137 F.4th at 874 ("Because the merits and jurisdiction 'come intertwined,' we may decide the former if it is necessary to decide the latter."); *Brownback v. King*, 592 U.S. 209, 218-19 (2021) ("Because a federal court always has jurisdiction to determine its own jurisdiction, a federal court can decide an element of an FTCA claim on the merits if that element is also jurisdictional." (marks omitted)); *see also Julie Maynard, Inc. v. Whatever It Takes Transmissions & Parts*, 2020 WL 1244189, at *3-4 (S.D. Ohio Mar. 16

3

2020) (Rose, J.) (denying motion to remand and finding diversity jurisdiction based on fraudulent joinder, after reviewing allegations and addressing the merits of a claim "[u]nder Ohio law").

None of the cases the AG cites in Reply says otherwise. For example, the AG cites *Coyne* as a case that forbids merits analysis. Reply 7. But the Sixth Circuit in *Coyne*—in discussing fraudulent joinder on a motion to remand—explicitly states that a court must determine if "a plaintiff could … have established [a claim] under state law"; actually goes on to determine the plaintiff failed to establish an action "under state law"; and does so by interpreting Ohio statutes and caselaw. 183 F.3d 488, 493 (6th Cir. 1999). And in *Facione* (Reply 9-10), the court found only that "merits issue[s]" regarding "statutory standing" and third-party contract standing had "nothing to do with [its] subject-matter jurisdiction"; here, by contrast, the merits issues are intertwined. 628 F. App'x 919, 921 (6th Cir. 2015); *cf. Hunter v. Dove*, 711 F. Supp. 3d 862 (S.D. Ohio 2024) (Reply 7, not discussing the issue of intertwined merits and jurisdiction).

What's more, other cases the AG cites in his briefing routinely resolve merits issues in aid of determining jurisdiction, including on each relevant jurisdictional issue. *See, e.g.*, *Nessel ex rel. Michigan v. AmeriGas Partners, L.P.*, 954 F.3d 831 (6th Cir. 2020) (cited at Reply 11-12, interpreting a Michigan statute to determine if case was a "class action" under CAFA); *Ohio ex rel. Dann v. Citibank (S. Dakota), N.A.*, 2008 WL 1990363 (S.D. Ohio May 1, 2008) (cited at Mot. 7, asking, *inter alia*, what state statutes say about AG authority under state law).[2]

Consistent with binding authority, this Court can and should resolve the merits issues raised here that are intertwined with and important to the underlying jurisdictional issues.

---

[2] After the AG argued that statutory authority under state law is a factor for the real party in interest test, Mot. 7, UWM responded that authority was not a relevant factor but explained in the alternative that that factor favored jurisdiction because the AG lacked authority, Opp. 9-10 & n.4. The AG cannot now argue the arguments he raised are improper merits issues. *See* Reply 9-10.

<table>
<tr><td>

Dated: August 25, 2025

Rebekah B. Kcehowski
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
(412) 391-3939
rbkcehowski@jonesday.com

</td><td>

Respectfully submitted,

*/s/ Jeffrey J. Jones*
Jeffrey J. Jones* (Bar No. 30059)
　　*Trial Attorney*
Michael R. Gladman (Bar No. 59797)
Brandy Hutton Ranjan (Bar No. 86984)
JONES DAY
325 John H McConnell Blvd #600
Columbus, OH 43215
(614) 469-3939
jjjones@jonesday.com
mrgladman@jonesday.com
branjan@jonesday.com

Stephen J. Cowen
Amanda K. Rice
Andrew J. Clopton
JONES DAY
150 W. Jefferson Ave, Suite 2100
Detroit, MI 48226
(313) 733-3939
scowen@jonesday.com
arice@jonesday.com
aclopton@jonesday.com

*Counsel for United Wholesale Mortgage, LLC*

</td></tr>
</table>