UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)

| | |
|---|---|
| STATE OF OHIO *ex rel.* DAVE YOST, Attorney General of the State of Ohio,<br><br>    *Plaintiff*,<br><br> v.<br><br>UNITED WHOLESALE MORTGAGE, LLC,<br><br>    *Defendant*. | Case No.:  3:25-cv-00160<br><br>Hon. Thomas M. Rose<br><br>Hon. Caroline H. Gentry |

**PLAINTIFF STATE OF OHIO'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT UNITED WHOLESALE MORTGAGE, LLC'S MOTION FOR LEAVE TO FILE SURREPLY, AND IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE**

  This Court should deny Defendant United Wholesale Mortgage, LLC ("UWM")'s Motion for Leave to File a Surreply and strike UWM's Proposed Surreply.  UWM seeks leave to file a surreply on two issues it chose to raise in its opposition—Ohio's retention agreement with its counsel and whether UWM received adequate notice that its conduct is unfair and deceptive to be held liable for civil penalties under R.C. 1345.07(D) of the Ohio Consumer Sales Practices Act ("CSPA").  Ohio was entitled to respond to those arguments, and UWM's proposed surreply is nothing more than "a strategic effort by the nonmoving party to have the last word on a matter." *N. Harris Comput. Corp. v. DSI Invs., LLC*, 608 F.Supp.3d 511, 531 (W.D. Ky. 2022) (quoting *Liberty Leg. Found. v. Nat'l Democratic Party of the USA, Inc*., 875 F.Supp.2d 791, 797 (W.D. Tenn. 2012)).

1

**BACKGROUND**

On July 7, 2025, the State of Ohio, acting through its Attorney General, filed its motion to remand. Docs. 17, 17-1. Ohio emphasized that doubts concerning removal should be "resolved in favor of remand." Doc. 17-1 ("MTR") at 1, 5 (quoting *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999)). Ohio argued that this Court did not have diversity jurisdiction because Ohio is the real party in interest. *Id.* at 6–10. In so doing, Ohio focused on factors highlighted by the caselaw, such as the relief sought. *See id.* at 7–9. Ohio explained that this suit seeks civil penalties, but it did not attempt to prove that it was entitled to civil penalties at this early stage in the proceedings. *Id.* at 7–10.

Also on July 7, UWM filed its motion to dismiss. Doc. 16 ("MTD"). UWM argued that Ohio was not entitled to penalties as a matter of law. *Id.* at 13–16. This argument was inappropriate for resolution on a motion to dismiss, Doc. 24 at 6 (citing *Ferron v. Dish Network*, 961 N.E.2d 705, 710 (Ohio 2011)), but UWM nevertheless spent multiple pages asking this court to decide whether it had sufficient notice to justify an award of penalties on the facts, *see* MTD at 13–16.

On July 28, UWM filed its opposition to Ohio's motion to remand. Doc. 22 ("Opp."). UWM made two arguments relevant here. First, UWM argued that Ohio's outside counsel retention agreement revealed the Attorney General's real goal—consumer damages. *Id.* at 5. UWM cited no case relying on an outside-counsel arrangement or otherwise indicating that a court should look past the pleadings and determine the real party in interest by reference to a party's purported secret motives. *Id.* Second, UWM contended that "no civil penalties are available here." *Id.* at 6. Not content with its motion to dismiss argument, UWM wanted the Court to delve into the fact-intensive notice issue before the Court was even assured of jurisdiction.

2

On August 11, Ohio responded to both arguments in its reply brief, as was its right. Concerning the retention agreement, Ohio explained that the agreement was irrelevant but consistent with Ohio's *parens patriae* standing. Doc. 23 ("Reply") at 6, 7 n.6. Ohio also cited two other retention agreements to argue that they would also be removable under UWM's flawed reasoning. *Id.* at 6–7 & n.5. Regarding civil penalties, Ohio argued that the Court should not decide the merits of that issue at a stage when "all doubts must be resolved" in Ohio's favor. *Id.* at 7. Ohio also argued that UWM was wrong on the merits. *Id.*

Two weeks later, UWM filed a motion for leave to file a surreply. Doc. 26 ("Mot."). UWM argued its surreply was justified because Ohio allegedly raised "new arguments" in its reply, and because Ohio mischaracterized the retention agreements it cited. *Id.* at 1–3. UWM attached a proposed surreply to its motion. Doc. 26-1 ("Surreply").

