**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| STATE OF OHIO *ex rel.* DAVE YOST, | : | |
| Attorney General of the State of Ohio, | : | |
| | : | Case No. 3:25-cv-160 |
| Plaintiff, | : | |
| | : | Judge Thomas M. Rose |
| v. | : | |
| | : | |
| UNITED WHOLESALE MORTGAGE, LLC, | : | |
| | : | |
| Defendant. | : | |

---

**ENTRY AND ORDER GRANTING PLAINTIFF STATE OF OHIO'S MOTION
TO REMAND (DOC. NO. 17) AND GRANTING DEFENDANT UNITED
WHOLESALE MORTGAGE, LLC'S MOTION FOR LEAVE TO FILE A
SURREPLY (DOC. NO. 26)**

---

Presently before the Court is Plaintiff State of Ohio's Motion to Remand ("Motion") (Doc. No. 17). Plaintiff State of Ohio *ex rel.* Dave Yost, Attorney General of the State of Ohio ("Ohio") initially filed this matter in the Common Pleas Court for Montgomery County, Ohio, alleging various claims relating to Defendant United Wholesale Mortgage, LLC's ("UWM") mortgage lending practices. (*Id.* at PageID 2002.) In the Motion, Ohio seeks to have this matter remanded to Ohio state court. (*Id.* at PageID 2002-04.) In its Notice of Removal ("Notice"), UWM points to three separate bases for federal jurisdiction: (1) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1); (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367; and, (3) the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). (Doc. No. 1 at PageID 1.)

For the reasons explained below, the Court **GRANTS** Plaintiff State of Ohio's Motion to Remand (Doc. No. 17).

1

## I.    **BACKGROUND**

This matter stems from UWM's business practices as the largest wholesale mortgage lender in both the state of Ohio and the United States.  (Doc. No. 6-1 at PageID 1253.)  Ohio alleges that UWM has been engaged in a pattern of promoting the false representation that they independently shop for competitively priced loans on behalf of their clients, while simultaneously inducing brokers to steer loans to UWM even when the terms of those loans are not in the best interest of the borrower.  (*Id*. at PageID 1225-32.)  In order to accomplish this, Ohio alleges that UWM coerces brokers' loyalty by enforcing restrictive covenants and conditioning access to valuable tools upon those brokers steering loans to UWM.  (*Id*. at PageID 1255-60, 1263-77.)  By Ohio's telling, there were 216 brokers in the State who directed 99% of their loans to UWM in 2023.  (*Id*. at PageID 1280.)

Ohio filed suit against UWM in the Court of Common Pleas for Montgomery County, Ohio on April 16, 2025 ("Complaint").  (Doc. No. 6-1.)  In the Complaint, Ohio alleges eight causes of action: three claims under the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code § 1345.01-1345.99; one claim under the Ohio Residential Mortgage Lending Act ("RMLA"), Ohio Rev. Code § 1322.01-1322.99; one claim under the Ohio Corrupt Practices Act ("OCPA"), Ohio Rev. Code § 2923.31-2923.36; one claim of civil conspiracy; one claim of unjust enrichment; and, one claim of fraud.  (*Id*. at PageID 1312-44.)  Ohio seeks the following forms of relief:

> A.  Adjudge and decree that UWM has engaged in acts or practices in violation of the CSPA, R.C. 1345.01 *et seq.* and its Substantive Rules, Ohio Admin. Code 109:4-3-01 *et seq.*, as previously set forth;
>
> B.  Permanently enjoin and restrain UWM from engaging in unfair or deceptive consumer sales practices set forth herein and from violating the CSPA, R.C. 1345.01 *et seq.* and its Substantive Rules, Ohio Admin. Code 109:4-3-01 *et seq.*;

C.  Assess, fine and impose upon UWM a civil penalty pursuant to R.C. 1345.07(D) of Twenty-Five Thousand Dollars ($25,000.00) for each unfair or deceptive act or practice "declared to be unfair, deceptive, or unconscionable by rule adopted pursuant to division (B)(2) of section 1345.05 of the Revised Code before the consumer transaction on which the action is based occurred or an act or practice that was determined by a court of this state to violate section 1345.02, 1345.03, or 1345.031 of the Revised Code and committed after the decision containing the court's determination was made available for public inspection[.]"   R.C. 1345.07(D);

D.  Pursuant to R.C. 1322.52(B), permanently enjoin and restrain UWM from engaging in unscrupulous consumer sales practices in connection with residential mortgages in violation of R.C. 1322.01 *et seq.* as alleged herein;

E.  Issue orders that the acts alleged herein be adjudged and decreed to be unlawful in violation of R.C. 2923.31 *et seq.* and enter a judgment declaring them to be so;

F.  Order UWM to pay compensatory, treble damages, and/or disgorgement/restitution as a result of engaging in, or conspiring to engage in, a pattern of corrupt activity in violation of CPA.