## **LEGAL STANDARD**

Under the Court's Local Rules, additional memoranda are prohibited "except upon leave of court for good cause shown." S.D. Ohio R. 7.2(a)(2). Surreplies are "highly disfavored," *Walden v. Gen. Elec. Int'l, Inc*, 119 F.4th 1049, 1056 (6th Cir. 2024) (citation omitted), and federal courts "rarely grant leave" to file them, *Daisy Inv. Corp. v. City of Seven Hills*, 2024 WL 3759648, at *3 (N.D. Ohio Aug. 12, 2024).[1] This Court has "inherent power to strike filings that do not comply with court rules," such as improper surreplies. *Ogle v. BAC Home Loans Servicing LP*, 2011 WL 3838169, at *2 (S.D. Ohio Aug. 29, 2011); *see also Newman v. Univ. of Dayton*, 2017

---

[1] *See also Disselkamp v. Norton Healthcare, Inc.*, 2019 WL 3536038, at *14 (W.D. Ky. Aug. 2, 2019) ("sur-replies are highly disfavored"); *Weems v. Hodnett*, 2011 WL 2731263, at *1 (W.D. La. July 13, 2011) (collecting cases for the proposition that "[s]urreplies are heavily disfavored by courts"); *Crane v. Mem'l Hosp.*, 2009 WL 742567, at *4 (D. Utah Mar. 20, 2009) ("[S]urreplies, on the other hand, are typically not allowed."); *King v. Knoll*, 399 F.Supp.2d 1169, 1174 (D. Kan. 2005) ("Surreplies are typically not allowed." (quoting *Taylor v. Sebelius,* 350 F.Supp.2d 888, 900 (D. Kan. 2004))).

WL 4076517, at *3 (S.D. Ohio Sept. 14, 2017) (Rose, J.) (collecting cases). A surreply should be struck when it "is simply an attempt to have the last word." *Walden v. Gen. Elec. Int'l, Inc.*, 2024 WL 663484, at *4 (W.D. Ky. Jan. 22, 2024), *aff'd*, 119 F.4th 1049; *see Marcum v. Jones*, 2016 WL 1103893, at *2 (S.D. Ohio Mar. 22, 2016) (striking surreply).[2]

## ARGUMENT

### I. Ohio's Citations to Other Retention Agreements Do Not Warrant a Surreply

The two retention agreements cited in Ohio's Reply do not justify a surreply. Ohio cited other retention agreements for one and only one purpose—to provide an additional response to UWM's argument that Ohio is not the real party in interest in this suit because the Attorney General's retention agreement lists "Ohio's consumers and citizens" as the client. Reply at 6 (citing Opp. at 2, 5). But good cause for a surreply does not exist when the "reply brief was properly limited to responding to arguments Defendants raised in their response." *Willis v. Big Lots, Inc.*, 242 F.Supp.3d 634, 644 (S.D. Ohio 2017); *see also United States v. Kemmerling*, 2019 U.S. App. LEXIS 27960, at *3–4 (6th Cir. Sep. 17, 2019). Here, UWM cited Ohio's retention agreement in its opposition, asked the Court to take judicial notice, and argued that the agreement's definition of "Client" supported remand. Opp. at 2, 5. Ohio was entitled to respond to that argument by citing other publicly available agreements on its website to show that there is nothing remarkable about that retention agreement. Reply at 6–7 & n.5. This "counterpoint" was "not a new argument"—it was a response to an argument UWM made, which is "entirely consistent with the proper purpose of a reply brief." *Liberty Leg. Found.*, 875 F.Supp.2d at 797–98; *see also MBI*

---

[2] If the Court does consider UWM's surreply, it should also consider the arguments raised in Ohio's opposition and Motion to Strike to the extent they bear on the merits in the interests of fairness. *See Mauer v. Deloitte & Touche, LLP*, 752 F.Supp.2d 819, 824–25 (S.D. Ohio 2010) (granting leave to file surreply but announcing intent to consider substantive arguments presented in opposition to filing of surreply).

4

*Grp., Inc. v. Credit Foncier Du Cameroun*, 616 F.3d 568, 575 (D.C. Cir. 2010); *Weems v. Hodnett*, 2011 WL 2731263, at *1 (W.D. La. July 13, 2011); *King v. Knoll*, 399 F.Supp.2d 1169, 1174 (D. Kan. 2005).