G.  Order that the State recover all measures of damages allowable under the common law identified herein, including (1) compensatory damages and costs for economic loss; (2) restitution and disgorgement; (3) reimbursement or restitution of the amounts Ohio borrowers paid mortgage brokers who funneled them to UWM; and (4) equitable and injunctive relief, as permitted by law or equity;

H.  Order that the State recover the costs and expenses of suit, pre- and post-judgment interest, and reasonable attorneys' fees as provided by law;

I.  Order that the Court order such other and further relief as the Court deems just, necessary, and appropriate.

(*Id*. at PageID 1344-45.)

On May 15, 2025, UWM filed their Notice.  (Doc. No. 1.)  In the Notice, UWM argues for federal jurisdiction on three separate bases: (1) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1); (2) federal question jurisdiction 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367; and, (3) the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  (Doc. No. 1 at PageID 1.)  Ohio filed the present Motion on July 7, 2025, seeking a remand of this matter to the Common Pleas Court for Montgomery County.  (Doc. No. 17.)  UWM filed its response on

July 22, 2025 (Doc. No. 22) and Ohio filed its reply on August 11, 2025 (Doc. No. 23).

On August 25, 2025, UWM sought leave to file a surreply to address two arguments made by Ohio in its reply that UWM argues were raised for the first time. (Doc. No. 26 at PageID 2199-200.) The Court finds, pursuant to S.D. Ohio Civ. R. 7.2(a)(2), that good cause exists to grant the surreply. The Court has accordingly considered the surreply herein.

This matter is ripe for review and decision.

## II.    STANDARD OF REVIEW

Under 28 U.S.C. §1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Therefore, lower federal courts can adjudicate cases about only "those subjects encompassed within a statutory grant of jurisdiction." *Home Depot U. S. A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019) (quoting *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982)). A district court has jurisdiction over cases between "citizens of different States" where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). A court may also have federal-question jurisdiction for cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A federal court may finally have jurisdiction over mass actions where: (1) more than $5 million is in controversy; (2) the parties are minimally diverse; and, (3) the number of proposed plaintiffs exceeds 100. 28 U.S.C. § 1332(d). "Whether a cause of action arises under federal law must be apparent from the face of the 'well-pleaded complaint.'" *Miller v. Bruenger*, 949 F.3d 986, 990 (6th Cir. 2020) (citation omitted). The burden of establishing jurisdiction falls on the removing party. *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2000).

## III.   ANALYSIS

In its Notice, UWM contends that this Court possesses three separate sources of jurisdiction: (1) 28 U.S.C. § 1332(a)(1) (diversity jurisdiction); (2) 28 U.S.C. § 1331 (federal question jurisdiction) and § 1367 (supplemental jurisdiction); and, (3) the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").  (Doc. No. 1 at PageID 1.)  The Court will address each in turn.

### A.  Diversity Jurisdiction

The Court first turns to the question of diversity jurisdiction.  Diversity jurisdiction exists in a matter between citizens of different states, where the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a).  A state, however, is not a citizen for the purposes of diversity jurisdiction.  *Moor v. Cnty. of Alameda*, 411 U.S. 693, 717 (1973) (citing *Postal Telegraph Cable Co. v. Alabama*, 155 U.S. 482, 487 (1894)).  Where one of the parties is a state, "'there is no federal jurisdiction on the basis of diversity of citizenship because a state is not a citizen for purposes of diversity jurisdiction.'"  *LINC Acquisition One, LLC v. J4 Broad. Of Cincinnati, Inc.*, No. 1:04-cv-810, 2005 WL 8162168, at *4 (S.D. Ohio Feb. 23, 2005) (quoting *Texas Dep't of Hous. & Cmty. Affairs v. Verex Assurance, Inc.*, 68 F.3d 922, 926 (5th Cir. 1995)).

When the state is a named party, the Court must ascertain the real-party-in-interest—be it the state or a discrete group of its citizens—to determine whether diversity jurisdiction exists.  *Ohio v. GMAC Mortg., LLC*, 760 F. Supp. 2d 741, 744 (N.D. Ohio 2011) (citing *People of State of California ex rel. McColgan v. Bruce*, 129 F.2d 421, 423 (9th Cir. 1942)).  In so doing, the Court must, "look[] at the 'essential nature and effect of the proceeding.'"  *GMAC*, 760 F. Supp. 2d at 745 (quoting *Ford Motor Co. v. Dep't. of Treasury*, 323 U.S. 459, 464 (1945)).  Ultimately, the determination must be made as to who "'the primary beneficiary of the relief requested,'" will be.  *GMAC*, 760 F. Supp. 2d at 745 (quoting *Ohio ex rel. Dann v. Citibank (S.D.), N.A.*, No. 2:07-cv-

1149, 2008 U.S. Dist. LEXIS 52172, at *9-10, 2008 WL 1990363, at *3-4 (S.D. Ohio May 1, 2008)).