UWM also asserts that the agreements constitute "new evidence." Mot. at 3. But the agreements "did not supply new evidence material to any of" the jurisdictional questions at issue. *Key v. Shelby Cnty.*, 551 F. App'x 262, 265 (6th Cir. 2014) (holding affidavits attached to reply brief did not create "a right to file a sur-reply" because the evidence was not material to disputed issues). As Ohio has explained (*see* Reply at 6–7), whether it is the real party in interest depends on "whether the state is the primary beneficiary of the action," not the words used in a retention agreement. *Kentucky ex rel. Stumbo v. Marathon Petroleum*, 2007 WL 2900461, at *4 (E.D. Ky. Oct. 3, 2007); *see also Ohio v. GMAC Mortg., LLC*, 760 F.Supp.2d 741, 745 (N.D. Ohio 2011) (same); *Ohio ex rel. Dann v. Citibank (S.D.), N.A.*, 2008 WL 1990363, at *3 (S.D. Ohio May 1, 2008). And even if the words of the retention agreement *were* relevant, it is well-established that the state is the real party in interest in a suit brought on behalf of "the public generally." *GMAC Mortg., LLC*, 760 F.Supp.2d at 748, 751; *see also Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982) (holding that a state is not a "nominal party" in a *parens patriae* suit on behalf of its "residents in general").

Moreover, the retention agreements were not offered to prove the "facts of the particular case," but rather publicly available legislative facts with "relevance to legal reasoning." *United States v. Silvers*, 129 F.4th 332, 342 (6th Cir. 2025) (citation omitted); *see also* Fed. R. Evid. 201(a). The retention agreements are at most evidence that Ohio routinely incorporates references to its citizens in the "Client" definition of retention agreements in suits brought by the State— which suggests that Ohio representing its citizens in general is no different from representing the

5

State itself.  Reply at 7.  This is not an "adjudicative fact[] [that] relate[s] to the particular facts of a specific case," so these agreements do not justify a surreply as case-specific affidavits might. *Silvers*, 129 F.4th at 343; *see Libertarian Party of Ohio v. Wilhem*, 465 F.Supp.3d 780, 786 (S.D. Ohio 2020) ("The Court, however, is fully capable of assessing the state of the law … without the aid of additional briefing."); *Eldridge v. Cardif Life Ins. Co.*, 266 F.R.D. 173, 175 (N.D. Ohio Feb. 9, 2010) (cited in Mot. at 4).[3]  The Court does not need further briefing on the simple issue of what the *words of the agreements* say.  The Court can review the agreements and decide what they mean.  *See White v. Honda of Am. Mfg., Inc.*, 191 F.Supp.2d 933, 944 (S.D. Ohio 2002) ("The Court is confident that it can discern the relevance and weight to be given to allegations made by Defendant in its briefs without further explanation from Plaintiff.").

Finally, UWM fails to identify any "mischaracterization" of the other agreements in Ohio's reply.  UWM notes that the agreements cited by Ohio "define the 'Client' to include the State and the AG acting as *parens patriae*."  Surreply at 2.  But this is perfectly consistent with Ohio's argument that "other retention agreements … similarly define the 'Client' to **include** 'the citizens of the State of Ohio,' or the like."  Reply at 6–7 (emphasis added).  Ohio's point was that **including** citizens as the defined "Client" does not convert the case into a diversity action; Ohio did not claim the definitions exclusively referenced Ohio's citizens.  *See id.*  And again, UWM does not explain

---

[3] UWM's cited case does not hold that the client definition in a retention agreement is relevant to (let alone dispositive of) the real-party-in-interest inquiry.  It says the Court should look to "the essential nature and effect of the ***proceeding*** as it appears from the entire record."  *Geeslin v. Merriman*, 527 F.2d 452, 455 (6th Cir. 1975) (emphasis added) (citation omitted); *see* Surreply at 3.  The court may consider the entire record, but what matters is whether the plaintiff had "the legal right to bring suit," regardless of whether "the proceeds of the litigation would be turned over to" third parties or not.  *Sprint Commc'ns Co. L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 282–83 (2008); *see* MTR at 7.  Retention arrangements are not part of the proceeding and do not determine the "primary beneficiary" of any relief awarded by the Court.  *Dann*, 2008 WL 1990363, at *3.

how representing *all Ohio citizens* is any different from representing the State of Ohio itself. *See GMAC*, 760 F.Supp.2d at 751 (contrasting "all Ohio residents" with "specific Ohio homeowners").