On the one hand, UWM argues that the primary beneficiaries of the relief requested in this case are Ohio consumers, thus making the Ohio consumers the real-party-in-interest. (Doc. No. 22 at PageID 2052.) In support of this point, UWM cites to the Complaint, which repeatedly points to Ohio citizens, homebuyers, consumers, and borrowers. (*Id*. at PageID 2053.) Consequently, the aim of the case is to recover damages for citizens of Ohio who have been harmed. (*Id*.) Additionally, UWM cites the agreement between the attorney general and its outside counsel, which identifies "Ohio's consumers and citizens" as the "Client" for purposes of the representation. (Doc. No. 22 at PageID 2053 (citing Doc. No. 22-1 at PageID 2076).) Finally, UWM points to the $25.9 million in actual damages and $50 million in treble damages, punitive damages, restitution, and a common fund for Ohio borrowers. (*Id*. at PageID 2053.) In addition, UWM contends that Ohio has not suffered an injury sufficient to defeat diversity jurisdiction in this respect. (*Id*. at PageID 2054.)

Conversely, Ohio contends that it is not a "nominal party," but the real-party-in-interest because its lawsuit seeks to protect the economic health and well-being of Ohio citizens. (Doc. No. 17-1 at PageID 2007-08.) Specifically, Ohio argues that it is bringing this action in its capacity as *parens patriae* and, while some of the relief sought inures to the benefit of specific Ohioans, the State is the primary beneficiary of the relief sought. (*Id*. at PageID 2007-11.)

Suits *parens patriae* are derived from the common-law doctrine allowing the sovereign (the monarch at English common law and later the states) to step into the shoes of its citizens. *Chapman v. Tristar Products, Inc.*, 940 F.3d 299, 305 (6th Cir. 2019) (citing *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 600 (1982)). In the modern formulation, the

state "'must assert an injury to what has been characterized as a 'quasi-sovereign' interest.'" *Chapman*, 940 F.3d at 305 (citing *Snapp*, 458 U.S. at 601). "Although 'quasi-sovereign' interests are not easily definable, they are those types of interests possessed by a State that fall between its sovereign interests and its proprietary or private interests." *Chapman*, 940 F.3d at 305 (citing *Snapp*, 458 U.S. at 601-02). "To assert *parens patriae* 'the State must articulate an interest apart from the interests of particular private parties . . . [;] the State must be more than a nominal party.'" *Chapman*, 940 F.3d at 305 (quoting *Snapp*, 458 U.S. at 607) (alterations in original).

The cases of *Dann* and *GMAC* are instructive here. Beginning with *Dann*, the Ohio Attorney General filed a suit alleging violations of the OCSPA. 2008 U.S. Dist. LEXIS 52172, at *2-3. The defendants offered students at Ohio State University a free lunch, without first disclosing to the students that they would have to fill out a credit card application to receive the lunch. *Id.* The court found that remand was warranted because the Attorney General had the statutory enforcement authority to bring representative actions under the OCSPA. *Id.* at *8-9. Moreover, the Attorney General was using those powers, not to obtain relief for only the affected students, but to "secure Ohio as an honest marketplace and to promote proper business practices …" and to obtain penalties that would go to the state treasury. *Id.* at *9. Consequently, the court found that Ohio had a substantial interest in the litigation and was the primary beneficiary of the requested relief. *Id.*

In *GMAC*, the Attorney General again filed suit under the OCSPA, this time against a mortgage provider. 760 F. Supp. 2d at 743-44. The defendants were alleged to have used "robosigners" to "rapidly sign[] large numbers of affidavits and legal documents asserting the bank's right to foreclose without the employees actually checking the documents to ensure their accuracy…." *Id.* at 743. In reviewing the complaint as a whole, the court found the "declaratory

and injunctive relief would benefit only a specific subset of Ohio citizens," namely, those who had obtained mortgages from the defendants. *Id*. at 748. The equitable relief sought by the state would have enjoined the defendants from, "continuing any foreclosure actions, summary judgment motions, default judgment motions, foreclosure sales, or submitting any robosigned affidavits in foreclosure cases that have an affidavit or assignment signed by [defendants]." *Id*. at 749 (internal quotations omitted). Therefore, the relief sought would be of little interest to most Ohio residents and serve as a benefit only to a discrete group of Ohioans under the threat of foreclosure from the defendants. *Id*.

A state's quasi-sovereign interest in protecting "the health and well-being—both physical and economic—of its residents in general," has been held to support a state's *parens patriae* interest. *Id*. (citing *Snapp*, 458 U.S. at 607). The Court, viewing the Complaint as a whole, views the relief sought as inuring both to the benefit of the State broadly and to a subset of Ohioans specifically. While Ohio does seek compensatory damages, that would benefit only those citizens who have loans through UWM. The remaining relief essentially seeks to enjoin similar conduct going forward, along with civil penalties that would go to the State's treasury. (*See* Doc. No. 6-1 at PageID 1344-45.)