## II. Ohio's Argument That the Merits of Its Claim for Civil Penalties Should Not Be Considered at This Stage Does Not Warrant a Surreply

UWM is not entitled to a surreply to respond to Ohio's argument that notice under R.C. 1345.07(D) is a merits issue that cannot be adjudicated on a motion to remand, either. *See* Mot. at 4. Among other things, Ohio's motion to remand argued that it is the real party in interest because this suit seeks to impose civil penalties on UWM. MTR at 7–8, 10. In its opposition, UWM argued that Ohio cannot rely on its claims for civil penalties to show it is the real party in interest because the CSPA cases in the Attorney General's Public Inspection File purportedly did not provide notice that UWM's scheme is unfair and deceptive, which precludes Ohio from seeking penalties here. *See* Opp. at 6–7; R.C. 1345.07(D). This argument effectively asks the Court to (i) dismiss Ohio's claim for civil penalties under the CSPA, ***and then*** (ii) hold that it can exercise diversity jurisdiction over the remaining claims. Ohio responded by pointing out that notice under R.C. 1345.07(D) goes to whether Ohio has a valid claim for civil penalties—a merits question that the Court cannot resolve unless and until it determines it has subject-matter jurisdiction. Reply at 7. This was an appropriate reply to UWM, not a new argument that justifies a surreply. *See, e.g., Liberty Leg. Found.*, 875 F.Supp.2d at 797–98.

UWM claims Ohio mischaracterized the law because courts may resolve merits issues that "are intertwined with jurisdictional issues" in certain contexts. Mot. at 4. But to begin with, "it is the Court's role to determine whether parties misconstrue 'propositions set forth in case law.'" *Mareiners, LLC v. Anomatic Corp.*, 2024 WL 4570960, at *3 (S.D. Ohio Oct. 24, 2024) (citation and ellipsis omitted). "A 'desire to correct mischaracterizations and to explain the new cases' cited in a reply memorandum does not ordinarily establish good cause for filing a sur-reply." *Little*

7

*Hocking Water Ass'n, Inc. v. E.I. Du Pont De Nemours & Co.*, 2014 WL 12651139, at *2 (S.D. Ohio Oct. 31, 2014) (citation omitted).  And more fundamentally, UWM never explains why federal diversity jurisdiction in this case is "intertwined" with the run-of-the-mill merits arguments it raises against Ohio's claim for civil penalties under the CSPA.  Jurisdiction to entertain a CSPA claim for civil penalties does not depend on whether the defendant received adequate notice under R.C. 1345.07(D), and UWM does not cite a single case suggesting that a court can adjudicate whether a claim for civil penalties fails on the merits in determining whether the plaintiff asserting that claim is the real party in interest.  As UWM's own case affirms, the real-party-in-interest inquiry depends on whether the "**requested relief** under the OCSPA seeks to benefit some defined set of individuals" or "to protect Ohio citizens generally"—not on whether Ohio will ultimately obtain that relief or pleaded sufficient facts to support that claim.  *GMAC*, 760 F.Supp.2d at 748 (emphasis added).

UWM's cases say nothing to the contrary.  UWM cites two sovereign-immunity cases that examined merits questions, but these cases are plainly distinguishable because the statutes at issue required an assessment of the merits to determine whether a congressional abrogation of sovereign immunity applied in the first place.  *See Y.A. by Alzandani v. Hamtramck Pub. Schs.*, 137 F.4th 862, 874 (6th Cir. 2025) (Americans with Disabilities Act required court to "determine[] 'which aspects of the State's alleged conduct violated Title II'" before examining whether the conduct "'also violated the Fourteenth Amendment,' and whether, if not, 'Congress's purported abrogation of sovereign immunity … is nevertheless valid'" (quoting *United States v. Georgia*, 546 U.S. 151, 159 (2006))); *Brownback v. King*, 592 U.S. 209, 217 (2021) (plaintiff failed to establish jurisdiction "in the unique context" of the Federal Tort Claims Act, where "all elements of a meritorious claim are also jurisdictional").  But nothing in R.C. 1345.07(D) suggests that a court