As an initial point, UWM argues that Ohio has not alleged a qualifying injury. (Doc. No. 22 at PageID 2054.) However, delving into whether Ohio has a valid cause of action is an inquiry separate and apart from whether the Court has the, "'constitutional *power* to adjudicate the case.'" *Stewart v. Martin*, 143 F.4th 675, 682 (6th Cir. 2025) (quoting *Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83, 89 (1998)) (emphasis in original). Whether the statutes cited by Ohio are sufficient to confer a cause of action is not before the Court in this Motion.

There is no contention that the individual Ohio borrowers who have loans with UWM and

whose loans were improperly directed to UWM would benefit from the potential damages at issue. It is equally true that the relief sought by Ohio would restrain UWM from engaging in deceptive economic practices going forward. Ohio has an interest in protecting its residents from deceptive mortgage practices. Such protections preserve the economic health of Ohioans[1] by way of a competitive and fair mortgage market. The relief sought for those borrowers who already have UWM loans is certainly substantial, but the relief sought by the State would similarly create benefits to Ohioans writ large that would largely be incalculable. *See Nevada v. Bank of America Corp.*, 672 F.3d 661, 671 (9th Cir. 2012) (citing *Madigan*, 665 F.3d at 773) ("Nevada's sovereign interest in protecting its citizens and economy from deceptive mortgage practices is not diminished merely because it has tacked on a claim for restitution"). Consequently, the Court finds that it would be inappropriate to exercise diversity jurisdiction based on the record before it. *See Heyman v. Lincoln Nat'l. Life Ins. Co.*, 781 F. App'x. 463, 468 (6th Cir. 2019) (quoting *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 550 (6th Cir. 2006)) ("'the removal statute should be strictly construed and all doubts resolved in favor of remand'").

Therefore, the Court finds that it does not have diversity jurisdiction pursuant to 18 U.S.C. § 1332.

## B. Federal Question Jurisdiction

The Court next turns to the issue of federal question jurisdiction. (Doc. No. 17-1 at PageID 2014.) In its Notice, UWM points to a single count as the basis for federal question jurisdiction: Count 5, the Ohio Corrupt Practices Act, Ohio Rev. Code § 2923.31 *et seq*. (Doc. No. 1 at PageID

---

[1] UWM contends that this relief would only benefit those future Ohioans who would select UWM as a lender or one of the brokers who allegedly funneled 75% of their loans to UWM. (Doc. No. 22 at PageID 2058.) However, this group could presumably encompass any Ohioan. The Court does not have the ability to discern which potential borrowers will use which potential lenders or brokers. Thus, Ohio's requested relief seeks to protect the welfare of its citizens by ensuring all brokers and lenders operating in the State are following fair and equitable practices that do not injure its citizens.

15-16.) Specifically, as part of its claim under the OCPA, Ohio alleges violations of: (1) federal mail fraud, 18 U.S.C. § 1341; (2) federal wire fraud, 18 U.S.C. § 1343; (3) federal honest services fraud, 18 U.S.C. § 1346; and, (4) the federal Travel Act, 18 U.S.C. § 1952. (Doc. No. 6-1 at PageID 1329-30.)

For the purposes of federal question jurisdiction, a claim arises under federal law where it is, "(1) created by a federal statute or (2) presents a substantial question of federal law." *Miller v. Bruenger*, 949 F.3d 986, 991 (6th Cir. 2020) (citing *Estate of Cornell v. Bayview Loan Servs., LLC*, 908 F.3d 1008, 1014 (6th Cir. 2018)). In deciding if a "substantial question of federal law" is at issue, the Court must determine whether: "(1) 'a state-law claim necessarily raise[s] a stated federal issue,' (2) that is 'actually disputed and substantial,' (3) 'which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.'" *Cornell*, 908 F.3d at 1014 (quoting *Grable & Sons Metal Prods. v. Darue Eng'g. & Mfg.*, 545 U.S. 308, 314 (2005)).

### i. Federal Issue Raised

As an initial matter, Ohio disputes that a federal issue has even been raised. (Doc. No. 17-1 at PageID 2014.) UWM points to Ohio's OCPA claim, which alleges violations of multiple federal criminal statutes as predicate acts. (Doc. No. 1 at PageID 16.) Ohio argues that these citations are inconsequential because it can prove its OCPA claim through violations of Ohio state law. (Doc. No. 17-1 at PageID 2015-16.) For instance, the elements of federal wire fraud under 18 U.S.C. § 1343 and state wire fraud under Ohio Rev. Code § 2913.05 are the same, thus, in Ohio's view, it can simply prove its case using Ohio law. (*Id.*)

The Court is not persuaded by Ohio's rationale. The Complaint pleads federal criminal statutes as the predicate acts to its OCPA claim. The fact that the state law equivalents of those

10

acts are substantially the same is irrelevant. Ohio did not plead the state law equivalents. The Court will not read those statutes into the Complaint when Ohio elected not to plead those state law predicates.