8

must (or even may) decide whether a defendant received adequate notice before exercising jurisdiction over a claim for civil penalties. UWM also cites fraudulent-joinder cases, where courts may glance at the merits to determine whether a "colorable basis" for a cause of action exists. *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999); *see also Julie Maynard, Inc. v. Whatever It Takes Transmissions & Parts*, 2020 WL 1244189, at *3 (S.D. Ohio Mar. 16, 2020). But this case does not involve fraudulent joinder, and even in fraudulent-joinder cases, "if there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants, this Court must remand the action to state court." *Coyne*, 183 F.3d at 493. Ohio has pleaded a more-than-colorable claim for penalties, so these cases are irrelevant.[4]

Finally, UWM claims that Ohio introduced merits issues by arguing that statutory authority under state law is a factor in the real-party-in-interest test. Surreply at 4 n.2. But Ohio did not argue the merits of its claim to seek civil penalties here.[5] Ohio argued that the Attorney General sued under Ohio statutes "that authorize the Attorney General to bring actions in the name of the State." MTR at 7. Whether the Attorney General has **general** authority under R.C. 1345.07 to seek civil penalties is plainly relevant to whether Ohio is the real party in interest in this suit. *See Dann*, 2008 WL 1990363, at *3–4 (holding Ohio was the real party in interest because "the Ohio Attorney General has the express statutory authority to bring enforcement actions pursuant to the OCSPA" and the suit sought "civil penalties that will go to the state treasury"); *GMAC*, 760

---

[4] UWM also misunderstands *Nessel ex rel. Michigan v. AmeriGas Partners, L.P.*, 954 F.3d 831 (6th Cir. 2020). *Nessel* examined a state statute to determine if it was similar to Federal Rule of Civil Procedure 23; it did not decide the merits of Michigan's claims. *Id.* at 837.

[5] Although Ohio addressed the Attorney General's entitlement to monetary relief, it sought to clarify the claims brought in the Complaint to show that Ohio was not bringing a class action. MTR at 11–12. It did not parse the facts of this case and compare them to caselaw, as UWM seeks to do here. Ohio's brief discussion of the federal law of fiduciary duty addresses the discrete issue of whether an issue raised by UWM was substantial for purposes of federal-question jurisdiction. Reply at 18.

F.Supp.2d at 748. But whether the Attorney General's exercise of that authority to seek penalties was **validly exercised in a particular** case is a question of statutory standing that should be "assessed in conjunction with the merits of the claim" and "need not be resolved at the outset." *Facione v. CHL Mortg. Tr. 2006-J1*, 628 F. App'x 919, 921 (6th Cir. 2015) (citation omitted).[6]

## CONCLUSION

For these reasons, the Court should strike UWM's proposed surreply and deny its motion for leave to file the surreply.

---

[6] Notably, if the Court were to accept *all* of UMW's arguments about the Attorney General's authority, the only claims left would involve declaratory and injunctive relief—which would mean that Ohio would obviously be the real party in interest. *See* MTD at 2.

10

Dated: August 29, 2025      Respectfully submitted,

s/ *Melissa Wright* by s/ *Eric Palmer* per email authorization

**OFFICE OF THE ATTORNEY GENERAL OF OHIO**
Melissa Wright (Ohio Bar No. 77843)
Section Chief, Consumer Protection Section
30 East Broad Street
Columbus, OH 43215
Tel.: (614) 466-8169
Melissa.Wright@OhioAGO.gov

**BOIES SCHILLER FLEXNER LLP**
Jesse Panuccio
Eric Palmer (Ohio Bar No. 99742)
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Tel.: (954) 356-0011
jpanuccio@bsfllp.com
epalmer@bsfllp.com

John T. Zach
Marc Ayala
55 Hudson Yards
New York, New York 10001
Tel.: (212) 446-2300
jzach@bsfllp.com
mayala@bsfllp.com

Tyler Ulrich
100 SE Second Street, Suite 2800
Miami, Florida 33131
Tel.: (305) 357-8422
tulrich@bsfllp.com

*Counsel for Plaintiff State of Ohio*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 29, 2025, a copy of the foregoing was served on the following via CM/ECF:

**JONES DAY**
Jeffrey J. Jones
Michael R. Gladman
Brandy Hutton Ranjan
325 John H. McConnell Boulevard, Suite 600
Columbus, Ohio 43215
Phone:  (614) 469-3939
jjjones@jonesday.com
mrgladman@jonesday.com
branjan@jonesday.com

*Counsel for Defendant United Wholesale Mortgage, LLC*


                              s/ *Eric Palmer*
                              Eric Palmer