Nor is the Court convinced by Ohio's efforts to transfigure the Travel Act into a quasi-state law claim. (Doc. No. 17-1 at PageID 2015.) Ohio can prove a violation of the Travel Act by showing UWM is liable of "bribery … in violation of the laws of the State in which committed." 18 U.S.C. § 1952. Nonetheless, the cited statute is a violation of federal law. The Court is not convinced that this is sufficient to qualify as a solely state-law basis for relief. Therefore, the Court finds a federal issue has been raised.

### ii.  Substantial Federal Question

The Court must next determine whether the federal issues posed are "disputed and substantial." To determine whether an issue is substantial, the Court must look at four aspects of the case:

> (1) [W]hether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute; (2) whether the federal question is important (i.e., not trivial); (3) whether a decision on the federal question will resolve the case (i.e., the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases (i.e., the issue is not anomalous or isolated).

*Cornell*, 908 F.3d at 1015 (quoting *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 570 (6th Cir. 2007)) (quotations omitted). "No single factor is dispositive and these factors must be considered collectively, along with any other factors that may be applicable in a given case." *Mikulski*, 501 F.3d at 570 (citations omitted). The first aspect is not at issue as no federal agency is a party to this action, therefore, the Court need only address the remaining three aspects.

### 1.  Importance of the Federal Question

The Court must first look to the import of the federal question. In UWM's view there are

a plethora of important federal questions at stake with every federal criminal statute cited by Ohio. (Doc. No. 22 at PageID 2065.) For instance, UWM cites to a recent Supreme Court decision, *Kousisis v. United States*, 145 S. Ct. 1382, 1398 (2025), arguing the case raises important questions because the Supreme Court narrowed the universe of misrepresentations, while leaving open the implementation of its ruling. (Doc. No. 22 at PageID 2065.) Similarly, with regard to honest services fraud, UWM contends that a decision in this case would potentially create a federal duty for mortgage brokers nationwide. (*Id*.)

The Court is not persuaded by UWM's contentions. Foremost in this reasoning is the Court's skepticism that *Kousisis* is such an enigma that it would transform this matter into anything other than a run-of-the-mill application of a particular theory of liability under the federal wire and mail fraud statutes. *See Kousisis*, 145 S. Ct. at 1398 ("Rather, the theory criminalizes a particular species of fraud: intentionally lying to induce a victim into a transaction that will cost her money or property"). Nor is the Court convinced a determination that the actions in this case were fraudulent would lead to a radical alteration of the duty placed on mortgage brokers nationwide. A decision by this Court or the Montgomery County Common Pleas Court may be persuasive in other states, but it is in no way binding on the practices of other states' courts or mortgage brokers.

## 2. Resolution of this Matter

The next aspect of the substantial federal question inquiry asks whether a resolution of the federal questions will resolve the matter at hand. Despite a valiant effort by UWM to argue to the contrary, resolution of the questions involved with the federal criminal statutes will only resolve one claim, the OCPA. The mere fact it would dispose of millions of dollars of damages is simply not the test. Indeed, the case cited by UWM reinforces this point. *See Coventry Health Care, Inc. v. Caremark, Inc.*, 705 F. Supp. 2d 921, 930 (M.D. Tenn. 2010) ("As for the third factor, it is clear

that resolution of the federal issue will be *completely* dispositive of the case") (emphasis added).

The OCPA claim may be resolved by Ohio proving acts that will also support other claims, but there are numerous separate findings that must be made to determine liability on Ohio's seven remaining claims. The resolution of the predicate federal criminal statutes would not resolve the specific findings that would need to be made under Ohio's other claims and would not completely resolve this case.

### 3. **Effect on Other Cases**

The Court also looks to, "whether a decision as to the federal question will control numerous other cases…." *Cornell*, 908 F.3d at 1015 (quoting *Mikulski*, 501 F.3d at 570). UWM contends that a decision by an Ohio state court would "'have a substantial impact on how future mortgage lenders act in similar circumstances.'" (Doc. No. 22 at PageID 2067 (quoting *Minnesota v. Fleet Farm, LLC*, 679 F. Supp. 3d 825, 839 (D. Minn. 2023)). Therefore, the Court should look at the impact this case will have, rather than whether it will control other matters. (Doc. No. 22 at PageID 2067.)

"Substantial impact" is simply not the standard set forth by the Sixth Circuit or the Supreme Court. The inquiry is whether it will "control numerous other cases…." *Cornell*, 908 F.3d at 1015 (quoting *Mikulski*, 501 F.3d at 570). While other courts may look to what the courts in Ohio ultimately do, it will, in no way, "control" cases in other states or at the federal level. *See Tafflin v. Levitt*, 493 U.S. 455, 465 (1990) ("federal courts… would retain full authority and responsibility for the interpretation and application of federal criminal laws, for they would not be bound by state court interpretations of the federal offenses constituting RICO's predicate acts"). Nor would a federal court decision control outside of this district. Therefore, the Court finds that a decision in this case will not control other cases.

### iii. **Federal-State Balance**

The final consideration for the Court is the interrelation between federal and state interests. UWM argues that counsel for Ohio has filed a similar RICO action in federal court elsewhere, thus demonstrating that the normal flow of litigation from state to federal court will not be impacted by a finding of federal jurisdiction here. (Doc. No. 22 at PageID 2068.) Conversely, Ohio contends that the Court risks allowing defendants to remove any state law matter that is patterned on the federal RICO statute, creating a "horde" of removals of state law claims with federal predicates. (Doc. No. 17-1 at PageID 2020.)

A finding for UWM in this instance would seemingly ease the way for parties seeking to remove matters to federal court where the state law claim contains any federal law as a predicate act. While there are certainly times that such removals would be warranted, it would usurp the state's ability to enforce its own protection laws or, indeed, any state law patterned on federal law. It would remove from state courts the ability to protect its citizens under those statutes, in favor of federal jurisdiction even where, as here, the application of the federal law is tenuous at best. The Court declines the invitation to do so in this particular instance.

The Court finds that while federal questions have been raised, those questions are not substantial enough to warrant federal jurisdiction in this instance.

### C. **Class Action Fairness Act**

The Court now turns to UWM's final basis for jurisdiction. A defendant may remove a class action to federal court if: (1) more than $5 million is in controversy; (2) the parties are minimally diverse; and, (3) the number of proposed plaintiffs exceeds 100. 28 U.S.C. § 1332(d). Under CAFA, a "class action" is defined as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action

to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

In passing CAFA, Congress sought to relax diversity jurisdiction requirements in order to make it

easier, "to bring certain interstate class actions and mass action in federal court." *Nessel ex rel.*

*Michigan v. AmeriGas Partners, L.P.*, 954 F.3d 831, 834 (6th Cir. 2020) (citing *Miss. ex rel. Hood,*

*AU Optronics Corp.*, 571 U.S. 161, 165, 134 S. Ct. 736 (2014)).

The Court is satisfied that the basic requirements of CAFA have been met. First, the

Complaint specifically identifies $25.9 million in damages relating to the amount Ohio consumers

would have saved had brokers shopped for lower rates instead of directing loans to UWM. (Doc.

No. 6-1 at PageID 1290.) As this is only one category of damages Ohio seeks, the $5 million

dollar threshold has been met. Second, the Complaint only makes reference to Ohioans who

financed homes through UWM. (*Id*. at PageID 1232.) UWM, for its part, is a limited liability

company formed in Michigan, with its principal place of business in Pontiac, Michigan. (*Id*. at

PageID 1233.) Therefore, the Parties are minimally diverse. Third, Ohio alleges that thousands

of Ohioans were deceived by UWM's practices. (*Id*. at PageID 1225.) Thus, the number of

proposed plaintiffs certainly exceeds 100.

The real issue with regard to the Court's CAFA inquiry is whether Ohio actually invokes

a state statute similar to Rule 23. Ohio rebukes this idea and instead argues that it has brought an

enforcement action in a *parens patriae* capacity. (Doc. No. 17-1 at PageID 2011-12.) Moreover,

Ohio contends that it is not relying on Ohio Rev. Code § 1345.07(A)(3), which allows the Attorney

General to seek damages by way of a class action under Ohio's Rule 23. (*Id*. at PageID 2011-13.)

Instead, another subsection purportedly gives Ohio the ability to seek compensatory damages, §

1345.07(B). (*Id*. at PageID 2013.) Ohio points to § 1345.07(B) which allows the court to, "make

appropriate orders… to reimburse consumers found to have been damaged…."

Conversely, UWM argues that Ohio's attempts to plead around CAFA should not be rewarded.  (Doc. No. 22 at PageID 2059-60.)  It also argues the cases Ohio relies on for its *parens patriae* arguments are largely inapplicable in this instance.  (*Id*. at PageID 2060-61.)  Finally, the language of § 1345.07(A) limits the manner by which the Attorney General can seek damages and adopting Ohio's reading of § 1345.07(B) would nullify § 1345.07(A)(3) entirely.  (*Id*. at PageID 2061-62.)

As a starting point, the OCSPA provides:

(A) If the attorney general, by the attorney general's own inquiries or as a result of complaints, has reasonable cause to believe that a supplier has engaged or is engaging in an act or practice that violates this chapter, and that the action would be in the public interest, the attorney general may bring any of the following:

(1) An action to obtain a declaratory judgment that the act or practice violates section 1345.02, 1345.03, or 1345.031 of the Revised Code;

(2)(a) An action, with notice as required by Civil Rule 65, to obtain a temporary restraining order, preliminary injunction, or permanent injunction to restrain the act or practice…;
…
(3) A class action under Civil Rule 23, as amended, on behalf of consumers who have engaged in consumer transactions in this state for damage caused by:
…
(c) An act or practice determined by a court of this state to violate section 1345.02, 1345.03, or 1345.031 of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code.

Ohio Rev. Code § 1345.07.  It further states, "[o]n motion of the attorney general and without bond, in the attorney general's action under this section, the court may make appropriate orders, including … to reimburse consumers found to have been damaged…."  Ohio Rev. Code § 1345.07(B).

The interaction of CAFA and representative actions brought by attorneys general is not a new issue for federal courts.  The Supreme Court addressed the issue directly in *AU Optronics*,

holding that civil suits filed by states to enforce consumer protection laws are not "class actions" for the purposes of CAFA, even where the state seeks restitution for injuries suffered by its citizens. *AU Optronics*, 571 U.S. at 164. A number of circuits, including the Sixth Circuit, have held that state-led civil enforcement actions are not "class actions" under CAFA. *See Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 212-20 (2d Cir. 2013); *West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 176 (4th Cir. 2011); *Mississippi ex rel. Hood v. AU Optronics Corp.*, 701 F.3d 796, 799 (5th Cir. 2012), *rev'd on other grounds*, 571 U.S. 161, 134 S. Ct. 736 (2014); *Nessel*, 954 F.3d at 838; *LG Display Co. v. Madigan*, 665 F.3d 768, 770-72 (7th Cir. 2011); *Minnesota v. API*, 63 F.4th 703, 716 (8th Cir. 2023); *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847-49 (9th Cir. 2011).

A factor exists in many of these cases that presents a problem for Ohio, however. Take *Chimei*, for instance. In that case the Ninth Circuit held that an action brought by Washington under its consumer protection act was not a "class action" within the meaning of CAFA. 659 F.3d at 849. The court held the action was not filed under Fed. R. Civ. P. 23 or a similar state statute because the attorney general had the statutory authority to sue *parens patriae*. *Id*. at 848. That is, the Washington consumer protection act specifically granted the attorney general the power to file suit, "as *parens patriae* on behalf of persons residing in the State." Wash. Rev. Code § 19.86.080(1). The same rationale was applied in *LG Display*, where the Seventh Circuit held the action was not removable under CAFA because the relevant Illinois law permitted the "State's Attorney General [to] maintain an action *parens patriae*…." 665 F.3d at 771-72 (citation and internal quotation marks omitted).

Ohio Rev. Code § 1345.07 does not grant the Attorney General the specific ability to maintain an action *parens patriae*. Indeed, if the legislature had wished to grant the Attorney

General that ability, it knew how to confer that authority. *See* Ohio Rev. Code § 109.81(A) ("The attorney general shall act as the attorney at law in any antitrust case for the state … as *parens patriae*, for any natural person residing in the state"); Ohio Rev. Code § 2111.50 ("the probate court has full *parens patriae* powers"). The fact it elected not to is instructive as to how the Court should read the statute.

Turning to the other circuits cited above, the cases are similarly distinguishable from the matter at hand. In all the remaining cases, the respective circuits held that the statutes invoked by those states bore no resemblance to Rule 23. *See Purdue Pharma*, 704 F.3d at 215-16 (holding the Kentucky statutes in question did not authorize class actions and did not "bear any resemblance to Rule 23"); *CVS Pharm.*, 646 F.3d at 175-76 (finding the statute invoked by West Virgina "contain[ed] virtually none of the essential requirements for a Rule 23 class action"). The Sixth Circuit also falls within this category.

In *Nessel*, the attorney general of Michigan brought suit against the defendant for multiple violations of the Michigan Consumer Protection Act ("MCPA"), Mich. Comp. Laws § 445.901 *et seq.* 954 F.3d at 833. Under § 10 of the MCPA the attorney general was permitted to "bring a class action on behalf of persons residing in or injured in this state for the actual damages …" caused by violations of the MCPA. *Id*. The defendant sought to remove the action to federal court citing § 10 as the basis for the court to exercise jurisdiction pursuant to CAFA. *Id*. The Sixth Circuit held that § 10 was not a similar statute for the purposes of CAFA because it did not require the attorney general to satisfy the typical Rule 23 requirements of adequate representation, typicality, numerosity, or commonality. *Id*. at 835-37. Simply put, the mere fact that the statute labeled the attorney general's authority to bring the suit as a "class action," was not dispositive of the true nature of the statute. *Id*. at 837.

Turning to the OCSPA, § 1345.07(A)(3) specifically states, "the attorney general may bring any of the following … [a] class action under Civil Rule 23 … on behalf of consumers who have engaged in consumer transactions in this state for damage …." This section of the OCSPA does not give the Attorney General the authority to bring a suit *parens patriae*. *See API*, 63 F.4th at 716; *Chimei*, 659 F.3d at 847-49. Nor is § 1345.07(A)(3) phrased to allow the Attorney General to bring a suit for damages in a representative capacity without the strictures of Rule 23. *See Purdue Pharma*, 704 F.3d at 215-16; *CVS Pharm.*, 646 F.3d at 175-76. The OCSPA specifically requires the Attorney General to bring an action for damages[2] under Ohio R. Civ. P. 23, which, needless to say, is a state statute similar to Fed. R. Civ. P. 23.

The question then becomes whether Ohio actually invokes § 1345.07(A)(3). For its part, Ohio alleges that it is not invoking § 1345.07(A)(3) in this case and, in fact, the Attorney General has never exercised its authority under that section. (Doc. No. 17-1 at PageID 2012-13.) Instead, Ohio purports to rely on § 1345.07(B), which allows courts to "make appropriate orders … to reimburse consumers found to have been damaged…." Ohio Rev. Code § 1345.07(B).

In support of this position, Ohio points to *Celebrezze v. Hughes*, 18 Ohio St. 3d 71, 479 N.E.2d 886 (Ohio 1985). In *Celebrezze*, the Attorney General of Ohio sued the defendant alleging that it had "tampered with the odometers of used motor vehicles, rolled back their mileages, falsified the disclosure statements, and resold the vehicles all in violation of the [OCSPA]" and the Odometer Rollback and Disclosure Act. 18 Ohio St. 3d at 72. The trial court permanently enjoined the defendant, ordered a fine of $15,000, and awarded "$45,000 (thirty consumer transferees at $1,500 each) in restitution damages." *Id*. The appellate court overruled the trial court damages award, holding that the consumers were not made part of a class and the trial court

---

[2] This differs from Ohio Rev. Code § 1345.07(A)(1)-(2). Those provisions permit the Attorney General to obtain a declaratory judgment or injunction solely based on the "public interest."

had no statutory authority to award damages. *Id.* The Ohio Supreme Court held, "in a civil action seeking injunctive relief and damages, brought by … Attorney General of Ohio on behalf of consumers pursuant to the provisions of the [OCSPA] … the trial court may fashion appropriate orders including an award to reimburse injured consumers…." *Id.* at 75. In coming to this conclusion the court in *Celebrezze* held that it was necessary to read the OCSPA in a manner that would allow "the Attorney General to seek damages for a *small* group of consumers…." *Id.* (emphasis added).

The Court is not convinced by Ohio's rationale or the lengths to which it seeks to stretch the opinion in *Celebrezze*. Ohio's reading of § 1345.07(B) would render § 1345.07(A)(3) meaningless or largely pointless. *See State v. Bryant*, 160 Ohio St. 3d 113, 2020-Ohio-1041, ¶ 17, 154 N.E.3d 31 (Ohio 2020) (quoting *State ex rel. Nat'l. Lime & Stone Co. v. Marion Cty. Bd. of Comm'rs.*, 152 Ohio St.3d 393, 396, 2017-Ohio-8348, ¶ 14, 97 N.E.3d 404 (Ohio 2017)) ("Our role is to evaluate the statute as a whole and to interpret it in a manner that will give effect to every word and clause, avoiding a construction that will render a provision meaningless or inoperative"). If the Attorney General was able to obtain all measure of damages under § 1345.07(B), there would be few if any times it would elect to invoke § 1345.07(A)(3).[3] The Attorney General could simply seek equitable relief, which it will typically do in these types of actions, and then get all of their desired damages on behalf of consumers without complying with the more strenuous requirements of certifying a class. This surely cannot be what the legislature sought in cases involving a large number of consumers. Indeed, in *Celebreeze*, there were thirty consumers affected, whereas in this case there could be hundreds or even thousands of consumers who would potentially be

---

[3] Ohio does reference § 1345.07(A)(3) in the Complaint, but this singular reference is insufficient to transform the Complaint into a class action complaint. For instance, the Complaint does not make allegations regarding the typical rule 23 requirement of typicality, numerosity, and commonality.

entitled to damages.

However, the plaintiff may plead around jurisdiction because they are "the master" of the complaint. *Total Quality Logistics, LLC v. Lankford*, No. 1:23-cv-303, 2023 U.S. Dist. LEXIS 118484, at *4, 2023 WL 4423820 (S.D. Ohio July 10, 2023) (citing *Heyman*, 781 F. App'x. at 469); *Ohio ex rel. Skaggs v. Brunner*, 629 F.3d 527, 531 (6th Cir. 2010) ("the plaintiff, not the defendants, remains the master of a complaint, including the master of what law she opts to invoke in filing a claim"). As discussed above, whether Ohio has a valid cause of action is a question separate from whether the Court has the, "'constitutional *power* to adjudicate the case.'" *Stewart*, 143 F.4th at 682 (quoting *Steel Co.*, 523 U.S. at 89) (emphasis in original). Whether Ohio has the authority to seek damages in this fashion is a merits question better left to a court with jurisdiction.

Consequently, the Court finds that it does not have jurisdiction under CAFA.

## IV.  <u>CONCLUSION</u>

For the reasons stated above, the Court **GRANTS** Plaintiff State of Ohio's Motion to Remand (Doc. No. 17). As the Court finds that it does not have jurisdiction to hear this matter, the Court further finds Defendant's Motion to Dismiss (Doc. No. 16) is **MOOT**. This matter is **REMANDED** to the Montgomery County Common Pleas Court for further proceedings. The Clerk is directed to **TERMINATE** this matter on the Court's docket.

**DONE** and **ORDERED** in Dayton, Ohio, this Thursday, September 4, 2025.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE